IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2026 FEB 26 PM 3: 28

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____ CR

JOHN COPELAND,

        Plaintiff,

v.

        Civil Action No. [to be assigned]

HOUSING AUTHORITY OF
THE CITY OF AUSTIN (HACA),

        Defendant.

1:26CV00461 PDA

## VERIFIED COMPLAINT

Plaintiff John Copeland ("Copeland") sues Defendant Housing Authority of the City of Austin ("HACA") and alleges:

### I. JURISDICTION AND VENUE

1.    This Court has jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343.

2.    Copeland asserts claims under ADA Title II, Section 504 of the Rehabilitation Act, the Fair Housing Act, and 42 U.S.C. § 1983 (procedural due process), and seeks prospective injunctive and declaratory relief.

3.    Venue is proper in this Division because HACA administers vouchers in Austin, Texas, and the events occurred here.

### II. PARTIES

4.    Copeland is an adult resident of Austin, Texas.

5.    HACA is a public housing authority in Austin, Texas.

### III. FACTS

#### A. Program status and tenant portion

6.    Copeland is a HUD-VASH Housing Choice Voucher participant. His tenant portion is $241. (Copeland Decl. ¶ 2; Garrison Decl. ¶ 4-6; Ex. L)

#### B. Disability and accommodation

7.    Copeland is severely disabled following a stroke, uses a wheelchair, and requires caregiver assistance for daily activities. He is functionally illiterate. (Copeland Decl. ¶ 3; Ex G).

8. Copeland and his providers requested accommodations, including the need for a full-time caregiver. Harbor Health provided written notifications to HACA in August and September 2025 documenting caregiver necessity. (Copeland Decl. ¶ 5; Ex. G)

9. Danielle Pitts has served as Copeland's caregiver. Copeland pursued live-in aide processing through HACA and VA channels, including a DocuSign live-in aide agreement transmitted by HACA on October 9, 2025. (Copeland Decl. ¶ 6; Exs. H, J)

## C. Informal hearing and termination decisions

10. HACA held an informal hearing on January 13, 2026 relating to termination from the voucher program. (Copeland Decl. ¶¶ 7–8; Garrison Decl. ¶ 7; Ex. I)

11. After the hearing, the hearing officer directed submission of additional materials by January 20, 2026. On that date, Copeland's representative submitted materials by email, including documentation of Copeland's disability-related need for a caregiver and the basis for reasonable accommodation. (Garrison Decl. ¶¶ 15–16; Copeland Decl. ¶ 10; Ex. D) Office 365 message trace logs confirm SMTP 250 OK delivery to HACA's mail gateway on January 20, 2026. (Garrison Decl. ¶ 17; Ex. E)

12. On January 26, 2026, the hearing officer issued a first termination decision effective January 31, 2026, stating that the materials had not been received. (Exs. B, F). On January 28, 2026, the hearing officer sent an email acknowledging that her IT department had located the submission. She rescinded the January 26 decision and stated she would review the accommodation materials. (Ex. C).

13. On February 12, 2026, the hearing officer issued a second and operative termination decision, moving the effective date to February 28, 2026. (Ex. A). The decision stated:

> On January 26, 2026, a hearing decision was rendered confirming the termination of assistance, as the required documentation was not submitted by the specified deadline. Subsequently, technical issues were identified regarding the receipt of documentation via email. On January 28, 2026, I notified all relevant parties that our IT Department had successfully recovered the submitted email documentation.

As a result, the initial hearing decision was suspended, pending a review of the newly recovered materials.

However, the documentation was determined to be irrelevant to both the termination and the hearing decision rendered on January 26, 2026, as they did not show Ms. Pitts had permission to live at the property. Therefore, I am upholding HACA's decision to terminate your rental assistance effective February 28, 2026.

14. The February 12 decision characterized the basis for termination as "Fraud and Other Program Violation" under 24 C.F.R. § 982.551(k), citing the regulation providing that family members "must not commit fraud, bribery or any other corrupt or criminal act in connection with the programs." (Ex. A). The hearing officer thus characterized Copeland's disability-related caregiver arrangement as program fraud.

15. The hearing officer's determination that Copeland's accommodation materials were "irrelevant" because "they did not show Ms. Pitts had permission to live at the property" reflects a categorical refusal to consider the accommodation request on its merits. The purpose of a reasonable accommodation request is that existing rules — including the requirement that occupants have prior authorization — must be modified to account for disability-related needs. The accommodation evidence did not need to show that Pitts already had permission; it needed to show that Copeland's disability requires a live-in caregiver and that HACA should grant authorization as a reasonable accommodation. By declaring this evidence irrelevant, the hearing officer refused to modify HACA's unauthorized-occupant policy as required by federal disability law.

16. Mr. Copeland was not afforded a meaningful opportunity to have his central defense of reasonable accommodation considered on the merits before the termination was upheld. (Copeland Decl. ¶¶ 9–12)

17. The January 13, 2026 hearing was conducted via Microsoft Teams. No recording was made. HACA's automated phone system states that requests for hearing recordings must be submitted in writing 48 hours in advance, but this requirement was not disclosed in the Notice of

Informal Hearing. HACA representative Dylan Shubitz stated he had no knowledge of any such requirement and confirmed that no recording exists. (Garrison Decl. ¶ 20; Copeland Decl. ¶ 7; Ex. I)

**D. Harm**

18.     Termination effective February 28, 2026 will remove the subsidy that makes housing feasible for Copeland, a wheelchair-dependent veteran whose tenant portion is $241 while the voucher is active. (Copeland Decl. ¶¶ 2–3, 15; Exs. J, L) Termination creates imminent risk of displacement and serious medical harm. See Goldberg v. Kelly, 397 U.S. 254, 264 (1970) (termination of benefits may deprive eligible recipient of the very means by which to live).

19.     The termination also affects Copeland's ability to maintain registry payments in a parallel eviction appeal in Travis County Justice Court, where the landlord testified the voucher had expired and the court set the registry deposit at the full contract rent amount rather than Copeland's $241 tenant portion. Voucher termination will collapse Copeland's ability to maintain those payments, resulting in loss of possession pending appeal and physical displacement. (Garrison Decl. ¶¶ 5–6; Copeland Decl. ¶ 13; Ex. L)

20.     Additionally, the fraud characterization under 24 C.F.R. § 982.551(k) carries collateral consequences: a termination coded as fraud may affect Copeland's eligibility for future housing assistance, his standing with the VA, and his ability to obtain housing, which are consequences that are difficult or impossible to unwind after the fact. (Ex. A; Copeland Decl. ¶ 12)

## IV. CLAIMS

**COUNT 1 — ADA TITLE II**

21.     Copeland incorporates all preceding paragraphs.

22.     Copeland is a qualified individual with a disability within the meaning of the ADA. He is severely disabled following a stroke, uses a wheelchair, and requires daily caregiver assistance.

23.     HACA is a public entity subject to Title II of the ADA, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or

be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

24.     HACA is required to make reasonable modifications to its policies, practices, or procedures when necessary to avoid discrimination on the basis of disability. 28 C.F.R. § 35.130(b)(7). HACA may not use criteria or methods of administration that have the effect of subjecting individuals with disabilities to discrimination. 28 C.F.R. § 35.130(b)(3).

25.     Copeland requested a reasonable accommodation: authorization of a live-in caregiver necessitated by his disability. HACA had medical documentation supporting the caregiver need from Harbor Health (August–September 2025) and had initiated live-in aide processing (October 9, 2025 DocuSign agreement).

26.     HACA's hearing officer received Copeland's accommodation materials, acknowledged their receipt, and then declared them "irrelevant" to the termination proceeding because "they did not show Ms. Pitts had permission to live at the property." This constitutes a refusal to engage in the interactive process in good faith and a failure to make a reasonable modification to the unauthorized-occupant policy. *See Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 112 (5th Cir. 2005) (unwillingness to engage in good faith interactive process violates ADA); *Strife v. Aldine Indep. Sch. Dist.*, No. 24-20269, slip op. at 8–10 (5th Cir. May 16, 2025) (refusal to meaningfully consider accommodation evidence when record supports need constitutes bad faith).

27.     HACA further discriminated by using the disability-related caregiver presence as the predicate for termination while simultaneously refusing to consider the accommodation that would authorize that presence, and by characterizing Copeland's disability-related caregiver arrangement as "fraud."

## COUNT 2 — REHABILITATION ACT § 504, 29 U.S.C. § 794

28.     Copeland incorporates all preceding paragraphs.

29.    HACA receives federal financial assistance, including HUD funding for the Housing Choice Voucher program and HUD-VASH. No otherwise qualified individual with a disability shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance. 29 U.S.C. § 794(a).

30.    The Fifth Circuit treats the accommodation obligations under the ADA and Rehabilitation Act coextensively. See *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010); Strife, slip op. at 6 n.2.

31.    For the reasons set forth in Count 1, HACA denied Copeland program benefits by reason of disability, including by failing to reasonably accommodate his disability-related caregiver need, by declaring accommodation evidence irrelevant to the termination proceeding, and by characterizing the disability-related caregiver arrangement as program fraud while terminating housing assistance.

## COUNT 3 — PROCEDURAL DUE PROCESS, 42 U.S.C. § 1983

32.    Copeland incorporates all preceding paragraphs.

33.    As an active participant in the HUD-VASH Housing Choice Voucher program, Copeland had a constitutionally protected property interest in continued housing assistance that could not be terminated without due process of law. *See Goldberg v. Kelly*, 397 U.S. 254, 261–63 (1970) (welfare and housing benefits are statutory entitlements creating property interests subject to due process); see also 24 C.F.R. § 982.555 (establishing informal hearing procedures as prerequisite to voucher termination).

34.    The process due is assessed by balancing the private interest at stake, the risk of erroneous deprivation through the procedures used, and the government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Due process requires "an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." *Goldberg*, 397 U.S. at 268.

35.     HACA, acting under color of state law, deprived Copeland of due process in the following respects:

a.      The hearing officer categorically excluded Copeland's primary defense — reasonable accommodation — from the termination proceeding by declaring the accommodation evidence "irrelevant," denying Copeland a meaningful opportunity to be heard on the merits of his central argument.

b.      The hearing officer characterized Copeland's disability-related caregiver arrangement as "fraud" under 24 C.F.R. § 982.551(k) where the record shows that Copeland and his caregiver were pursuing live-in aide authorization through HACA's own channels and that HACA had medical documentation supporting the caregiver need. This characterization is arbitrary and carries collateral consequences — including potential effects on future housing eligibility and VA coordination — that heighten the stakes and the constitutional requirement for adequate process.

c.      At the January 13, 2026 informal hearing, the hearing officer restricted Copeland's opportunity to rebut allegations used against him, further denying meaningful opportunity to be heard.

## COUNT 4 — FHA REASONABLE ACCOMMODATION AND INTERFERENCE

36.     Copeland incorporates all preceding paragraphs.

37.     The Fair Housing Act makes it unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of a handicap. 42 U.S.C. § 3604(f)(2). Discrimination includes a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling. 42 U.S.C. § 3604(f)(3)(B).

38.     Copeland requested a reasonable accommodation: authorization of a live-in caregiver necessitated by his disability. HACA refused to consider the accommodation request on its merits,

declaring the evidence "irrelevant" while terminating housing assistance on the basis of the caregiver's presence. This constitutes failure to make a reasonable accommodation under § 3604(f)(3)(B). *See Groome Res. Ltd. v. Parish of Jefferson*, 234 F.3d 192, 198 (5th Cir. 2000) (establishing framework for FHA reasonable accommodation claims and requiring that housing providers engage with accommodation requests).

39.    Additionally, it is unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of rights granted or protected by the FHA. *See* 42 U.S.C. § 3617; *see also* 24 C.F.R. § 100.400(c)(2) (prohibiting "[t]hreatening, intimidating, or interfering with persons in their enjoyment of a dwelling because of the … handicap, … of such persons, or of visitors or associates of such persons"). HACA's termination of Copeland's housing assistance in retaliation for or in connection with his exercise of the right to request a disability accommodation, HACA's interference with Ms. Pitts' right to be present as his caregiver, and HACA's characterization of his accommodation-related conduct as "fraud," constitute interference with protected rights under § 3617.

## V. RELIEF REQUESTED

40.    Temporary restraining order and preliminary injunction preserving Copeland's HUD-VASH Housing Choice Voucher assistance pending further order of this Court.

41.    Order requiring HACA to produce the complete administrative record for the January 13, 2026 informal hearing and both termination decisions, including all exhibits received, hearing notes, and any recording.

42.    Order requiring HACA to reopen the informal hearing process for the limited purpose of considering Copeland's accommodation evidence on its merits and issuing a substantive written decision on the accommodation request.

43.    Declaratory judgment that HACA's February 12, 2026 termination decision violated the ADA, Section 504, the Due Process Clause, and the Fair Housing Act.

44.     Order requiring HACA to remove or correct any characterization of Copeland's termination as "fraud" in its records and in any report to HUD or other agencies.

45.     Costs of suit and reasonable attorneys' fees to the extent available under 42 U.S.C. § 12205 (ADA), 29 U.S.C. § 794a (Rehabilitation Act), 42 U.S.C. § 3613(c)(2) (FHA), and 42 U.S.C. § 1988 (§ 1983).

46.     Such other and further relief as this Court deems just and equitable.

## VERIFICATION

I declare under penalty of perjury that the factual allegations in this Verified Complaint are true and correct to the best of my knowledge.

Executed on February 25, 2026, in Austin, Texas.

JOHN COPELAND

Respectfully Submitted,

/s/ Audrey Bean
Texas Bar No. 24073897
Law Offices of Audrey Bean
440 Hickory Forrest Dr.
Seguin, Texas 78155
Telephone: (512) 553-6499
Email: audrey@austinlitigator.com
ATTORNEY FOR PLAINTIFF JOHN COPELAND