**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| JOHN COPELAND, | § | |
| | § | |
| *Plaintiff* | § | |
| | § | Civil Action No. 1:26-cv-00461-ADA |
| v. | § | |
| | § | |
| HOUSING AUTHORITY OF | § | |
| THE CITY OF AUSTIN | § | |
| | § | |
| *Defendant.* | § | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff's Motion asks this Court to impose the extraordinary remedy of a preliminary injunction to enjoin the Housing Authority of the City of Austin ("HACA") from terminating his participation in the HUD-VASH Housing Choice Voucher program. Plaintiff asks this Court to overturn a completed administrative process on a record that supports HACA's termination decision. Because Plaintiff cannot meet the stringent requirements of Federal Rule of Civil Procedure 65, his Motion must be denied.

When a federal court reviews a public housing authority's decision to terminate Section 8 assistance, its review is strictly limited to the administrative record to determine whether the agency complied with procedural requirements and whether the decision is supported by substantial evidence. HACA's decision readily survives this deferential review. HACA provided Plaintiff with full procedural due process as required under 24 C.F.R. § 982.555, including written notice, a comprehensive

1

informal hearing, representation by an advocate, an extended opportunity to submit post-hearing evidence, and a detailed written decision.

On the merits, the Hearing Officer's February 12, 2026, decision to uphold the termination for "Fraud and Other Program Violation" rests on undeniable, documented evidence. The administrative record demonstrates that Plaintiff allowed an unauthorized occupant, his purported caregiver, Danielle Pitts, in his unit for nearly a year. By her own written admission on an October 2025 "add-on questionnaire," Ms. Pitts had already resided in the unit for ten months without HACA's approval, far exceeding HACA's six-month policy limit. Furthermore, Plaintiff repeatedly certified to HACA in writing during this period that he lived alone. Plaintiff's belated attempt to formally request a reasonable accommodation for a live-in aide in October 2025 does not retroactively erase months of misrepresentations to program staff and regulators.

Finally, Plaintiff cannot establish a substantial threat of immediate and irreparable harm caused by HACA. The administrative record unequivocally shows that Plaintiff's threatened loss of housing stems from a private landlord's independent lease non-renewal and subsequent eviction proceedings, actions that predated HACA's final termination decision by several months, since September 2025. Because HACA is not the cause of Plaintiff's impending displacement, the requested injunction would provide no meaningful redress to halt the state court eviction.

Because Plaintiff cannot demonstrate a likelihood of success on the merits based on the administrative record, and because his immediate threat of harm is the direct result of a third party's independent actions, the extraordinary remedy of a preliminary injunction is wholly unwarranted.

## STATEMENT OF FACTS

### A. Plaintiff's Participation in the Housing Choice Voucher Program and Failure to Report Unauthorized Occupant.

Movant, John Copeland received rental assistance through the HUD-VASH Housing Choice Voucher Program, administered by HACA. As a condition of participating in the Section 8 program, Mr. Copeland is required to accurately report his household composition and must not commit fraud[1] or any other corrupt act in connection with the program. HACA's own policy mandates that an individual cannot reside in an assisted unit as an unapproved guest for more than six months.

Despite these regulations, Mr. Copeland allowed an unauthorized occupant, Danielle Pitts, in his unit for nearly a year. Property management at Pathways at Chalmers Courts West (Mr. Copeland's privately managed apartment complex) discovered the unauthorized occupant as early as November 2024, issuing a Notice of Lease Violation ("**Exhibit A-1**") to Mr. Copeland after Ms. Pitts caused a disturbance and was subsequently banned from the property.

---

[1] HUD uses the term "fraud" broadly in the program-administration context to refer to situations where required information is misstated or not reported, regardless of whether the omission was intentional. Thus, a program participant may be cited for "fraud" or similar program violations even when the underlying issue involves a failure to report required information rather than an adjudicated finding of intentional deception.

3

Instead of addressing the violation or formally applying to add Ms. Pitts to his household, Mr. Copeland continued to misrepresent his household composition. In written reporting ("**Exhibit A-2**") submitted to HACA in both August and September 2025, Mr. Copeland explicitly declared that he was the *only* person in his household. In those same documents, he listed Ms. Pitts merely as an alternate/emergency contact with an "unknown" address. Ex. A-2 at 1, 8.

## B. The Private Landlord's Independent Non-Renewal of Mr. Copeland's Lease.

Due to ongoing issues, including multiple lease violations related to the unauthorized occupant, Mr. Copeland's private landlord issued a notice of non-renewal for Mr. Copeland's lease on June 12, 2025, with an effective end date of September 30, 2025.[2] Because the landlord independently elected not to renew the lease, there was no lease to which Housing Assistance Payments ("HAP") could attach after September 30, 2025. Accordingly, HACA ceased making HAP payments as of that date. Although HACA asked the landlord to reconsider the nonrenewal, the landlord declined to do so ("**Exhibit B-2**").

Despite the non-renewal by his Landlord, HACA did not terminate Mr. Copeland's program participation at that time; rather, HACA issued Mr. Copeland a 1-bedroom tenant-based voucher so that he could relocate and continue receiving assistance at a new property ("**Exhibit B-3**"). Mr. Copeland, however, failed to relocate and instead remained in the unit as a holdover tenant. Ex. B-1 at 2. The private landlord subsequently initiated eviction proceedings in Travis County Justice

---

[2] Hearing Summary at 2 ("**Exhibit B-1**").

Court ("**Exhibit B-4**") for non-payment of rent, an action entirely independent of HACA.

### C. Mr. Copeland's Belated Accommodation Request and Admission of Program Fraud.

In October 2025, after the lease had already expired and HAP payments had ceased, Mr. Copeland finally submitted a request to formally add Ms. Pitts to his household as a live-in aide ("**Exhibit C**"). As part of this add-on process, Ms. Pitts completed an "add-on questionnaire" on which she explicitly admitted in writing that she had already been living at Mr. Copeland's address for 10 months. Ex. C at 1.

Because Ms. Pitts's admission established that she had resided in the unit unauthorized for 10 months, exceeding HACA's 6-month limit,[3] HACA issued a Notice of Denial Regarding Request to Add a Family Member ("**Exhibits D-3**") on December 19, 2025. Shortly thereafter, on December 29, 2025, HACA issued Mr. Copeland a Notice of Housing Assistance Termination ("**Exhibit E**"), proposing to terminate his voucher effective January 31, 2026. The Notice expressly cited "Unauthorized Occupant" and "Fraud and Other Program Violation" pursuant to 24 C.F.R. § 982.551(k) as the grounds for termination. Ex. E at 2.

---

[3] Under HACA policy, a "guest" is defined as a person temporarily staying in the assisted unit with the consent of a member of the household who has express or implied authority to grant such consent. A guest may remain in the assisted unit no longer than thirty consecutive days or a total of ninety cumulative calendar days during any twelve-month period. Housing Choice Voucher Program, *Administrative Plan* § 3(I)(J) ("**Exhibit D-1**"). HACA policy further provides that when an individual seeking to be added to the household has resided in the unit for more than thirty days but less than six months with landlord approval, the housing authority will calculate retroactive rent payments based on the length of the unauthorized occupancy; if the individual has resided in the unit for more than six months without authorization, the add-on request must be denied and the matter submitted for termination of voucher assistance. Housing Choice Voucher Program, *Household Add-On Procedure* § 4.7 ("**Exhibit D-2**").

### D. HACA Affords Plaintiff Full Procedural Due Process Through an Informal Hearing.

Following the termination notice, Mr. Copeland requested an informal hearing ("**Exhibit F**"). HACA promptly scheduled the hearing and provided written notice to Mr. Copeland, advising him of his right to be represented by counsel, present evidence and arguments, and conduct cross-examination ("**Exhibit G**").

The informal hearing was held on January 13, 2026, presided over by HACA Hearing Officer Cecilia Vargas. Mr. Copeland attended and was represented by his advocate, Bruce Garrison. During the hearing, HACA staff presented evidence of Mr. Copeland's program fraud, including the property manager's lease violations and Ms. Pitts's written admission that she had lived in the unit for 10 months. Mr. Copeland's advocate argued that Ms. Pitts's presence was a medical necessity and claimed that reasonable accommodation paperwork had been submitted to HACA. The Hearing Officer explicitly permitted Mr. Copeland an extended deadline of January 20, 2026, to submit his evidentiary documentation regarding the reasonable accommodation.

### E. The Hearing Officer's Final Determination Based on Substantial Evidence.

On January 26, 2026, the Hearing Officer issued an initial decision upholding the termination because HACA had not received Mr. Copeland's documentation. However, two days later, HACA discovered that Mr. Copeland's email submission had been routed in the agency's quarantine filter. Demonstrating a commitment to due process, the Hearing Officer immediately notified Mr. Copeland's advocate, rescinded the January 26 decision, and suspended the termination to conduct a thorough review of the newly recovered materials ("**Exhibit H**").

6

After carefully reviewing Mr. Copeland's medical letters and accommodation requests, the Hearing Officer issued a final, operative written decision on February 12, 2026 ("**Exhibit I**"). The Hearing Officer upheld the termination of assistance for program fraud and unauthorized occupancy, determining that Mr. Copeland's retroactive accommodation materials were "irrelevant to both the termination and the hearing decision . . . as they did not show Ms. Pitts had permission to live at the property" during the 10 preceding months. Ex. I at 1. The final effective date of the voucher termination was set for February 28, 2026. Ex. I at 1.

### F. Mr. Copeland's "Emergency."

Despite receiving the final, operative administrative decision on February 12, 2026, Mr. Copeland and his advocate waited an unreasonable thirteen days, until February 25, 2026, to contact HACA's legal counsel regarding a potential lawsuit. Mr. Copeland then filed the instant Emergency Motion for a Temporary Restraining Order on February 26, 2026, mere days before the February 28 termination date, attempting to manufacture an *ex parte* emergency to bypass the regulatory due process.

### LEGAL STANDARD

The law is well established that an injunction is an "extraordinary and drastic remedy" that should not be granted unless the movant, by a clear showing, carries the heavy burden of persuasion. *Munaf v. Geren*, 553 U.S. 674, 689 (2008); *Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573, 582 (E.D. La. 2016) (citing *Planned Parenthood Ass'n of Hidalgo Cnty. Tex., Inc. v. Suehs*, 692 F.3d 343,

348 (5th Cir. 2012)). Injunctive relief is never awarded as a right. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf*, 553 U.S. at 689–90).

Rather, under *Winter*, a movant must demonstrate four distinct elements:

(1) A substantial likelihood of success on the merits.

(2) A likelihood of suffering irreparable harm in the absence of preliminary relief.

(3) That the balance of equities tips in their favor.

(4) That an injunction is in the public interest.

*Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90). In the Fifth Circuit, the moving party must "clearly carr[y] the burden of persuasion on all four requirements." *Monumental*, 157 F. Supp. 3d at 582 (citing *Suehs*, 692 F.3d at 348). A Court must deny a motion for a preliminary injunction unless the movant demonstrates, at a minimum, that irreparable harm is likely, not merely possible, in the absence of an injunction. *MedX Inc. of Florida v. Ranger*, 780 F. Supp. 398, 403 (E.D. La. 1991); *Winter*, 555 U.S. at 21. The failure to satisfy even one of these four elements automatically precludes the issuance of the injunction. *Mayo Found. for Med. Educ. & Research v. BP Am. Prod. Co.*, 447 F. Supp. 3d 522, 528 (N.D. Tex. 2020).

## ARGUMENTS

I. **A PRELIMINARY INJUNCTION IS NOT WARRANTED BECAUSE PLAINTIFF CANNOT SATISFY THE REQUIRED ELEMENTS FOR EXTRAORDINARY INJUNCTIVE RELIEF.**

### A. Mr. Copeland Cannot Establish a Likelihood of Success on the Merits.

1. *Judicial Review of a Public Housing Authority's Administrative Decision is Highly Deferential.*

Judicial review of a PHA's termination decision is highly deferential; the court's role is limited to determining whether the agency's action was "supported by substantial evidence, in that the action was not arbitrary or capricious or an abuse of discretion." *Cooley v. Hous. Auth. of City of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014). "Where substantial evidence exists, the reviewing court may not substitute its judgment for that of the agency, even if the court would have decided the matter differently." *McArthur v. Town of Brookhaven Dep't of Hous. & Human Services*, 232 A.D.3d 609, 614 (2d Dept. 2024).

Consequently, to establish a substantial likelihood of success on the merits in this context, Plaintiff must clearly demonstrate that the Hearing Officer's final decision to uphold the termination for "Fraud and Other Program Violation" under 24 C.F.R. § 982.551(k) lacked substantial evidence or was fundamentally arbitrary. *Monumental*, 157 F. Supp. 3d at 602 (citing *Herman v. City of New Orleans*, 2014-0891 La. App. 4 Cir. 1/21/15, 6, 158 So. 3d 911, 915–16).

Further, while Fed. R. Civ. P. 65(a)(2) permits a court to receive evidence during a preliminary injunction hearing, the scope of review in this specific administrative context is heavily restricted. The Supreme Court has mandated that in reviewing administrative agency actions, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam).

Mr. Copeland's motion largely sidesteps that standard. Rather than engaging with the substantial-evidence framework, it recasts disputed facts as statutory

violations and relies on selective quotations from the record while ignoring the admissions and documentary evidence that formed the basis of the decision. Because HACA provided Plaintiff with a full informal grievance hearing pursuant to 24 C.F.R. § 982.555, judicial review is strictly confined to the administrative record generated during that process. The Court need not, and should not, permit further evidentiary development or *de novo* factfinding at the preliminary injunction stage. The administrative record already establishes, through written admissions and prior lease violations, that Plaintiff engaged in ten months of unauthorized occupancy.

Given the highly deferential standard of review applied to HACA's administrative factfinding, and because the existing record contains overwhelming substantial evidence of program fraud as defined by HUD, no further evidentiary hearing under Rule 65 will alter the conclusion that Plaintiff cannot succeed on the merits.

  *2. The Hearing Officer's Decision Readily Withstands Limited Judicial Review Because it Is Grounded in Substantial Evidence.*

HACA's decision is supported by undeniable, written admission of program fraud by Mr. Copeland's own household. Under 24 C.F.R. § 982.551(k), the members of a participating family "must not commit fraud, bribery or any other corrupt or criminal act in connection with the programs." The administrative record shows that Mr. Copeland allowed an unauthorized occupant, his caregiver, for nearly a year before ever attempting to add her to his lease or voucher. On October 1, 2025, Ms. Pitts completed an "Add-on Questionnaire" on which she explicitly admitted she had

10

already been living at Mr. Copeland's address for "10 mth. [*sic*]."[4] HACA policy strictly mandates that an individual cannot reside in a unit unapproved for more than six months.[5]

The record also reveals that property management issued a Notice of Lease Violation nearly a year earlier, on November 15, 2024, explicitly citing an "unauthorized occupant" identified as Mr. Copeland's caretaker, who was caught causing a disturbance and subsequently banned from the property.[6] That the termination was arbitrary is demonstrably false; HACA's Hearing Officer relied on substantial, uncontested evidence of a blatant violation of household composition rules and program fraud.

### 3. Mr. Copeland Received All Requisite Procedural Due Process Safeguards Mandated by Goldberg and HUD Regulations.

The Motion attempts to manufacture a due process violation by claiming he was denied a meaningful opportunity to be heard. While Section 8 participants possess a recognized property interest in their housing benefits, *Nogess v. Hous. Auth. of Jefferson Par.*, No. CV 19-13147, 2019 WL 5634198, at *4 (E.D. La. Oct. 31, 2019), Mr. Copeland was afforded every procedural safeguard required by the Due Process Clause and 24 C.F.R. § 982.555.

Under *Goldberg v. Kelly*, due process requires "timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments

---

[4] Ex. C at 1
[5] Ex. B-1 at 1.
[6] Ex. A-1.

and evidence orally." 397 U.S. 254, 268 (1970). In this context, PHAs must provide the participants with the opportunity for an informal hearing before terminating housing assistance payments. 24 C.F.R. § 982.555(a)(2). The agency must provide prompt written notice containing a brief statement of the reasons for the decision, state the right to request a hearing, and provide a deadline. *Id.* § 982.555(c)(2)(i)–(iii).

Prior to the hearing, the resident must be given the opportunity to examine any agency documents directly relevant to the hearing. *Id.* § 982.555(e)(1)(i). At the hearing, the participant is entitled to be represented by counsel or another advocate at their own expense, present evidence, and question witnesses. *Id.* § 982.555(e)(3). Finally, the hearing officer must issue a written decision stating briefly the reasons for the decision, and factual determinations must be based on a preponderance of the evidence presented at the hearing. *Id.* § 982.555(e)(6). Evidence may be considered without regard to admissibility under the strict rules of evidence applicable to judicial proceedings. *Id.* § 982.555(e)(5).

HACA issued a Notice of Housing Assistance Termination on December 29, 2025, specifically advising Mr. Copeland that his voucher was being terminated for the unauthorized occupant, citing the exact regulation violated, and giving Mr. Copeland's the right to appeal.[7] HACA scheduled and conducted an informal hearing on January 13, 2026, at which Mr. Copeland was present and actively represented by his advocate, Mr. Bruce Garrison.[8] Far from denying Mr. Copeland a chance to defend himself, Hearing Officer Cecilia Vargas explicitly granted Mr. Copeland an extended

---

[7] Ex. E at 2.
[8] Ex. G; Ex. I at 2.

deadline of January 20, 2026, to submit additional documentation regarding his reasonable accommodation claims.[9] After a technical issue temporarily delayed receipt of Mr. Copeland's evidentiary packet, the Hearing Officer promptly rescinded an initial decision, thoroughly reviewed the newly recovered materials, and issued a final written determination on February 12, 2026.[10]

Mr. Copeland's allegations that the Hearing Officer was biased or refused to consider his defense amount to mere disagreement with the outcome. Unless Mr. Copeland alleges "[s]ystematic repetition of an error" or "frequent errors that favor a particular class of litigants," which he did not, "[e]vidence of errors, even multiple errors, is no evidence of bias," and adjudicators in administrative hearings are entitled to a presumption of honesty and integrity. *Sinisgallo v. Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307, 331–32 (E.D.N.Y. 2012) (quoting *Xue Ming Zheng v. N.Y. City Hous. Auth. Office of Impartial Hearing*, No. 10–CV–509, 2010 WL 3910480, at *3 (S.D.N.Y. Sept. 28, 2010) and *Shepherd v. Weldon Mediation Servs., Inc.*, 794 F. Supp. 2d 1173, 1180 (W.D. Wash. 2011)). The Hearing Officer weighed the evidence and properly applied the regulations; providing an adverse ruling is not a denial of due process.

### 4. A Retroactive Request for Accommodation Does Not Cure Ten Months of Unauthorized Occupancy and Program Fraud.

The Motion's entire argument for likelihood of success relies on the assertion that HACA failed to engage in the interactive process regarding Mr. Copeland's

---

[9] Ex. B-1 at 2.
[10] Ex. I.

request for a live-in aide as a reasonable accommodation. This argument fundamentally misstates the law and omits clarifying the timeline of events.

A reasonable accommodation request does not operate as a retroactive pardon for past program fraud. Mr. Copeland leans heavily on letters from Harbor Health dated August 19, and September 18, 2025, and a formal accommodation email sent to the landlord on October 11, 2025. (Compl. Exs. G, D). But Ms. Pitts admitted on October 1, 2025, that she had *already* been residing in the unit for 10 months.[11]

By Mr. Copeland's own admissions, the unauthorized occupancy began at least as early as December 2024. During this 10-month period, Mr. Copeland failed to accurately report his household composition, violating core program integrity requirements. The Fair Housing Act and the ADA require an agency to make reasonable accommodations when necessary, but they do not place an obligation upon an agency to permit unchecked fraud or to fundamentally alter the rules governing program eligibility and reporting. *See Ndimbie v. Broward Cnty. Hous. Auth.*, No. 11-60395-CIV, 2011 WL 13217296, at *5 (S.D. Fla. Mar. 23, 2011) (holding that, even if the plaintiff lacked the specific intent to commit fraud, the agency's decision to terminate the voucher based on undisputed violations does not automatically establish that the action was discriminatory).

The Hearing Officer was entirely correct in her February 12, 2026 decision when she deemed Mr. Copeland's belated accommodation materials "irrelevant to both the termination and the hearing decision."[12] As the decision noted, the

---

[11] Ex. C at 1.
[12] Ex. I at 1.

14

documents "did not show Ms. Pitts had permission to live at the property" during the 10 preceding months of unauthorized residency.[13] HACA's initiation of live-in aide processing in October 2025 does not remedy the preceding ten months during which the information at issue was not reported, nor does it resolve the program violations arising from the failure to disclose changes in household composition. *Cf. Office of Senate Sergeant at Arms v. Office of Senate Fair Employment Practices*, 95 F.3d 1102, 1107 (Fed. Cir. 1996) ("Requiring retroactive accommodation would mean that an entity would be required to accommodate an employee before it had knowledge of the disability, or when it only had partial, speculative, or hearsay knowledge.").

Accordingly, Mr. Copeland has wholly failed to demonstrate any likelihood that a federal court will overturn the Hearing Officer's well-supported findings. Because Mr. Copeland cannot establish a likelihood of success on the merits, his motion for emergency injunctive relief must be denied.

### B. Mr. Copeland Cannot Establish a Substantial Threat of Immediate and Irreparable Harm.

To obtain the extraordinary remedy of a preliminary injunction, a plaintiff must demonstrate that "irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). The Supreme Court has unequivocally stated that issuing a preliminary injunction based only on a mere "possibility" of irreparable harm is inconsistent with the characterization of injunctive relief as an extraordinary remedy. *Id.*

---

[13] *Id.*

But most importantly, the movant must establish a direct causal link between the defendant's alleged wrongful conduct and the threatened irreparable harm. *Stenson Tamaddon, LLC v. United States Internal Revenue Serv.*, 742 F. Supp. 3d 966, 998 (D. Ariz. 2024) (citing *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 819 (9th Cir. 2018)); *Cf. Thorson v. Hawai'i Pub. Hous. Auth.*, No. CV 23-00412 MWJS-WRP, 2025 WL 1615327, at *6 (D. Haw. June 6, 2025) (acknowledging the denial of injunctive relief where the plaintiff failed to establish a causal link between the agency's conduct and her displacement, as her need to move resulted from the landlord's independent decision to sell the property rather than the agency's actions); *Nogess*, 2019 WL 5634198 at *6 ("[Plaintiff] has not demonstrated that she has been or would be unable to secure decent housing in the absence of the Section 8 housing subsidy.").

1. *Plaintiff's Imminent Loss of Housing Is the Direct Result of a Private Landlord's Independent Eviction Action, Not HACA's Voucher Termination.*

The Motion's entire argument for irreparable harm rests on the premise that HACA's impending March 13, 2026, termination of his HUD-VASH voucher will immediately precipitate his homelessness. But the record demonstrates that Mr. Copeland's risk of displacement stems from his private landlord's independent actions, which predated HACA's termination decision by months.

HACA ceased making Housing Assistance Payments ("HAP") to Mr. Copeland's landlord, Chalmers Courts West, effective September 30, 2025. This cessation of payments was not a sanction by HACA, but rather the direct result of the private landlord issuing Mr. Copeland a non-renewal notice. Because the landlord

16

independently chose to non-renew the lease and refused to accept further voucher payments, Mr. Copeland became a holdover tenant subject to eviction for non-payment of rent as of October 2025.

As Mr. Copeland's own declarations admit, the private landlord subsequently initiated eviction proceedings against him, and a justice court hearing took place on January 12, 2026, a full month before HACA issued its final administrative termination decision on February 12, 2026. (Garrison Cert. ¶ 4). At that eviction hearing, the landlord expressly demanded the full contract rent. (Garrison Cert. ¶ 5). Mr. Copeland is currently facing an active eviction appeal in Travis County Justice Court. (Copeland Dec. ¶ 13).[14]

HACA's formal termination of Mr. Copeland's participation in the voucher program on February 28, 2026, is therefore more or less immaterial to his immediate housing status. Mr. Copeland is being evicted because his private landlord refused to renew his lease and refused to accept HACA's subsidy, not because HACA is terminating the voucher. Accordingly, if the Court denies the requested temporary relief, nothing in HACA's actions prevents Mr. Copeland from using his voucher assistance once he secures another eligible unit with a participating landlord. Because Mr. Copeland impending displacement is caused by a third party's independent eviction action, he cannot establish that HACA's conduct is the cause of his immediate and irreparable injury.

> 2. *A Temporary Restraining Order Against HACA Will Not Redress Mr. Copeland's Alleged Harm.*

---

[14] Ex. B-3.

Because HACA is not the cause of Mr. Copeland's impending harm, or an agent who can bring about a solution, the requested injunctive relief against HACA will provide no meaningful redress. Mr. Copeland asks this Court to enjoin HACA from terminating his voucher assistance so that he can maintain "registry payments in that [eviction] appeal." (Pl.'s Emergency Mtn. at 9). However, Mr. Garrison conceded that the Travis County Justice Court independently ordered Mr. Copeland to deposit the full contract rent amount into the court registry to perfect this appeal, rather than his previous tenant portion. (Garrison Decl. ¶ 6).

HACA has no jurisdiction or control over the Travis County Justice Court, nor does it have any authority to compel a private landlord to accept a Section 8 voucher after a lease has expired and non-renewal has been issued. Enjoining HACA from updating Mr. Copeland's program status in its internal systems on February 28 will not stay the state court eviction proceedings, will not alter the state court's registry deposit requirements, and will not force the private landlord to halt the eviction. An injunction against HACA is practically inadequate to stop the very harm Mr. Copeland claims to fear.[15]

### 3. Mr. Copeland's Alleged "Collateral Consequences" Are Speculative and Do Not Constitute Immediate, Irreparable Harm.

---

[15] Even if Mr. Copeland were to obtain funds sufficient to cure any alleged rent arrears and temporarily halt the eviction proceedings, the underlying issue would remain unchanged. Mr. Copeland's private landlord has already elected not to renew the lease, meaning there is no continuing tenancy beyond the lease term regardless of the status of any alleged arrears. Mr. Copeland would still be required to secure a new unit with a participating landlord in order to continue utilizing his voucher assistance, at which time any request to add Ms. Pitts as a live-in aide could be processed through the ordinary program procedures.

Faced with the reality that HACA is not the cause of his eviction, Mr. Copeland attempts to manufacture irreparable harm by pointing to the "collateral consequences" of the Hearing Officer characterizing his unauthorized occupancy as "Fraud and Other Program Violation." (Pl.'s Emergency Mtn. at 10). Mr. Copeland speculates that this internal coding "may affect [his] eligibility for future housing assistance, his VA benefits coordination, and his ability to obtain housing in the future." (Pl.'s Emergency Mtn. at 10).

This argument fails as a matter of law. The Supreme Court has already held that a preliminary injunction will not be issued simply "based only on a possibility of irreparable harm." *Winter*, 555 U.S. at 22 (2008). There must be a "presently existing actual threat." *Morrell v. City of Shreveport*, 536 Fed. Appx. 433, 435 (5th Cir. 2013). Mr. Copeland's mere conjecture about how a program termination code might affect hypothetical future housing applications or VA coordination does not rise to the level of concrete, imminent, and irreparable harm required by Rule 65. If Mr. Copeland later suffers an actual, cognizable injury related to this coding, he has adequate remedies at law to address it at that time.

Because his imminent loss of housing is the direct result of a private landlord's independent eviction action, which this Court's injunction against HACA cannot cure, Mr. Copeland has completely failed to carry his heavy burden of proving immediate and irreparable harm. For this reason alone, the Emergency Motion for Temporary Restraining Order must be denied.

### C. The Balance of Equities and the Public Interest Weigh Heavily Against Injunctive Relief.

19

   *1. The Public Has a Paramount Interest in Program Integrity and the Proper Administration of Limited Federal Housing Funds.*

Because Defendant HACA is a government entity, the third and fourth factors of the preliminary injunction standard, the balance of equities and the public interest, merge. *Nken v.* Holder, 556 U.S. 418, 435 (2009). When analyzing these combined factors, courts recognize that while the public has an interest in ensuring individuals receive lawful assistance, it has an equally compelling interest "in ensuring that benefits recipients conscientiously comply with the policies that govern public assistance programs." *Nogess*, 2019 WL 5634198 at *6.

The Section 8 voucher program relies upon finite "[g]overnment assistance funds," and enforcing compliance with program regulations is essential to maintaining the system's integrity for all eligible participants. *Id.* Under 24 C.F.R. § 982.551(k), members of a participating family "must not commit fraud, bribery or any other corrupt or criminal act in connection with the programs." To grant an injunction preserving the voucher of a participant who flagrantly bypassed reporting requirements would signal that tenants can disregard household composition rules with impunity, fundamentally disserving the public interest in a fair and tightly regulated subsidy program.

   *2. The Equities Weigh Strongly Against a Plaintiff Who Committed Documented Program Fraud for Ten Months.*

Mr. Copeland approaches this Court seeking the extraordinary equitable remedy of injunctive relief, yet the administrative record demonstrates that his predicament is the direct result of his own deception. Mr. Copeland does not dispute that his caregiver, Ms. Pitts, resided in his unit unapproved for nearly a year. To the

contrary, Ms. Pitts explicitly admitted on an October 2025 that she had already been living in the unit for 10 months. HACA policy strictly prohibits unauthorized occupants from residing in an assisted unit for more than six months.

The balance of equities cannot favor a party who intentionally conceals an unauthorized occupant for ten months, triggers his own eviction by a private landlord due to that unauthorized occupant's disturbances, and only attempts to formally request a reasonable accommodation after the fraud is discovered and his lease is non-renewed. Mr. Copeland's actions forced HACA to expend administrative resources investigating the unauthorized occupancy and conducting grievance hearings. The harm Mr. Copeland faces is self-inflicted, and the equities tip decidedly in favor of HACA, which simply enforced mandatory federal program obligations.

### 3. *Shielding Mr. Copeland from the Accurate Regulatory Consequences of His Conduct Actively Disserves the Public Interest.*

Mr. Copeland argues that an injunction is necessary because HACA's termination decision carries the "cascading consequence" of losing his eviction appeal. (Pl.'s Emergency Mtn. at 10). While sympathetic, the Legislature explicitly required PHAs to screen applicants and permits them to deny assistance if "any member of the family has committed fraud, bribery, or any other corrupt or criminal act in connection with any Federal housing program," or if "a PHA has ever terminated assistance under the program for any member of the family." 24 C.F.R. § 982.552(c)(1)(iii)–(iv). HACA's Hearing Officer thoroughly reviewed the evidentiary record and correctly determined that Mr. Copeland's 10-month unauthorized occupant arrangement constituted a program violation.

21

The public has a vital interest in ensuring that local housing authorities accurately document and report participant fraud. If this Court were to enjoin HACA from finalizing the termination or from accurately reporting the basis of the termination in its systems of record, it would effectively force the agency to falsify its internal records and blind future housing authorities to Mr. Copeland's documented history of program violations. An injunction designed to help a litigant actively conceal his past program fraud from future government agencies is the antithesis of the public interest, nor what the Legislature intended. *See Perkins v. Metro. Council, Metro HRA*, 21 F. Supp. 3d 1006, 1011 (D. Minn. 2014) ("Requiring [Housing Authority] to jeopardize its HUD funding by intentionally violating an applicable regulation cannot constitute a reasonable accommodation."). Consequently, Mr. Copeland's motion for emergency injunctive relief must be denied.

## CONCLUSION

Mr. Copeland seeks the extraordinary remedy of emergency injunctive relief on a record that does not come close to meeting the Rule 65 standard. On the merits, Mr. Copeland cannot show a substantial likelihood of success. The Hearing Officer's decision is supported by substantial evidence, complies with 24 C.F.R. § 982.555, and reflects full procedural due process. Mr. Copeland's belated attempt to invoke reasonable accommodation principles does not retroactively erase ten months of unauthorized occupancy in violation of program requirements.

Mr. Copeland also cannot establish irreparable harm attributable to HACA. His housing instability flows from a private landlord's independent non-renewal and

22

eviction proceedings that predated HACA's final administrative decision, and the injunction he seeks would not redress the state court eviction or the registry requirements. Finally, the balance of equities and the public interest weigh decisively against an order that would undermine HUD program integrity requirements and effectively insulate documented program violations from their regulatory consequences.

For these reasons, Defendant Housing Authority of the City of Austin respectfully requests that the Court deny Plaintiff's Motion for Preliminary Injunction in its entirety, and grant such other and further relief to which HACA may be justly entitled.

Dated: March 9, 2026

Respectfully submitted,

**COKINOS | YOUNG**

By:*/s/ Lauren S. Aldredge*
Lauren S. Aldredge
Texas Bar No. 24079380
Email: laldredge@cokinoslaw.com
900 S. Capital of Texas Hwy, Suite 425
Austin, TX 78746
Telephone: 512-476-1080
Fax: 512-610-1184

*Attorney for Defendant Housing*
*Authority of the City of Austin*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 9, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and served the Notice via a means permitted by the Federal Rules of Civil Procedure:


***Attorney for Plaintiff***
Audrey Bean
LAW OFFICES OF AUDREY BEAN
440 Hickory Forrest Dr
Seguin, Texas 78155
audrey@austinlitigator.com


/s/ *Lauren S. Aldredge*
Lauren S. Aldredge