IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

JOHN COPELAND,

Plaintiff

v.                                                    Civil Action No. 1:26-cv-00461-ADA

HOUSING AUTHORITY OF
THE CITY OF AUSTIN (HACA),

Defendant

**PLAINTIFF'S REPLY IN SUPPORT OF PRELIMINARY INJUNCTION**

## I. INTRODUCTION

HACA's response frames this case as a deferential review of an informal-hearing decision and treats Plaintiff's accommodation evidence as legally beside the point because Ms. Pitts supposedly had already been in the unit too long. The updated chronology defeats that framing. The discharge packet from Central Texas Rehabilitation Hospital shows that Copeland was admitted to inpatient rehabilitation on January 24, 2025 after a stroke and discharged home with a caregiver on February 13, 2025, when 24/7 care had become necessary. (Ex. A, at 1, 6–7.) HACA's own hearing summary separately records Pitts's testimony that she did not move in until Copeland needed 24/7 care. (Dkt. 15-3, at 2.)

That chronology matters because HACA's entire merits defense rests on the assertion that Pitts admitted in October 2025 to ten months of unauthorized occupancy, which would place the beginning of that occupancy around December 2024. HACA now

extends that theory further, asserting that Pitts was present "as early as" November 2024 based on the November 15, 2024 Notice of Lease Violation.

The exhibit does not bear that weight. It states that the incident occurred "[o]n Monday, November 5, 2024," although November 5, 2024 was in fact a Tuesday. More critically, it does not say Pitts was living in Copeland's apartment. It describes her only as one of the "unauthorized occupants" of the "storage room space" and notes that she was identified as Copeland's "caregiver," not his live-in aide. That description is entirely consistent with Pitts having been merely a visitor checking on Copeland's welfare, nearly two months before his stroke.

HACA's fraud theory therefore depends on piling inference upon ambiguity. It takes a facially equivocal lease-violation form and a hastily scrawled "10 mth" notation, written beside another crossed-out word on a household-change form, and treats them as conclusive proof that any later accommodation request was simply an attempt to ratify prior misconduct. But if Pitts moved in only after Copeland returned home with a caregiver in mid-February 2025, then the October 2025 paperwork does not establish ten months of occupancy at all. At a minimum, the record shows that the "10 mth" notation was imprecise, materially disputed, and insufficient to support HACA's claim that she had been an occupant for more than six months.

This updated record also strengthens Plaintiff's notice argument. The VA approved Aid and Attendance benefits on July 18, 2025, recognizing Copeland's need for regular aid and attendance, and HACA received a doctor's letter dated August 19, 2025 documenting the need for full-time care. (Ex. J; Ex. G.) That places HACA on notice of disability-related caregiver need well before the October 2025 live-in-aide paperwork and within roughly six months of Pitts's mid-February 2025 move-in. HACA therefore

cannot plausibly argue that it lacked notice until after an extended period of undisclosed co-residency.

Even under HACA's preferred deferential-review framework, Plaintiff is likely to succeed because the operative February 12, 2026 decision is legally defective on its face. The hearing officer did not reject the accommodation evidence under any recognized accommodation standard. She declared it "irrelevant" because it did not show that Pitts "had permission to live at the property." (Dkt. 15-3, at 1.) That is not the governing inquiry under the ADA, the Rehabilitation Act, the Fair Housing Act, or HACA's own Administrative Plan. Permission was the accommodation being sought.

## II. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS

Plaintiff is not asking this Court to reweigh evidence de novo. Plaintiff's point is narrower. Even if review is deferential, HACA still had to apply the correct legal standard and provide meaningful consideration of the accommodation issue actually presented. The February 12 decision did neither. It deemed the accommodation materials "irrelevant" because they did not prove prior permission for Pitts to live in the unit. But an accommodation request for a live-in aide does not fail because the aide lacked prior authorization under the unmodified rule. Prior authorization is what the accommodation process exists to address.

The updated chronology reinforces why the legal error mattered. HACA's response treats the case as though the historical occupancy period were fixed and undisputed. It is not. HACA's own hearing summary records Pitts's testimony that she moved in only when Copeland needed 24/7 care. (Dkt. 15-3, at 2.) The Central Texas Rehabilitation Hospital discharge packet corroborates that Copeland was admitted to inpatient rehabilitation on January 24, 2025 and discharged home with a caregiver on February 13, 2025. (Ex. A, at 1, 6–7.) The VA's July 18 Aid and Attendance determination and the

August 19 doctor letter further confirm that caregiver need was medically real and communicated months before the hearing. (Ex. J; Ex. G.) On this record, HACA cannot reduce the case to an admitted ten-month fraud period that automatically defeated accommodation.

HACA's own process confirms that the accommodation materials mattered. The January 26 decision was based on supposed non-receipt of Plaintiff's materials. Once IT recovered the submission, the hearing officer rescinded that decision and suspended termination pending review. Only then did HACA switch rationales and declare the same materials "irrelevant." (Dkt. 15-3, at 1, 3.) That sequence is inconsistent with HACA's attempt to portray the case as a straightforward enforcement action against undisputed misconduct. It supports Plaintiff's contention that HACA moved from an incorrect factual rationale to an incorrect legal rationale to reach the same result.

The same is true of HACA's add-on denial. HACA denied the add-on request because Pitts had supposedly been in the unit more than six months without authorization and then treated the denied add-on as the unauthorized-occupant violation justifying termination. (Dkt. 15-10.) But where the very point of the request is to authorize a disability-related live-in aide, HACA cannot lawfully collapse the unresolved accommodation issue into the violation itself. The updated chronology makes the flaw more obvious: mid-February 2025 move-in, July VA caregiver recognition, August doctor notice to HACA, October HACA live-in-aide paperwork. That sequence is the opposite of a hidden, years-long scheme. It is evidence of an accommodation issue arising from a stroke and being poorly processed through VA and HACA channels.

HACA insists Plaintiff received all process due. But a hearing is not meaningful when the dispositive accommodation issue is excluded as legally irrelevant, when prior-unit allegations are raised without advance production, and when the final written

decision invokes "Fraud and Other Program Violation" to characterize a disability-related caregiver arrangement. The notice problem is especially acute because HACA did not clearly notice an intent-based fraud charge before the hearing, yet later issued a written decision under a "Fraud and Other Program Violation" heading. Plaintiff does not need to prove every procedural defect conclusively at this stage. He needs to show a substantial likelihood that HACA did not provide a meaningful merits determination of the central defense. He has done so.

HACA's response attempts to validate its holding on the basis of "fraud" by asserting, in a footnote and without citation to any authority, that "HUD uses the term 'fraud' broadly in the program-administration context to refer to situations where required information is misstated or not reported, regardless of whether the omission was intentional." See, Defendant's Response Brief, p. 3, FN1.  In the context of administrative hearings like this one, however, HUD is bound by Section 8's governing regulations, which define "fraud and abuse" as an act or pattern of action "(1) [t]hat constitutes false statement, omission, or concealment of a substantive fact, *made with intent to deceive or mislead*; and (2) [t]hat results in payment of section 8 program funds in violation of section 8 program requirements." (emphasis added) *See* 24 C.F.R. § 792.103.  Intent and deception are elements central to every definition of fraud, including the regulations governing Section 8, and HACA neither provided Plaintiff with notice that fraud was an issue for hearing nor developed the necessary elements of intent or deception.  Defendant now attempts to gloss over these due process deficiencies by baldly expanding conduct captured by fraud to include unintentional mistakes or omissions.

**III. THE UPDATED FACTS DEFEAT HACA'S "RETROACTIVE PARDON" ARGUMENT**

HACA's response repeatedly argues that a reasonable-accommodation request cannot operate as a "retroactive pardon" for ten months of unauthorized occupancy. That proposition does not resolve this case because it assumes the very fact in dispute: that Pitts had already been living there for ten months by October 2025. The updated chronology undercuts that premise. If Copeland was discharged home with a caregiver on February 13, 2025 and Pitts moved in then to provide 24/7 care, October 2025 does not mark ten months of co-residency. At most it marks an imprecise estimate on a form completed through the VA/VASH process.

That distinction is dispositive for present purposes. HACA's merits brief depends on converting one imprecise entry into conclusive proof of long-term undisclosed occupancy and then using that premise to make all later accommodation evidence "irrelevant." But once the chronology is corrected, the Court need not accept HACA's premise. The Court can conclude, at minimum, that the historical timeline was materially disputed and that HACA could not lawfully refuse to consider accommodation on the theory that the dispute no longer mattered.

The updated facts also answer HACA's claim that it lacked notice until too late. The VA had approved Aid and Attendance by July 18, 2025, and HACA had received a doctor's letter by August 19, 2025. (Ex. J; Ex. G.) Those facts place HACA on notice of the caregiver need before the October 2025 HACA live-in-aide paperwork and long before the January 2026 hearing. HACA thus cannot rely on authorities addressing purportedly retroactive accommodation where the entity had no meaningful knowledge of the disability or related need.

**IV. PLAINTIFF HAS SHOWN IRREPARABLE HARM AND REDRESSABILITY**

HACA argues Plaintiff's housing emergency is solely the result of the private landlord's independent nonrenewal and eviction efforts. That is too narrow. Plaintiff does not contend that an injunction against HACA will force the current landlord to renew the lease. The requested relief is narrower and fully redressive: preserve Plaintiff's HUD-VASH eligibility, bar HACA from effectuating or reporting the challenged termination during this litigation, and restore a voucher that is usable to obtain substitute housing.

The updated facts strengthen irreparable harm, not weaken it. Plaintiff is a wheelchair-dependent veteran whose need for 24/7 assistance arose after a stroke and inpatient rehabilitation. He remains in non-accessible housing while trying to secure alternative housing. A voucher clouded by a contested termination decision and temporary relief only is not realistically marketable to prospective landlords. The loss here is not merely monetary. It is the threatened loss of usable housing assistance for a severely disabled participant at the moment he most needs it.

The balance of equities and public interest favor preserving the status quo. HACA has already maintained the voucher under the TRO. Continued voucher administration during litigation imposes limited burden compared to the risk of displacement, inaccessible housing, and disruption of disability-related care. Maintaining one voucher during this litigation is a minor administrative burden; the loss of usable housing assistance to a wheelchair-dependent veteran is not. Public entities have no legitimate interest in enforcing a termination decision that treated accommodation evidence as irrelevant under the wrong standard.

**V. CONCLUSION**

The revised chronology matters because HACA built its opposition around one premise: that Pitts admitted to ten months of unauthorized occupancy, making all later accommodation evidence legally irrelevant. Plaintiff's updated facts and supporting materials directly undermine that premise. Copeland's stroke occurred on January 22, 2025. He did not return home and require 24/7 care until February 13, 2025. The VA recognized caregiver need by July 18, 2025, and HACA had medical notice by August 19, 2025. On those facts, HACA's "ten months" narrative is at least materially disputed, and its refusal to adjudicate accommodation on the merits is unlikely to withstand judicial review.

For those reasons, and for the reasons stated in Plaintiff's motion and original reply, Plaintiff respectfully requests that the Court grant the preliminary injunction and preserve his HUD-VASH voucher pending final judgment.

**PRAYER**

WHEREFORE, Plaintiff respectfully requests that the Court enter a preliminary injunction maintaining Plaintiff's HUD-VASH voucher during the pendency of this action; prohibiting HACA from enforcing, effecting, or reporting the February 12, 2026 termination decision during the pendency of this action; preserving Plaintiff's eligibility for housing assistance pending final adjudication; and granting such other and further relief as the Court deems just and proper.

*Respectfully submitted,*

/s/
Audrey Bean
Texas Bar No. 24073897
Law Offices of Audrey Bean
440 Hickory Forest Dr.
Seguin, Texas 78155

Telephone: (512) 290-5739
Email: audrey@austinlitigator.com

Counsel for Plaintiff John Copeland

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2026, a true and correct copy of the foregoing

Plaintiff's Reply in Support of Preliminary Injunction, together with Exhibit A, was served

on all counsel of record via the Court's CM/ECF system in accordance with Federal Rule

of Civil Procedure 5(b)(2)(E).


/s/
Audrey Bean
Texas Bar No. 24073897
Law Offices of Audrey Bean
440 Hickory Forest Dr.
Seguin, Texas 78155
Telephone: (512) 290-5739
Email: audrey@austinlitigator.com

Counsel for Plaintiff Johnny Copeland