**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| JOHN COPELAND, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 1:26-cv-00461-ADA |
| | § | |
| HOUSING AUTHORITY OF | § | |
| THE CITY OF AUSTIN (HACA), | § | |
| | § | |
| *Defendant.* | § | |

**DEFENDANT HOUSING AUTHORITY OF THE CITY OF AUSTIN'S
<u>MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT**..................................................................................... 1

**STATEMENT OF FACTS**........................................................................................ 2

**LEGAL STANDARD** .............................................................................................. 4

**ARGUMENT**........................................................................................................ 5

    I.    The Complaint Fails to State a Plausible Claim for Relief Under Rule 12(b)(6). ....................................................................................................... 6

        A.    Mr. Copeland's § 1983 claim fails as a matter of law because the Complaint challenges a single adjudicatory determination with which he simply disagrees. 6

            1.    Mr. Copeland Fails to State a Claim for Municipal Liability Under § 1983 Because the Alleged Harm Stems from a Singular Adjudicatory Decision, Not an Official Municipal Policy. .............................................................. 6

            2.    Mr. Copeland Received Constitutionally Adequate Process, and His Disagreement with the Hearing Officer's Evidentiary Assessment Does Not Implicate the Fourteenth Amendment. .......................................................... 7

        B.    The Disability-Discrimination and Fair Housing Claims Fail Because the Complaint Establishes That the Termination Was Based on Program Violations, Not Disability. ................................................................................ 10

**CONCLUSION** .................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*A.B. ex rel. Kehoe v. Hous. Auth. of S. Bend*, No. 3:11 CV 163 PPS, 2012 WL

1877740 (N.D. Ind. May 18, 2012) ................................................................. 11

*Armstrong v. Manzo*, 380 U.S. 545 (1965) ................................................................ 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................... 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................... 5

*Bolton v. City of Dallas*, 541 F.3d 545 (5th Cir. 2008) ............................................ 7

*Bush v. City of Gulfport, Miss.*, 454 F. App'x 270 (5th Cir. 2011) ........................... 10

*Cambric v. City of Corpus Christi*, No. 25-40126, 2026 WL 709200 (5th Cir. Mar. 13,

2026) ............................................................................................................... 5

*FM Props. Operating Co. v. City of Austin*, 93 F.3d 167 (5th Cir. 1996) .................... 9

*Gelin v. Hous. Auth. of New Orleans*, 456 F.3d 525 (5th Cir. 2006) .......................... 7

*George v. SI Group, Inc.*, 36 F.4th 611 (5th Cir. 2022) ............................................. 4

*Goldberg v. Kelly*, 397 U.S. 254 (1970) ................................................................... 8

*Gosnell v. City of Troy*, 59 F.3d 654 (7th Cir. 1995) ................................................. 9

*James v. Dallas Hous. Auth.*, 526 F. App'x 388 (5th Cir. 2013) ............................ 6, 7

*Lane v. Lake Cnty. Hous. Comm'n*, 724 F. Supp. 3d 1026 (N.D. Cal. 2024) .............. 10

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383 (5th Cir. 2010) . 5

*Lynch v. McNamara*, 342 F. Supp. 2d 59 (D. Conn. 2004) ........................................ 9

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) .................................................. 6

*Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001) ...................................... 6

*Poole v. Hous. Auth. for the Town of Vinton*, 202 F. Supp. 3d 617 (W.D. La. 2016) . 10

*Salisbury v. City of Santa Monica*, 998 F.3d 852 (9th Cir. 2021) .............................. 10

*Schwarzer v. Wainwright*, No. 6:18-CV-00034, 2023 WL 2950639 (S.D. Tex. Jan. 17, 2023) ........................................................................................................ 4, 5

*Thompson v. Gainesville Hous. Auth.*, No. 4:20-CV-602-SDJ-CAN, 2022 WL 7252375 (E.D. Tex. July 14, 2022) .............................................................. 5

*Williams v. Houston Hous. Auth.*, No. CV 4:09-2153, 2010 WL 11678714 (S.D. Tex. May 24, 2010) .............................................................................. 7

**Statutes**

29 U.S.C. § 794(a) .............................................................................. 10

42 U.S.C. § 12132 .............................................................................. 10

Fed. R. Civ. P. 12(b)(6) ...................................................................... 4

## PRELIMINARY STATEMENT

This case presents a question the Court can resolve on the pleadings: whether a participant in a federally subsidized housing program, terminated for harboring an unauthorized occupant and misrepresenting his household composition, states a plausible claim for relief under the disability-rights statutes and the Due Process Clause by recasting that enforcement action as discrimination. The answer, on the facts the Complaint itself supplies, is no.

Mr. Copeland does not allege that HACA refused to hold a hearing, declined to let him speak, or denied him representation. He concedes he received each of those protections. What he alleges is that the hearing officer weighed his evidence and reached the wrong result, that she should have treated his reasonable-accommodation materials as a defense to months of undisclosed co-residency rather than as irrelevant to the fraud determination. That is a quarrel with the outcome of a facially adequate administrative process. The Due Process Clause is not an appellate tribunal for housing-authority hearings, and the disability-rights statutes do not convert every adverse decision involving a disabled participant into federal litigation.

The Complaint asserts four counts, ADA Title II, Section 504 of the Rehabilitation Act, procedural due process under 42 U.S.C. § 1983, and the Fair Housing Act, but each rests on the same premise: that HACA should have excused an admitted program violation because Mr. Copeland later sought a disability-related accommodation. Accepting the Complaint's factual allegations as true, as this Court must, none of them plausibly suggests that HACA acted "by reason of" disability

1

rather than in enforcement of neutral program-integrity rules. That is the end of the matter. HACA respectfully asks this Court to dismiss the Complaint in its entirety.

## STATEMENT OF FACTS

### A.  Mr. Copeland's Housing Assistance and the Unauthorized Occupancy.

Mr. Copeland participated in the HUD-VASH Housing Choice Voucher program administered by HACA. Under the regulatory framework governing this federal assistance, participants are prohibited from committing fraud or misrepresenting household composition, which includes permitting unauthorized individuals to reside in subsidized units. 24 C.F.R. § 982.551(k).

In November 2024, the private landlord, Pathways at Chalmers Courts West, LP, discovered an unauthorized occupant, Danielle Pitts, engaging in inappropriate conduct in a storage room on the premises. (Def.'s Resp. in Opp'n to Pl.'s Mot. for Prelim. Inj., Dkt. 15, Ex. A-1). A Notice of Lease Violation was issued, and Ms. Pitts was banned from the property. (*Id.*). In disregard of that ban and of program rules, Mr. Copeland permitted Ms. Pitts to continue residing in his unit. When Ms. Pitts later submitted an add-on questionnaire to formalize her presence, she acknowledged that she had already been living in Mr. Copeland's unit for ten months. (Dkt. 15, Ex. C).

HACA's Administrative Plan requires denial of an add-on request where the individual has resided in the unit without authorization for more than six months. Accordingly, HACA denied the application on December 19, 2025. (Dkt. 15, Exs. D-3, E). Ten days later, HACA issued a Notice of Housing Assistance Termination citing "Fraud and Other Program Violation" under 24 C.F.R. § 982.551(k). (Dkt. 15, Ex. E).

**B. HACA Provided Mr. Copeland Comprehensive Procedural Protections.**

On January 2, 2026, HACA furnished Mr. Copeland with a Notice of Informal Hearing advising him of his right to counsel, to present evidence, and to cross-examine adverse witnesses. (Dkt. 15, Ex. G). The hearing convened on January 13, 2026. Mr. Copeland attended with his chosen representative, Bruce Garrison. (Dkt. 15, Ex. B-1).

At the hearing, HACA presented evidence of the unauthorized occupancy, including Ms. Pitts's written acknowledgment of a ten-month residency and her prior ban from the property. (Dkt. 15, Ex. B-1). Mr. Copeland and his representative did not contest the unauthorized occupancy itself. They argued instead that Ms. Pitts should be classified as a live-in caregiver, a contention raised, by the Complaint's own account, only after the violation had persisted for many months. (*Id.*). The hearing officer held the record open for an additional ten days, until January 20, 2026, to permit submission of medical documentation bearing on the claimed need for 24/7 care. (*Id.*).

**C. The Hearing Officer's Review and the Final Termination Decision.**

An internal email-server error initially prevented receipt of Mr. Copeland's supplemental submissions. The hearing officer issued a preliminary termination decision on January 26, 2026. (Dkt. 15, Ex. I). Two days later, upon discovering the technical failure, the hearing officer rescinded that decision and undertook a fresh review of the recovered materials. (Dkt. 15, Ex. H). That sequence merits emphasis:

confronted with the possibility that evidence had gone unconsidered, the hearing officer vacated her own ruling and started again.

On February 12, 2026, after reviewing the accommodation materials in full, the hearing officer issued the final, operative decision upholding termination. She determined that the materials were "irrelevant to both the termination and the hearing decision" because they did not establish that Ms. Pitts had obtained prior authorization to reside in the unit. (Dkt. 15, Ex. I). The question before the hearing officer was whether Mr. Copeland had committed a program violation by permitting an unauthorized occupant. The accommodation materials did not speak to that question.

### D. Procedural Posture.

Mr. Copeland filed this action on February 26, 2026, asserting claims under ADA Title II, Section 504 of the Rehabilitation Act, the Fair Housing Act, and 42 U.S.C. § 1983. (Compl., Dkt. 1). He simultaneously sought emergency preliminary relief. (Pl.'s Mot. for Prel. Inj., Dkt. 8). Following a hearing on March 18, 2026, the Court denied the motion for a preliminary injunction.

**LEGAL STANDARD**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the pleadings. *Schwarzer v. Wainwright*, No. 6:18-CV-00034, 2023 WL 2950639, at *15 (S.D. Tex. Jan. 17, 2023) (citing *George v. SI Group, Inc.*, 36 F.4th 611, 619 (5th Cir. 2022)).

Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S.

4

662, 677–78 (2009) (internal quotations omitted). To survive dismissal, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The standard does not impose a probability requirement, but it demands more than a "sheer possibility that a defendant has acted unlawfully." *Id.* Factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

The Court accepts well-pleaded factual allegations as true and construes them favorably to the plaintiff. *Cambric v. City of Corpus Christi*, No. 25-40126, 2026 WL 709200, at *2 (5th Cir. Mar. 13, 2026). That assumption of truth, however, does not extend to legal conclusions, "labels and conclusions," or "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Whether a complaint crosses the line from conceivable to plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The Court's review encompasses the complaint, documents attached to or incorporated by reference in it and matters subject to judicial notice. *Schwarzer*, 2023 WL 2950639, at *15; *Thompson v. Gainesville Hous. Auth.*, No. 4:20-CV-602-SDJ-CAN, 2022 WL 7252375, at *3 (E.D. Tex. July 14, 2022) (citing *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

## ARGUMENT

I.   **THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF UNDER RULE 12(B)(6).**

A. **Mr. Copeland's § 1983 claim fails as a matter of law because the Complaint challenges a single adjudicatory determination with which he simply disagrees.**

1. *Mr. Copeland Fails to State a Claim for Municipal Liability Under § 1983 Because the Alleged Harm Stems from a Singular Adjudicatory Decision, Not an Official Municipal Policy.*

Count 3 asserts a claim against HACA under 42 U.S.C. § 1983 for deprivation of procedural due process. (Dkt. 1 ¶¶ 32–35). Because HACA is a municipal entity, it is a "person" subject to suit under § 1983, but only on the terms *Monell* prescribes. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Municipal liability requires identification of three elements: a policymaker, an official policy or custom, and a constitutional violation whose "moving force" is that policy or custom. *Id.* at 694; *James v. Dallas Hous. Auth.*, 526 F. App'x 388, 394 (5th Cir. 2013) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

The Complaint identifies no such policy. It challenges a discrete evidentiary ruling by a single hearing officer during a single informal hearing. (Dkt. 1 ¶ 35). It does not allege a pattern of excluding accommodation evidence, a deliberately indifferent failure to train hearing officers, or any formal directive requiring the categorical disregard of disability-related submissions. "The mere fact that an alleged harm arose from the conduct of an employee of a municipality is . . . not sufficient for liability to attach." *Williams v. Houston Hous. Auth.*, No. CV 4:09-2153, 2010 WL 11678714, at *3 (S.D. Tex. May 24, 2010) (citing *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008)).

6

Nor does the hearing officer's exercise of adjudicatory discretion establish final policymaking authority. *See Gelin v. Hous. Auth. of New Orleans*, 456 F.3d 525, 528 (5th Cir. 2006) ("[E]ven if [employee] operated as Executive Director, she cannot be considered a final policymaking authority simply because she held that position. [Employee] may have wielded decisionmaking authority; her position alone, however, did not bestow any final policymaking authority."). Mr. Copeland pleads no facts demonstrating that the hearing officer possessed final policymaking authority for HACA.

There is a further difficulty. The Complaint acknowledges that Mr. Copeland's voucher was terminated pursuant to 24 C.F.R. § 982.551(k), a federal regulation promulgated by HUD, not a policy devised by HACA. (Dkt. 1 ¶¶ 14, 35(b)). Enforcement of a federal regulation is not a municipal policy attributable to the enforcing entity. *See James*, 526 F. App'x at 395 ("DHA cannot be held liable for a policy that is not attributable to it; [24 C.F.R. § 982.553(c)] was promulgated by the federal government and does not give rise to DHA's liability as a municipality under § 1983.").

Because Mr. Copeland has failed to identify an official municipal policy or custom that caused his alleged injury, his § 1983 claim against HACA cannot survive dismissal.

### 2. Mr. Copeland Received Constitutionally Adequate Process, and His Disagreement with the Hearing Officer's Evidentiary Assessment Does Not Implicate the Fourteenth Amendment.

The Due Process Clause, at its core, guarantees the opportunity to be heard "at a meaningful time and in a meaningful manner." *Goldberg v. Kelly*, 397 U.S. 254, 267

7

(1970) (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). In the context of public-assistance terminations, that guarantee encompasses:

> "timely and adequate notice detailing the reasons for a proposed termination," "an effective opportunity [for the recipient] to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally," the right "to retain an attorney if he so desires," "an impartial decision maker," a decision resting "solely on the legal rules and evidence adduced at the hearing," and a statement of "reasons for his determination and indicat[ing] the evidence he relied on."

*Id.* at 267–68, 270–71 (citations omitted).

Measured against these requirements, the process HACA afforded Mr. Copeland was thorough. The Complaint and its attachments concede that Mr. Copeland received written notice of the proposed termination; attended an informal hearing with his chosen representative; presented argument regarding reasonable accommodation; and was granted ten additional days to submit supporting documentation. (Dkt. 1, Copeland Decl. ¶¶ 8–12; Dkt. 1, Garrison Decl. ¶¶ 10–11). When a technical failure delayed receipt of that documentation, the hearing officer vacated her initial decision and reviewed the recovered materials before issuing a final ruling. (Dkt. 1 ¶ 12; Dkt. 15, Ex. H). That is the full measure of what *Goldberg* requires.

Mr. Copeland invokes *Goldberg* to argue that he was denied an "effective opportunity to defend" because the hearing officer deemed his accommodation evidence irrelevant. (Dkt. 1 ¶¶ 33–34, 35(a)). The argument conflates procedure with substance. Mr. Copeland's grievance is not that he was denied a hearing or the opportunity to present evidence. It is that the hearing officer, having considered his submission, found it insufficient to excuse the underlying program violation. That is

a disagreement with how the evidence was weighed, not with whether he was permitted to offer it.

The distinction is dispositive. "[Plaintiff]'s complaint in this regard is not based upon a lack of procedure, but rather reflects a substantive disagreement with the results . . . Such a substantive disagreement, however, is not a claim of a violation of procedural due process . . . ." *Lynch v. McNamara*, 342 F. Supp. 2d 59, 68 (D. Conn. 2004). The Due Process Clause does not require that a hearing officer reach the correct result in every instance; it requires that the participant receive a fair opportunity to be heard before the decision is made. *See FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996) (quoting *Gosnell v. City of Troy*, 59 F.3d 654, 658 (7th Cir. 1995)) ("[T]he due process clause does not require a state to implement its own law correctly[, nor does] [t]he Constitution . . . insist that a local government be right." (internal quotations omitted)). To hold otherwise would convert every contested evidentiary ruling in an administrative proceeding into a federal constitutional case.

Even accepting, *arguendo*, that the hearing officer erred in characterizing the accommodation evidence as irrelevant, "an erroneous decision does not itself give rise to a constitutional claim." *Bush v. City of Gulfport, Miss.*, 454 F. App'x 270, 279 (5th Cir. 2011). Mr. Copeland's dissatisfaction with the hearing officer's ruling is a substantive dispute masquerading as a procedural one. The Due Process Clause does not reach it.

9

**B. The Disability-Discrimination and Fair Housing Claims Fail Because the Complaint Establishes That the Termination Was Based on Program Violations, Not Disability.**

In Counts 1, 2, and 4, Mr. Copeland alleges that HACA violated ADA Title II, Section 504 of the Rehabilitation Act, and the Fair Housing Act by refusing to modify its unauthorized-occupant policy and by characterizing his caregiver arrangement as fraud. (Dkt. 1 ¶¶ 21–31, 36–39).

Under Title II and Section 504, a plaintiff must plead facts showing that he was excluded from or denied the benefits of a public entity's services "solely by reason of" or "by reason of" his disability. *Poole v. Hous. Auth. for the Town of Vinton*, 202 F. Supp. 3d 617, 625 (W.D. La. 2016) (citing 42 U.S.C. § 12132; 29 U.S.C. § 794(a)). The FHA requires a showing that the requested accommodation is both reasonable and necessary to afford equal opportunity in the use and enjoyment of a dwelling. *Lane v. Lake Cnty. Hous. Comm'n*, 724 F. Supp. 3d 1026, 1044 (N.D. Cal. 2024) (citing *Salisbury v. City of Santa Monica*, 998 F.3d 852, 857–58 (9th Cir. 2021)).

The Complaint's own allegations defeat these claims at the threshold. The hearing officer terminated Mr. Copeland's voucher for "Fraud and Other Program Violation" under 24 C.F.R. § 982.551(k), on the undisputed basis that an unauthorized occupant had resided in his unit for ten months without HACA's knowledge or approval. (Dkt. 1 ¶ 14; Dkt. 15, Exs. C, I). That is a facially neutral, program-integrity ground that applies to every participant regardless of disability status. The Complaint identifies no similarly situated non-disabled participant who was treated more favorably, no statement by any HACA official reflecting

10

discriminatory animus, and no policy singling out disabled participants for adverse treatment.

What Mr. Copeland offers instead is a theory of retroactive accommodation: that because he later sought to classify Ms. Pitts as a live-in aide, HACA was obligated to disregard the preceding months of unauthorized occupancy. The disability-rights statutes impose no such obligation. A reasonable accommodation is a prospective modification of policy to permit equal access, not a mechanism for retroactive absolution of program violations already committed. *See A.B. ex rel. Kehoe v. Hous. Auth. of S. Bend*, No. 3:11 CV 163 PPS, 2012 WL 1877740, at *8–10 (N.D. Ind. May 18, 2012) (finding that failure to accommodate claims under the ADA, FHA, and Rehabilitation Act could not proceed because there was no causal connection between plaintiff's alleged disability and her possession of drugs on the premises).

Because the termination rested on an independent regulatory violation, unauthorized occupancy and misrepresentation of household composition, Mr. Copeland cannot demonstrate that he was denied housing assistance "by reason of" his disability. The ADA, Section 504, and FHA claims fail as a matter of law.

## CONCLUSION

The Complaint, read as a whole and with every reasonable inference drawn in Mr. Copeland's favor, does not cross the line from possibility to plausibility on any of its four counts. It alleges that HACA enforced a neutral federal regulation against a participant who, by his own account, permitted an unauthorized person to reside in his subsidized unit for ten months. It alleges that he received notice, a hearing,

11

representation, an extended evidentiary record, and a written decision. And it alleges that he disagrees with how the hearing officer weighed his evidence.

None of that states a claim under the ADA, Section 504, the Fair Housing Act, or the Due Process Clause. HACA respectfully requests that this Court grant its Motion to Dismiss and dismiss Mr. Copeland's Complaint in its entirety with prejudice. HACA further requests such other and further relief to which it may be justly entitled.

Dated: April 9, 2026          Respectfully submitted,

By:*/s/ Lauren S. Aldredge*
Lauren S. Aldredge
Texas Bar No. 24079380
**COKINOS | YOUNG**
900 S. Capital of Texas Hwy, Suite 425
Austin, TX 78746
Telephone: 512-476-1080
Fax: 210-298-5007
Email: laldredge@cokinoslaw.com

*Attorney for Defendant Housing Authority of the City of Austin*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of April, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: April 9, 2026          */s/ Lauren S. Aldredge*
          **Lauren S. Aldredge**

12