**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

**JOHN COPELAND,**
Plaintiff,

Civil Action No. 1:26-cv-00461-ADA-DH

v.

**HOUSING AUTHORITY OF THE
CITY OF AUSTIN,**
Defendant.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS
AND RESPONSE TO ORDER TO SHOW CAUSE**

**I. INTRODUCTION**

HACA's motion should be denied because it depends on a premise the pleadings do not accept and Rule 12 does not permit the Court to assume: that HACA afforded Mr. Copeland a meaningful hearing before terminating a HUD-VASH voucher needed by a severely disabled veteran, and that a disability-required live-in aide becomes categorically irrelevant whenever HACA labels the aide an unauthorized occupant.

The operative question is not whether HACA may enforce neutral voucher rules in ordinary cases. It may. The question is whether HACA may terminate a disabled participant's voucher for the presence of the person who provided disability-required care, after its own hearing record memorialized evidence of 24-hour care needs, a doctor's note, live-in-aide paperwork, and asserted reasonable-accommodation submissions, yet treated that evidence as legally irrelevant because it did not prove preexisting permission. Federal voucher regulations answer that question. When a family includes a person with disabilities, a termination decision is "subject to consideration of reasonable accommodation." 24 C.F.R. § 982.552(c)(2)(iv). A live-

in aide must be approved if needed as a reasonable accommodation. 24 C.F.R. § 982.316(a). An informal hearing must test whether the termination complies with law, HUD regulations, and PHA policy. 24 C.F.R. § 982.555(a)(1).

The Complaint plausibly alleges that HACA did not do that. And if HACA contends that the original pleading leaves any gap, Plaintiff has contemporaneously moved for leave to file a First Amended Verified Complaint that pleads the relevant procedural defects and disability-accommodation facts in greater detail. The case should not be dismissed at the pleading stage, and it should not be granted as unopposed because Plaintiff is filing this response within the deadline set by the Court's show-cause order.

## II. PROCEDURAL POSTURE

HACA moved to dismiss at Dkt. 20. Plaintiff did not file a response within the default deadline under Local Rule CV-7(d). The Court ordered Plaintiff to respond to the motion or show cause why the motion should not be granted as unopposed by May 5, 2026. Plaintiff now responds to the motion within the deadline set by the Court. Plaintiff respectfully requests that the Court decide the motion on the merits and not as unopposed.

Plaintiff also files, contemporaneously with this response, a Motion for Leave to File First Amended Verified Complaint and Rule 39(b) Request. The proposed amended pleading does not change the gravamen of the case. It sharpens the facts already placed before the Court through the preliminary-injunction record and pleads additional facts concerning HACA's hearing procedures, the undisclosed evidence used at the informal hearing, HACA's live-in-aide process, and HACA's failure to consider reasonable accommodation before final termination.

2

### III. RULE 12 STANDARD AND MATERIALS BEFORE THE COURT

A Rule 12(b)(6) motion tests the sufficiency of the pleaded claim, not the defendant's factual version of the administrative record. The Court accepts well-pleaded facts as true and draws reasonable inferences in Plaintiff's favor. HACA may rely on documents attached to or incorporated by the Complaint, and the Court may consider documents that are central to the claims and referenced in the pleadings. See *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). The Court also may take judicial notice of public records and filings for the fact that they exist and for their contents, not to resolve disputed fact issues in HACA's favor. See *Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir. 2011); *Taylor v. Charter Med. Corp.,* 162 F.3d 827, 829-30 (5th Cir. 1998).

In what follows, Plaintiff cites the original verified Complaint for the facts pleaded there, HACA's own filings for the contents and procedural posture of the administrative record HACA placed before the Court, and the proposed First Amended Verified Complaint, attached to Plaintiff's contemporaneously filed Motion for Leave, for facts that elaborate or clarify Plaintiff's claims and demonstrate that any pleading deficiency is curable under Rule 15(a)(2).

If HACA asks the Court to decide disputed facts using materials outside the pleadings, Rule 12(d) supplies the rule. A motion must be converted to summary judgment when matters outside the pleadings are presented and not excluded, and the parties must receive a reasonable opportunity to present pertinent material. Fed. R. Civ. P. 12(d). HACA cannot use Rule 12(b)(6) as a one-way summary-judgment procedure by asking the Court to accept HACA's exhibits for contested conclusions while denying Plaintiff discovery into those same facts.

HACA's reliance on *Camp v. Pitts*, 411 U.S. 138 (1973), is misplaced. *Camp* governs APA-style, record-confined review of federal-agency action. This is not an APA action. Plaintiff

3

asserts claims under Title II, Section 504, the FHA, and § 1983. Those claims proceed on the facts pleaded in the operative complaint, with ordinary Rule 12 limits, not on an artificially confined administrative record selected by the defendant.

**IV. THE COMPLAINT STATES A PLAUSIBLE DUE-PROCESS CLAIM**

**A. The hearing was allegedly meaningless on the dispositive accommodation issue.**

HACA reduces due process to attendance: notice, a hearing date, representation, and a written decision. But procedural due process requires a meaningful opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). For a voucher termination hearing, HUD regulations make the hearing meaningful by requiring the hearing officer to consider whether the termination complies with law, HUD regulations, and PHA policies. 24 C.F.R. § 982.555(a)(1).

Plaintiff alleges more than dissatisfaction with the result. He alleges that HACA's hearing officer treated the central disability-accommodation evidence as legally irrelevant. HACA's own hearing summary memorializes testimony that Mr. Copeland had a doctor's note for 24/7 live-in care, had requested a handicap-accessible unit, and that Ms. Pitts stated repeatedly that reasonable-accommodation paperwork had been submitted so she could live there because he needed 24/7 care. Dkt. 15-3. Yet the decision stated that the documents were irrelevant because they did not show Ms. Pitts "had permission to live at the property." *Id*. That is not a weighing of evidence. It is a categorical exclusion of the issue federal law required HACA to consider.

There is a material difference between a hearing officer who considers accommodation evidence and finds it insufficient, and a hearing officer who treats accommodation evidence as legally irrelevant because it does not prove preexisting permission. The first is an adverse merits determination, while the second is a procedural failure because it disables the very inquiry the

4

hearing was required to conduct: permission from HACA permitting Ms. Pitts' presence was the reasonable accommodation sought.

**B. HACA's undisclosed evidence allegations make the process claim stronger, not weaker.**

The voucher regulations also require that the family be given the opportunity to examine before the hearing any PHA documents directly relevant to the hearing. 24 C.F.R. § 982.555(e)(2)(i). If the PHA does not make such documents available on request, it may not rely on them at the hearing. *Id*. Plaintiff alleges that HACA used, or attempted to use, undisclosed evidence concerning a "10 mth" add-on questionnaire, alleged prior unauthorized-occupant history at other units, and lease-violation history that Mr. Copeland disputes and still has not seen. The Notice of Informal Hearing dated January 2, 2026 is in the record as Exhibit I to the original Complaint and as Exhibit G to HACA's preliminary-injunction response. On its face, the Notice advised Mr. Copeland of his right to be represented, to present evidence, and to conduct cross-examination, but did not advise him of the regulatory right to request and examine HACA's directly relevant documents before the hearing. Compl. ¶ 17; Compl. Ex. I; Dkt. 15 Ex. G. The proposed amended pleading further pleads the omission. See Proposed FAC ¶¶ 47-48, 55-56.

Those allegations matter at the pleading stage. HACA's motion assumes that the informal hearing supplied adequate process because HACA says it did. The original verified Complaint pleads, and HACA's own filings confirm, that HACA's automated phone system states requests for hearing recordings must be submitted in writing 48 hours in advance, that this requirement was not disclosed in the Notice of Informal Hearing, and that HACA representative Dylan Shubitz denied knowledge of any such requirement and stated no recording exists. Compl. ¶ 17; Garrison Decl. ¶ 20; Copeland Decl. ¶ 7; Compl. Ex. I. The hearing thus omitted the regulatory discovery notice, proceeded on undisclosed evidence, lacked an objective record despite an

undisclosed public-facing recording procedure, and culminated in a decision that refused to consider disability accommodation. Those facts state a procedural claim.

## C. Monell is satisfied, and any arguable Monell gap is curable.

HACA argues that § 1983 liability fails because Plaintiff challenges only a single hearing officer's decision. The argument is too narrow. *Monell* liability attaches when the execution of a government's policy or custom inflicts the injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Official policy includes formally adopted rules and decisions, and a single decision can constitute official policy when made by an official with final policymaking authority over the subject matter. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986).

Plaintiff alleges that HACA's written and operational procedures failed to integrate reasonable-accommodation review into voucher-termination hearings in a manner required by federal law, that HACA applied a rigid six-month rule without individualized accommodation analysis, and that the hearing decision was HACA's final agency action terminating assistance. The proposed amended complaint pleads these theories expressly as formal policy, custom, ratification, and final-action theories. See Proposed FAC ¶¶ 128-139. That is sufficient at Rule 12, and at minimum defeats dismissal with prejudice.

## V. THE ADA, SECTION 504, AND FHA CLAIMS ARE PLAUSIBLE

## A. The disability-accommodation theory is not a request for retroactive absolution.

HACA's principal merits argument reframes the case as a demand that a belated accommodation request erase a completed program violation. That is not the claim. Plaintiff alleges that the supposed unauthorized occupant was the live-in aide required by Mr. Copeland's disability, that HACA had notice of the disability-related need before final termination, and that

6

HACA terminated the voucher instead of deciding the accommodation request under the correct standard.

The regulatory structure forecloses HACA's categorical approach. Section 982.551(h)(4) recognizes that a live-in aide may reside in the unit with PHA approval. Section 982.316(a) provides that the PHA "must approve" a live-in aide if needed as a reasonable accommodation. Section 982.552(c)(2)(iv) provides that a termination decision involving a family that includes a person with disabilities is subject to reasonable-accommodation consideration under Part 8. Those provisions mean that disability-related mitigation and accommodation are part of the termination inquiry. They are not legally irrelevant because the aide had not already been approved.

The disability is not incidental to the alleged violation. It is the reason the aide was there. Plaintiff alleges that Mr. Copeland's need for 24-hour care arose after a life-altering stroke in January 2025. See Compl. ¶ 7; Proposed FAC ¶¶ 17-20. HACA's own hearing summary memorializes testimony that he had a doctor's note for 24/7 live-in care and that reasonable-accommodation paperwork had been submitted. Dkt. 15-3. A neutral-rule argument cannot defeat a disability-accommodation claim where the challenged enforcement action targets the very arrangement that allegedly made the federally funded program accessible to the disabled participant.

**B. HACA had notice sufficient to trigger accommodation obligations.**

A public entity receiving federal funds cannot avoid the ADA, Section 504, or the FHA by insisting on one form of request after receiving facts that plainly notify it of a disability-related need. The Fifth Circuit recognizes that a bad-faith failure to engage in the reasonable-

7

accommodation process can support liability. *Strife v. Aldine Indep. Sch. Dist.*, 138 F.4th 237, 247-48 (5th Cir. 2025).

Plaintiff alleges that HACA had notice from multiple sources: the doctor's note, the live-in-aide/add-on process, the VA approval of Ms. Pitts as Mr. Copeland's paid caregiver, the VA HUD-VASH counselor's involvement, HACA caseworker Kristen Peterson's DocuSign live-in-aide application, and the hearing testimony memorialized in HACA's own summary. Compl. ¶¶ 7-9, 17; Compl. Exs. G, H, I, J; Copeland Decl. ¶¶ 5, 7; Dkt. 15-3. Mr. Copeland's verified declaration further attests that at the January 13, 2026 hearing HACA's representative admitted receiving at least the service-animal accommodation request but stated HACA had not received a request regarding a caregiver. Copeland Decl. ¶ 5. The proposed amended complaint further alleges that when the hearing officer asked HACA's representative about reasonable-accommodation evidence, the representative disclosed the service-animal request but did not disclose the contemporaneous live-in-aide process even though HACA's own caseworker had transmitted the live-in-aide DocuSign and the VA HUD-VASH counselor was involved. See Proposed FAC ¶¶ 63-65. Those allegations plausibly plead notice and non-engagement.

## C. The FHA applies to HACA's administration of the voucher.

HACA administers housing assistance that determines whether Mr. Copeland can use and enjoy a dwelling. The FHA's reasonable-accommodation provision is not limited to landlords who physically possess the unit. It reaches rules, policies, practices, and services when accommodation may be necessary to afford a person with disabilities equal opportunity to use and enjoy a dwelling. 42 U.S.C. § 3604(f)(3)(B). HACA's voucher administration, live-in-aide approval process, termination decision, and fraud-coded status reporting are housing-related services within that statutory frame.

8

## VI. HACA'S "FRAUD" LABEL REINFORCES PLAINTIFF'S CLAIMS

HACA's written decision bore a "Fraud and Other Program Violation" heading, even though Plaintiff alleges that the hearing was noticed and tried as an unauthorized-occupant matter and that intentional fraud was not noticed, charged, or adjudicated at the hearing. That label matters. HUD's fraud-and-abuse regulation defines fraud and abuse to include a false statement, omission, or concealment of a substantive fact made with intent to deceive or mislead, resulting in improper Section 8 payments. 24 C.F.R. § 792.103. The Complaint alleges that Mr. Copeland did not intend to deceive HACA, that his cognitive and literacy limitations affected his paperwork, and that he believed the VA/VASH live-in-aide process and HACA process were connected because the voucher was a HUD-VASH voucher.

At Rule 12, HACA is not entitled to convert a contested disability-accommodation and due-process dispute into adjudicated fraud. The fraud label is part of the injury: it created adverse status consequences, impaired the voucher, and supplied a punitive cast to what Plaintiff alleges was a disability-related caregiving arrangement.

## VII. REQUEST FOR LEAVE TO AMEND SHOULD BE GRANTED

Dismissal with prejudice would be inappropriate even if the Court concludes that the original Complaint could have pleaded additional detail. Rule 15(a)(2) directs courts to give leave freely when justice so requires. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Fifth Circuit requires a substantial reason to deny leave. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004). Futility is assessed under the same standard as Rule 12(b)(6). *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000).

The proposed First Amended Verified Complaint states plausible claims under Title II, Section 504, the FHA, and § 1983. It pleads HACA's notice of the live-in-aide need, the

VA/VASH and HACA caseworker processes, the undisclosed recording/transcript procedure, the deficient hearing notice, the undisclosed evidence used at the hearing, the absence of central accommodation witnesses after HACA had invited the VA counselor, the rigid six-month rule, the refusal to consider accommodation evidence, and the Monell theories supporting municipal liability. HACA's anticipated futility argument is the motion to dismiss by another name. The proposed pleading answers that motion.

## VIII. CONCLUSION

Plaintiff respectfully requests that the Court deny HACA's Motion to Dismiss, decline to grant the motion as unopposed, and grant Plaintiff's contemporaneously filed Motion for Leave to File First Amended Verified Complaint. In the alternative, Plaintiff requests leave to amend before any dismissal with prejudice.

Respectfully submitted,

/s/ Audrey Bean
Audrey Bean
Texas Bar No. 24073897
Law Offices of Audrey Bean
1827 River Crossing Cir Ste D
Austin, Texas 78741
Telephone: (512) 290-5739
Email: audrey@austinlitigator.com
Counsel for Plaintiff John Copeland

## CERTIFICATE OF SERVICE

I certify that on May 5, 2026, a true and correct copy of the foregoing was served on all counsel of record through the Court's CM/ECF system.


/s/ Audrey Bean
Audrey Bean