| | |
|---|---|
| **JOHN COPELAND,** | Civil Action No. 1:26-cv-00461-ADA-DH |
| Plaintiff, | |
| v. | |
| **HOUSING AUTHORITY OF THE CITY OF AUSTIN,** | |
| Defendant. | |

**PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED VERIFIED**

**COMPLAINT AND RULE 39(b) REQUEST**

**I. RELIEF REQUESTED**

Plaintiff John Copeland moves for leave to file the First Amended Verified Complaint attached as Exhibit A. Plaintiff also requests, under Rule 39(b), that the Court order a jury trial on any triable issues for which the jury demand included in the amended pleading is not independently timely under Rule 38.

Leave should be granted. The case remains at the pleadings stage, and the proposed amendment does not change it into something new. It pleads with greater precision the same core theory that has been before the Court from the beginning: HACA terminated a severely disabled HUD-VASH participant's voucher for the presence of his disability-required live-in aide after refusing to process or consider the accommodation question under the governing federal rules.

## II. PROCEDURAL CONTEXT

HACA moved to dismiss the original Complaint. Dkt. 20. The Court ordered Plaintiff either to respond to the motion or show cause why it should not be granted as unopposed by May 5, 2026. Plaintiff responded within the Court's deadline and seeks leave to amend so the pleadings conform to the facts developed through the preliminary-injunction record and to the issues HACA raised in its motion.

Plaintiff's May 5 Response stated that Plaintiff was contemporaneously filing a motion for leave with the proposed amended pleading attached. The motion for leave was not docketed on May 5 due to an inadvertent omission, which counsel discovered on Monday, May 18, 2026, and now corrects through this motion with the proposed First Amended Verified Complaint attached as Exhibit A pursuant to Local Rule CV-7(b).

The proposed amendment adds factual detail concerning the January 2025 stroke, the Central Texas Rehabilitation discharge, the HUD-VASH voucher's VA origin, Ms. Pitts's February 13, 2025 move-in to provide care, the VA's July 18, 2025 approval of compensation for Ms. Pitts's work as Mr. Copeland's live-in aide, the larger ground-floor apartment request, HACA caseworker Kristen Petersen's direction that HACA required a separate live-in-aide/add-on process, the August 19, 2025 physician documentation, VA counselor Malcolm Adair's interview of Ms. Pitts and paper live-in-aide paperwork, the delayed November 2025 filing of that paperwork, the DocuSign live-in-aide application, HACA's December 2025 denial based on the ten-month notation, Mr. Copeland's timely informal-hearing request, the hearing notice's failure to disclose witness-presentation and witness-questioning rights or a practical Teams witness-access procedure, the VA HUD-VASH counselor's invitation to the hearing and nonappearance, the alleged Adult Protective Services welfare call when Ms. Pitts was absent

from caregiving, HACA's public-facing recording/transcript procedure, the deficient hearing notice, and the undisclosed evidence used at the informal hearing. Those facts sharpen the pleaded claims; they do not impose unfair surprise.

## III. RULE 15(a)(2) STANDARD

Rule 15(a)(2) provides that courts "should freely give leave when justice so requires." The Supreme Court identifies the ordinary grounds for denial as undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice, and futility. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). The Fifth Circuit holds that the district court needs a substantial reason to deny leave. *See Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004).

An amendment is futile only if it would fail under the Rule 12(b)(6) plausibility standard. *See Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000) (failure to state a claim); *Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368, 378 (5th Cir. 2014) (failure to survive a Rule 12(b)(6) motion analysis). HACA's disagreement with the facts, or its view that the administrative record should be read against Plaintiff, is not futility. It is merits litigation.

## IV. THE AMENDMENT IS NOT FUTILE

**A. The amended complaint states ADA, Section 504, and FHA claims.**

The proposed amended complaint alleges a straightforward accommodation violation. Mr. Copeland is a qualified disabled participant in a federally funded housing program. His January 2025 stroke left him with severe physical and cognitive limitations. He needed a live-in aide to make the voucher program accessible and usable. The person HACA characterized as an unauthorized occupant was the aide providing that disability-related care. HACA had notice of the need through the VA/VASH process, HACA caseworker communications, doctor documentation, the live-in-aide paperwork, and the hearing record. It nevertheless applied a rigid

3

six-month occupancy rule and terminated the voucher without individualized accommodation analysis.

That theory is viable under the governing regulations. A PHA must approve a live-in aide if needed as a reasonable accommodation. 24 C.F.R. § 982.316(a). Voucher occupancy rules expressly permit a live-in aide to reside in the unit with PHA approval. 24 C.F.R. § 982.551(h)(4). Most directly, when the family includes a person with disabilities, a PHA decision to deny or terminate assistance because of family action or inaction is "subject to consideration of reasonable accommodation" under Part 8. 24 C.F.R. § 982.552(c)(2)(iv). Part 8 requires federally assisted housing programs to be operated so that, when viewed in their entirety, they are readily accessible to and usable by individuals with disabilities. 24 C.F.R. §§ 8.4, 8.24, 8.28.

Section 982.551(h)(4) is a general provision authorizing a PHA to adopt reasonable policies governing live-in-aide residence and to define when PHA consent may be given or denied. By its terms, it is silent on disability accommodation. When the live-in-aide question is itself a disability-accommodation question, the controlling provisions are § 982.316(a), which mandates that a PHA must approve a live-in aide if needed as a reasonable accommodation in accordance with 24 C.F.R. part 8, and § 982.552(c)(2)(iv), which makes termination decisions involving a disabled family member subject to consideration of reasonable accommodation. Those specific, mandatory provisions control over § 982.551(h)(4)'s general grant of discretion in any case where, as here, the live-in aide is the disability-required caregiver whose approval is the accommodation being sought. HACA's six-month rule, whatever its status as a reasonable policy for non-disability cases under § 982.551(h)(4), cannot displace § 982.316(a) in this case. HACA's categorical application of that rule to Mr. Copeland, without the individualized accommodation analysis that § 982.316(a), § 982.552(c)(2)(iv), and 28 C.F.R. § 35.130(b)(7)(i)

4

require, was unauthorized by the general-discretion provision and prohibited by the controlling disability-accommodation provisions and the ADA.

HACA's futility argument, set forth in its Reply (Dkt. 26 at 8), that a belated accommodation request cannot cure a prior unauthorized occupant, assumes away the pleaded claim. Plaintiff does not ask the Court to erase a completed violation. He alleges that before final termination HACA had to consider whether the alleged violation was itself the product of a disability-related need and whether live-in-aide approval, or another comparably effective accommodation, was required to make the voucher usable. That is precisely the inquiry § 982.552(c)(2)(iv) requires.

The proposed pleading also alleges bad-faith non-engagement. The Fifth Circuit has recognized that a bad-faith failure to engage in the reasonable-accommodation process may support liability. *See Strife v. Aldine Indep. Sch. Dist.*, 138 F.4th 237, 247-48 (5th Cir. 2025). HACA allegedly knew of the live-in-aide process through its own caseworker and the VA HUD-VASH channel, yet its representative disclosed a service-animal accommodation when asked about reasonable accommodation evidence and omitted the contemporaneous live-in-aide request. Those allegations plausibly plead more than negligence.

The proposed pleading also accounts for the Fifth Circuit damages-intent framework for ADA and Section 504 claims. *Delano-Pyle* confirms that Title II and Section 504 claims against a public entity do not require a *Monell* policy, custom, or final policymaker, but compensatory damages require intentional discrimination. *Miraglia* and *Cadena* preserve that intentional-discrimination requirement while recognizing actual notice, opportunity to correct, and refusal or failure to accommodate as the practical battleground. The proposed FAC therefore pleads intentional discrimination through HACA's actual notice of Mr. Copeland's stroke-related

limitations, live-in-aide need, pending accommodation request, and defective hearing procedure, followed by denial, termination, fraud-coded treatment, and continued defense without individualized accommodation review. *See Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 574-75 (5th Cir. 2002); *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 574-75 (5th Cir. 2018); *Cadena v. El Paso Cnty.*, 946 F.3d 717, 724-26 (5th Cir. 2020).

**B. The amended complaint states a procedural due-process claim.**

The proposed amended complaint alleges a constitutionally and regulatorily defective hearing, not merely an unfavorable decision. HUD regulations required HACA to provide an informal hearing to determine whether the termination complied with law, HUD regulations, and PHA policy. 24 C.F.R. § 982.555(a)(1). The same regulation required an opportunity to examine directly relevant PHA documents before the hearing and an opportunity to present evidence and question witnesses. 24 C.F.R. § 982.555(e)(2)(i), (e)(5). Those requirements implement the basic due-process rule that notice must be meaningful enough to permit rebuttal evidence and a fair hearing. *See Goldberg v. Kelly*, 397 U.S. 254, 267-71 (1970); *Billington v. Underwood*, 613 F.2d 91, 94-95 (5th Cir. 1980). Courts applying *Goldberg* in Section 8 termination proceedings have treated the opportunity to question witnesses as essential when the adverse information supplies the basis for the loss of benefits. *See Edgecomb v. Hous. Auth. of Town of Vernon*, 824 F. Supp. 312, 315-16 (D. Conn. 1993).

Plaintiff alleges that HACA's notice did not disclose the document-examination right; did not disclose the right to present witnesses and question witnesses; did not give Mr. Copeland or his advocate a practical way to secure witness access to the Microsoft Teams hearing HACA selected and controlled; that HACA relied on undisclosed documents and allegations, including the '10 mnth' add-on questionnaire and alleged prior unauthorized-occupant history; that HACA

maintained a public-facing recording/transcript procedure but did not disclose it to Mr. Copeland in the hearing notice; that HACA's representative and counsel later denied or disclaimed any recording policy; and that the hearing officer declared disability-accommodation evidence irrelevant because it did not prove preexisting permission. Those allegations state a due-process claim because they plausibly show the hearing was structurally inadequate on the dispositive issue.

Failing to postpone the hearing once Mr. Adair did not appear is further evidence of that inadequacy. HACA and its hearing office had notified Mr. Adair and his office of the informal hearing, which shows HACA knew his testimony mattered. When he did not appear, HACA proceeded anyway, after giving Mr. Copeland no notice of the witness right and no practical mechanism to bring witnesses into HACA's Teams hearing. Mr. Adair was the witness who could explain the VA caregiver approval, the live-in-aide paperwork, the timing of Ms. Pitts's caregiving, the APS welfare call, and why Mr. Copeland believed the VA/VASH process would satisfy or coordinate with the housing-authority process.

Similarly, HACA's failure to call Mr. Copeland's HACA caseworker, Kristen Petersen, deepens the inadequacy of the hearing process because she was HACA's own employee. Ms. Petersen sent live-in-aide paperwork through DocuSign and had discussed the renewal and household-composition forms. HACA nevertheless did not produce her testimony or disclose her file when its representative argued that HACA lacked approval evidence. That is a plausible procedural defect, a plausible accommodation-process defect, and a pleaded *Monell* policy-or-practice defect concerning HACA's remote-hearing procedures.

Plaintiff does not allege an abstract duty to call his witnesses. He alleges that HACA only incurred a duty to him as to the witnesses called once they controlled the hearing procedure,

7

withheld the witness mechanism, declined to call their own employee, proceeded on a record HACA knew was materially incomplete, used evidence that he had not had a chance to review, and then used the resulting gap against him.

**C.      The amended complaint adequately pleads municipal liability for the § 1983 claim.**

The proposed amendment also answers HACA's *Monell* argument as to Count IV. A municipality is liable under § 1983 when the execution of its policy or custom inflicts the constitutional injury. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Official policy includes formal rules and decisions, and a single decision can constitute official policy when made by an official responsible for final policy on the subject. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986).

The amended complaint pleads several *Monell* pathways in the alternative. It alleges an operative policy gap in HACA's hearing procedures: the procedures did not provide a functioning mechanism requiring hearing officers to integrate reasonable-accommodation review into termination decisions. It alleges application of a rigid six-month rule without disability analysis. It alleges ratification through HACA's adoption and enforcement of the hearing decision. And it alleges, in the alternative, that the hearing decision was HACA's final action terminating assistance. Those allegations are sufficient at the pleading stage.

**V. RULE 39(b) REQUEST**

The proposed amended complaint includes a jury demand. To the extent the demand is timely as to new factual issues raised by the amendment, Rule 38 is satisfied. To the extent any triable issue is deemed outside Rule 38 because it was raised in the original pleading, Plaintiff requests relief under Rule 39(b).

Rule 39(b) authorizes the Court, on motion, to order a jury trial on any issue for which a jury might have been demanded. The Fifth Circuit favors granting Rule 39(b) motions absent strong and compelling reasons to the contrary. *See Daniel Int'l Corp. v. Fischbach & Moore, Inc.*, 916 F.2d 1061, 1064 (5th Cir. 1990); *Fredieu v. Rowan Cos.*, 738 F.2d 651, 653 (5th Cir. 1984). No such reason exists here. The case is at the pleadings stage, no scheduling order has issued, no discovery deadline has run, and HACA cannot show prejudice from trying jury-triable damages issues to a jury.

Plaintiff recognizes that an amended pleading does not revive a waived jury right as to old issues unless it raises new factual issues. That is why Plaintiff seeks Rule 39(b) relief now. The amended complaint adds new factual allegations concerning the hearing notice, the undisclosed evidence, the witness-presentation and Teams-access procedure, the recording/transcript procedure, the caseworker and VA counselor facts, the APS welfare call, and damages. A jury trial should be ordered for all triable issues.

## VI. CONCLUSION

Plaintiff respectfully requests that the Court grant leave to file the First Amended Verified Complaint attached as Exhibit A, deem it filed as of the date of the Court's order granting leave, and order under Rule 39(b) that all jury-triable issues be tried to a jury.

Respectfully submitted,

/s/ Audrey Bean
Audrey Bean
Texas Bar No. 24073897
Law Offices of Audrey Bean
1827 River Crossing Cir Ste D
Austin, Texas 78741
Telephone: (512) 290-5739
Email: audrey@austinlitigator.com
Counsel for Plaintiff John Copeland

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(g), counsel for Plaintiff conferred with counsel for Defendant by email on May 20, 2026, and Defendant's counsel stated she is not opposed to this motion for leave to amend. Plaintiff separately preserves the Rule 39(b) request to the extent necessary for any jury-triable issue.

/s/ Audrey Bean
Audrey Bean

## CERTIFICATE OF SERVICE

I certify that on May 21, 2026, a true and correct copy of the foregoing was served on defense counsel through the Court's CM/ECF system.

/s/ Audrey Bean
Audrey Bean