**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| JOHN COPELAND, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 1:26-cv-00461-ADA |
| | § | |
| HOUSING AUTHORITY OF | § | |
| THE CITY OF AUSTIN (HACA), | § | |
| | § | |
| *Defendant.* | § | |

**DEFENDANT HOUSING AUTHORITY OF THE CITY OF AUSTIN'S**
<u>**MOTION TO DISMISS**</u>

## PRELIMINARY STATEMENT

One question, narrowly framed, governs this motion. May a participant in a federally subsidized housing program, terminated for harboring an unapproved occupant well past the six-month limit set by the Housing Authority of the City of Austin ("HACA"), and for misrepresenting his household composition on official program forms, restate that program-integrity enforcement as a federal claim of disability discrimination and a denial of due process? On the face of the Amended Complaint, the answer is no.

The Amended Complaint itself concedes the essential procedural facts. Mr. Copeland received a hearing, attended with a representative of his choosing, was permitted to present his case, and was granted additional time to submit accommodation documentation. (Dkt. 28 ¶¶ 32–52.) He now contends that the process was imperfect and that several procedural shortcomings tainted the result. Taken as true, those allegations do not convert HACA's enforcement of a facially neutral rule into actionable discrimination, and they do not amount to a constitutional violation. At bottom, the Amended Complaint asserts that the hearing officer should have read the accommodation materials as a defense excusing the presence of an unauthorized occupant, rather than as evidence beside the point of whether an unauthorized occupant in fact resided in the unit. That is disagreement with an administrative outcome. It is not a federal civil-rights case.

This Court has already addressed the same record at the preliminary-injunction stage. It found that "HACA's hearing officer did not act arbitrarily or capriciously," that the "hearing officer relied on substantial, uncontested evidence of a violation of household composition rules and program fraud," and that "Plaintiff received all requisite procedural due process safeguards." (Dkt. 21 at 6, 8.) The Amended Complaint pleads no new fact that disturbs those determinations.

HACA respectfully asks that the Court dismiss the Amended Complaint in its entirety, with prejudice.

## STATEMENT OF FACTS

### A.  Mr. Copeland's Housing Assistance and the Unauthorized Occupancy

Mr. Copeland participated in the HUD-VASH Housing Choice Voucher ("HCV") program administered by HACA. The federal scheme governing that assistance is clear in two respects relevant here. Participants must accurately report their household composition, and participants may neither commit fraud nor permit unauthorized persons to live in subsidized units. The governing regulation, 24 C.F.R. § 982.551(k), states that a member of a participating family "must not commit fraud, bribery or any other corrupt or criminal act in connection with the programs." HACA's Add-On Procedure ("**Exhibit A**") supplements that command with a concrete limit: an individual may not reside in an assisted unit as an unapproved guest for more than six months.

The Amended Complaint pleads the following chronology. Mr. Copeland suffered a stroke on or about January 22, 2025, was admitted to Central Texas Rehabilitation Hospital on January 24, 2025, and was discharged home with a caregiver on or about February 13, 2025. (Dkt. 28 ¶¶ 9–11.) Upon his return, he could not safely live alone, and Ms. Danielle Pitts moved in to provide disability-related care. (Dkt. 28 ¶ 11.) In October 2025, Ms. Pitts completed an "add-on questionnaire" ("**Exhibit B-1**") stating that she had lived at Mr. Copeland's address for "10 months."

The Amended Complaint disputes the precision of that notation. Yet even on its own chronology, Ms. Pitts had resided in the unit from no later than mid-February 2025 through the October 2025 submission, a span of roughly eight months. That figure exceeds HACA's six-month limit. It exceeds it whether the better count is eight months or ten.

In written reporting ("**Exhibit B-2**") submitted to HACA in August and again in September 2025, Mr. Copeland declared that he was the only person in his household. He listed Ms. Pitts merely as an alternate or emergency contact, with an "unknown" address. The Amended Complaint offers a reason: Mr. Copeland did not understand how to report a caregiver who had not yet been approved by HACA, and his cognitive limitations and functional illiteracy affected his ability to complete the forms. (Dkt. 28 ¶¶ 56–57.) HACA does not contest that those allegations were made. HACA contends only that, accepted as true, they do not state a federal claim.

On December 19, 2025, HACA denied the live-in-aide or add-on request ("**Exhibit C**") under its policy that a proposed household addition who has lived in the unit for more than six months without authorization must be denied. On December 29, 2025, HACA issued notice ("**Exhibit D**") terminating Mr. Copeland's voucher assistance.

### B.  The Informal Hearing and HACA's Procedural Protections

Mr. Copeland timely requested an informal hearing ("**Exhibit E**"). The hearing was held on January 13, 2026, presided over by HACA hearing officer Cecilia Vargas, and Mr. Copeland attended with his chosen representative, Bruce Garrison. The Amended Complaint alleges various procedural deficiencies at the hearing, including that HACA relied on undisclosed materials (the "10 months" form, a November 2024 incident, an undisclosed property-management ban document, and alleged prior unauthorized-occupant history), (Dkt. 28 ¶¶ 41–44); that the hearing officer restricted Mr. Copeland's presentation (*id.* ¶ 47); that HACA selectively disclosed only a service-animal request when asked about reasonable-accommodation evidence (*id.* ¶ 49); and that the hearing was functionally only nine minutes long (*id.* ¶ 40). The Hearing Summary is attached hereto as **Exhibit F**.

The hearing officer did not close the record at the hearing. She explicitly permitted Mr. Copeland an extended deadline of January 20, 2026, to submit evidentiary documentation

regarding the reasonable accommodation. (Ex. F at 2.) An internal email-server error at first prevented receipt of his supplemental submissions. The hearing officer issued a preliminary termination decision on January 26, 2026. Two days later, upon learning of the technical failure, she rescinded that decision and undertook a fresh review of the recovered materials ("**Exhibit G**").

On February 12, 2026, after reviewing the accommodation materials, the hearing officer issued the final, operative decision ("**Exhibit H**") upholding termination, stating that the accommodation documentation was "irrelevant" because it "did not show Ms. Pitts had permission to live at the property." Both versions of the decision were headed "Fraud and Other Program Violation."

### C.  The Court's Prior Findings

This Court denied Mr. Copeland's motion for preliminary injunction on April 14, 2026, making the following findings: the hearing officer "did not act arbitrarily or capriciously;" the hearing officer "relied on substantial, uncontested evidence of a violation of household composition rules and program fraud;" and "Plaintiff received all requisite procedural due process safeguards." (Dkt. 21 at 6, 8). The Court found that the hearing officer "properly weighed the evidence, applied all mandated regulations." (*Id.* at 8). And the Court found that HACA "did not terminate Mr. Copeland's program participation" after the landlord's non-renewal, but instead "issued Mr. Copeland a 1-bedroom tenant-based voucher so that he could relocate and continue receiving assistance at a new property." (*Id.* at 2).

## LEGAL STANDARD

A complaint must be dismissed under Rule 12(b)(6) if it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

The Court accepts the well-pleaded factual allegations as true and views them in the light most favorable to the plaintiff; it does not, however, credit conclusory allegations or legal conclusions dressed as facts. *Kinzie v. Dallas Cnty. Hosp. Dist.*, 239 F. Supp. 2d 618, 623 (N.D. Tex. 2003) (citing *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) and *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir.1992)). Documents attached to, or referenced in, the complaint, and central to the plaintiff's claims, are properly considered part of the pleadings. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (quoting *Venture Associates Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

## ARGUMENT

I.   **THE SECTION 1983 PROCEDURAL DUE PROCESS CLAIM FAILS AS A MATTER OF LAW.**

### A. The Amended Complaint Does Not Identify an Official Municipal Policy or Custom Sufficient to Establish *Monell* Liability.

Count IV alleges that HACA deprived Mr. Copeland of procedural due process in violation of 42 U.S.C. § 1983. (Dkt. 28 ¶¶ 84–92.) HACA, as a municipal entity, is a "person" subject to suit under § 1983, but only on the terms *Monell* prescribes. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Three elements are required: a policymaker; an official policy or custom; and a constitutional violation whose "moving force" is that policy or custom. *Id.* at 694; *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Respondeat superior is unavailable. A municipality is not liable simply because it employs a tortfeasor. *Monell*, 436 U.S. at 691.

To establish municipal liability under § 1983, then, a plaintiff must show the deprivation of a federally protected right caused by action taken pursuant to an official municipal policy. *Hutcheson v. Dallas Cnty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021) (citing *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010)). A plaintiff must identify "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Id.* (quoting *Pineda v. City of Houston*, 291 F.3d 325, 238 (5th Cir. 2002)). Official policy is ordinarily contained in duly promulgated policy statements, ordinances, or regulations. *Piotrowski*, 237 F.3d at 579. It may also be evidenced by "[a] persistent widespread practice of [local government unit] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that *fairly represents [local government unit] policy*." *Chacon v. Hous. Auth. of City of El Paso*, No. EP-99-CA-410-DB, 2000 WL 33348200, at *4 (W.D. Tex. Oct. 31, 2000) (citing *Lopez v. Houston Indep. Sch. Dist.*, 817 F.2d 351, 353 (5th Cir. 1987)).

The Amended Complaint attempts to satisfy *Monell* through four theories: formal policy, custom, ratification, and final action. (Dkt. 28 ¶ 91). None succeeds.

The "formal policy" theory identifies HACA's six-month add-on rule, contained in its Household Add-On Procedure § 4.7 as the allegedly unconstitutional policy. (Dkt. 28 ¶ 91). But the six-month rule is a facially neutral program-integrity policy that applies to every participant regardless of disability status. A facially neutral policy cannot serve as the basis for *Monell* liability unless it was promulgated with "deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Piotrowski*, 237 F.3d at 579 (citing *Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 407 (1997)). Deliberate indifference is a "stringent

test, and 'a showing of simple or even heightened negligence will not suffice' to prove municipal culpability." *Id.* (citing *Brown*, 520 U.S. at 407). The Amended Complaint pleads no facts suggesting that HACA adopted the six-month rule with any awareness, much less deliberate indifference, that constitutional violations would follow from its application in accommodation cases.

The "custom" theory likewise fails. The Amended Complaint identifies no pattern of excluding accommodation evidence from termination hearings, no widespread practice of ignoring disability-related submissions, and no persistent course of conduct beyond this alleged single case. "A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it 'through some official action or imprimatur.'" *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Piotrowski*, 237 F.3d at 578). A single termination decision, even if erroneous, does not establish a *Monell* custom or practice. Similarly, bare conclusions that a single decision constitutes an "official policy" or rises to the level of a widespread custom or practice are insufficient. *Thompson v. Gainesville Hous. Auth.*, No. 4:20-CV-602-SDJ-CAN, 2022 WL 7252375, at *6 (E.D. Tex. July 14, 2022).

The "ratification" theory fares no better. The Amended Complaint alleges that HACA "adopted and enforced the hearing decision as final action," and, alternatively that "the decision was made or implemented by officials with final authority over voucher termination." (Dkt. 28 ¶ 91.) But the hearing officer's exercise of adjudicatory discretion does not establish final policymaking authority. The Fifth Circuit has long distinguished between final decisionmaking authority and final policymaking authority. *Valle*, 613 F.3d at 542 (citing *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008)).

8

In *Gelin v. Hous. Auth. of New Orleans*, the Fifth Circuit held that even an executive director "cannot be considered a final policymaking authority simply because she held that position. [Employee] may have wielded decisionmaking authority; her position alone, however, did not bestow any final policymaking authority." 456 F.3d 525, 528 (5th Cir. 2006). The "single incident exception" is "extremely narrow" and "gives rise to municipal liability only if the municipal actor is a final policymaker." *Valle*, 613 F.3d at 542 (citing *Bolton*, 541 F.3d at 548).

Here, the hearing officer is an adjudicator. She exercises discretion bounded by HACA's Administrative Plan and HUD regulations; she does not set policy. The Amended Complaint nowhere alleges that she possessed unreviewable final authority to set HACA policy on accommodation matters, nor does it identify which official did. Under Texas law, the powers of a municipal housing authority are vested in its commissioners. Tex. Loc. Gov't Code § 392.051(b). The Amended Complaint does not allege that HACA's Board of Commissioners made or ratified the challenged decision, much less that hearing officer "establish[ed] [final] municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).

To the extent that the Amended Complaint also challenges HACA's application of the federal regulation at 24 C.F.R. § 982.551(k), enforcement of a federal regulation is not a municipal policy of the enforcing entity. *See James v. Dallas Hous. Auth.*, 526 Fed. Appx. 388, 395 (5th Cir. 2013) ("DHA cannot be held liable for a policy that is not attributable to it; [24 C.F.R. § 982.553(c)] was promulgated by the federal government and does not give rise to DHA's liability as a municipality under § 1983.").

The "landlord coordination" theory, alleging that HACA's February 17, 2026, email exchange with the landlord evidences "a custom or practice of allowing landlord decisions to drive HACA's HAP and voucher decisions," (Dkt. 28 ¶ 91), fails for the additional reason that isolated

interactions between HACA and a landlord regarding a specific participant's transition timeline do not constitute a widespread policy or custom. One communication, about one participant, is not the "persistent, widespread practice" that *Monell* requires. *Piotrowski*, 237 F.3d at 579 (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)).

The Amended Complaint thus fails to identify an official municipal policy or custom that was the moving force behind the asserted constitutional deprivation. Mr. Copeland's § 1983 claim against HACA cannot survive dismissal.

### B. Mr. Copeland Received Constitutionally Adequate Process.

Even setting the *Monell* deficiency aside, the Amended Complaint does not plausibly allege a due process violation. The Due Process Clause guarantees the opportunity to be heard "at a meaningful time and in a meaningful manner." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). In the context of public-assistance terminations, that guarantee encompasses timely and adequate notice of the reasons for the proposed termination, an effective opportunity to defend by presenting arguments and evidence, the right to retain counsel, an impartial decisionmaker, and a written statement of reasons. *Id.* at 267–68, 270–71.

The Amended Complaint's own allegations establish that Mr. Copeland received each of these protections:

    a.   Written notice of the termination and the grounds therefor (Dkt. 28 ¶ 33);

    b.   Notice of the informal hearing telling him he could present evidence (*id.* ¶ 34);

    c.   The hearing itself, at which he attended with his chosen representative (*id.* ¶ 41);

    d.   Opportunity to present his case and offer testimony (*id.* 40–49);

    e.   An extended ten-day deadline to submit further documentation (*id.* ¶¶ 50–55).

When a technical issue delayed receipt of the supplemental submissions, the hearing officer vacated her initial decision and reviewed the recovered materials before issuing a final ruling. That is the opposite of a process indifferent to the participant.

The core due-process theory in the Amended Complaint is that the hearing officer treated "legally material accommodation evidence as irrelevant because it did not prove preexisting permission." (*Id.* ¶ 87.) But the *Mathews v. Eldridge* balancing test requires only that the overall process be adequate; it does not require that every procedural protection a party might desire be provided. *See* 424 U.S. 319, 335 (1976) ("First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."). Existing administrative procedures can fully satisfy due process particularly where the decision rests on documentary evidence. *Id.* at 343–45, 349.

HACA afforded Mr. Copeland considerably more than *Mathews* requires: a live hearing, an advocate, an extended evidentiary record, and a rescinded ruling so that the full record could be considered. The Amended Complaint's grievance is not that Mr. Copeland was denied a hearing, nor that he was barred from presenting evidence. The grievance is that the hearing officer, having considered his submission, found it inadequate to excuse the underlying program violation. That is disagreement with how the evidence was weighed, not denial of the chance to offer it.

The allegations about undisclosed evidence, including the November 2024 lease-violation incident, the property-management ban document, and alleged prior unauthorized-occupant history, do not change the analysis. Section 982.555 requires that a family be given the opportunity

11

to examine documents "directly relevant" to the hearing before the hearing. 24 C.F.R. 982.555(e)(2)(i). It does not impose civil-discovery obligations on a public housing agency or require the compilation and disclosure of every piece of adverse evidence in the manner of federal litigation.

But even accepting all allegations about undisclosed materials as true, the Amended Complaint concedes that the hearing officer ultimately received and reviewed all of Mr. Copeland's accommodation documentation before issuing the final decision. (Dkt. 28 ¶ 52). And in fact, this Court has already found that "the hearing officer properly weighed the evidence, applied all mandated regulations, and that Plaintiff received all requisite procedural due process safeguards." (Dkt. 21 at 8). The Amended Complaint offers nothing new to disturb that finding.

## II.   THE ADA TITLE II CLAIM FAILS BECAUSE THE TERMINATION WAS BASED ON PROGRAM-INTEGRITY VIOLATIONS, NOT DISABILITY.

Count I alleges that HACA violated Title II of the American Disabilities Act by denying Mr. Copeland "meaningful access" to its voucher program and subjecting him to discrimination "by reason of disability." (Dkt. 28 ¶ 67). Title II requires a plaintiff to plead facts showing that he was excluded from, or denied the benefits of, a public entity's services "by reason of" his disability. 42 U.S.C. § 12132. The Amended Complaint's own allegations defeat this claim at the threshold.

The hearing officer terminated Mr. Copeland's voucher for "Fraud and Other Program Violation" under 24 C.F.R. § 982.551(k), on the basis that an unauthorized occupant had resided in his unit for ten months without HACA's knowledge or approval. (Exs. B-1, H). That is a facially neutral, program-integrity ground. It applies to every participant, without regard to disability status.

The Amended Complaint identifies no similarly situated non-disabled participant who was treated more favorably. It identifies no statement by any HACA official reflecting discriminatory animus. It identifies no policy singling out disabled participants for adverse treatment.

What it offers instead is a theory of retroactive accommodation: because Mr. Copeland later sought to classify Ms. Pitts as a live-in aide, HACA was obligated to disregard the preceding months of unauthorized occupancy. The disability-rights statutes carry no such command. *See A.B. ex rel. Kehoe v. Hous. Auth. Of S. Bend*, No. 3:11-cv-163-pps, 2012 WL 1877740, at *8–10 (N.D. Ind. May 18, 2012 (finding that failure to accommodate claims under the ADA, FHA, and Rehabilitation Act could not proceed because there was no causal connection between plaintiff's alleged disability and her possession of drugs on the premises). A reasonable accommodation is a prospective modification of policy to permit equal access. It is not a mechanism for retroactive absolution of program violations already complete.

The Amended Complaint cites 24 C.F.R. §§ 982.316(a), 982.552(c)(2)(iv) for the proposition that "§ 982.551(h)(4) does not authorize a PHA to displace [the] mandatory live-in-aide accommodation rule" nor the "mandatory termination-stage accommodation rule in cases where the live-in aide is the disability-required caregiver whose approval is the accommodation being sought." (Dkt. 28 ¶ 68). But Section 982.316(a) requires a PHA to approve a live-in aide "if needed as a reasonable accommodation" only through the PHA's established process. It does not require a PHA to retroactively bless ten months of undisclosed occupancy merely because the participant later invokes the accommodation framework.

Nor does the Amended Complaint's characterization of HACA's six-month rule as a categorical bar that supplants the live-in-aide accommodation rule withstand examination. HACA's Administrative Plan provides a structured process for adding household members,

including retroactive rent adjustments for unauthorized occupancies of less than six months and mandatory termination referral for occupancies exceeding six months. (Ex. A § 4.7). The rule exists to preserve program integrity, and it applies uniformly.

Mr. Copeland's disability is not causally tied to his failure to report Ms. Pitts for nearly a year; rather, the Amended Complaint itself acknowledges that between July 2025 (when the VA approved compensation) and October 2025 (when the formal add-on paperwork was submitted), "neither caseworker indicated that Ms. Pitts risked denial simply for how long she had been caring for Mr. Copeland." (Dkt. 28 ¶ 18). The absence of a caseworker's warnings does not create a legal duty for HACA to waive its program rules retroactively.

The Amended Complaint alleges that HACA acted with "deliberate indifference." (Dkt. 28 ¶ 74.) The record reflects the opposite. The hearing officer extended deadlines. She rescinded her own ruling upon discovering a technical issue. She conducted a fresh review of Copeland's submissions. Delay, standing alone, is not a violation; the Fifth Circuit has recognized that an entity need not "move with maximum speed to complete [the interactive] process and preempt any possible concerns" and may proceed at its own pace so long as the issue requiring resolution is not truly imminent. *Strife v. Aldine Independent School District*, 138 F.4th 237, 246 (5th Cir. 2025) (quoting *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 737 (5th Cir. 1999)). What HACA undertook is precisely the kind of good-faith process *Strife* contemplates.

Because the termination rested on an independent regulatory ground, that is, unauthorized occupancy and misrepresentation of household composition, Mr. Copeland cannot show that he was denied housing assistance "by reason of" his disability.

## III.    THE SECTION 504 CLAIM FAILS FOR THE SAME REASONS.

Count II alleges a violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. (Dkt. 28 ¶¶ 75–79). The Fifth Circuit treats the accommodation obligations under the ADA and Section

14

504 coextensively. *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) (per curiam). However, Section 504 imposes a still more exacting causation standard. The plaintiff must show that he was excluded from, or denied the benefits of, a federally assisted program "solely by reason of" his disability. 29 U.S.C. § 794(a).

For all the reasons set forth with respect to Count I, this claim fails. The standard demands Mr. Copeland to show that disability was the sole reason for the adverse action, not merely a contributing factor. The Amended Complaint's own factual allegations establish that HACA's termination decision was based on multiple independent program-integrity grounds (the unauthorized occupancy for a period exceeding the six-month policy limit and inaccurate household-composition reporting on program forms), none of which are disability-based grounds. (Dkt. 28 ¶¶ 57–59). The presence of these independent, non-disability grounds defeats the "solely by reason of disability" element.

The Amended Complaint identifies HACA's alleged violations of 24 C.F.R. §§ 8.4, 8.24, 8.28, 982.316(a), and 982.552(c)(2)(iv). (Dkt. 28 ¶ 78.) None of those provisions requires a PHA to override a completed program violation because the participant later requests a disability-related accommodation. Section 982.552(c)(2)(iv) requires HACA to "consider[]" whether reasonable accommodation would change the termination decision, not to automatically reverse it. The hearing officer did consider the accommodation evidence and concluded it did not alter the termination. The Amended Complaint disputes the correctness of that conclusion, but a disputed conclusion by a hearing officer does not establish that HACA denied benefits "solely by reason of" disability.

The Amended Complaint further alleges that "HACA's undisclosed adverse evidence and deficient hearing procedures foreclosed Mr. Copeland's meaningful opportunity to develop

15

accommodation-related evidence." (Dkt. 28 ¶ 79). This allegation, even if credited, does not transform a program-integrity enforcement action into disability discrimination. The gravamen of the Section 504 claim is the same as the ADA Title II claim: disagreement with how the hearing officer weighed accommodation evidence in the context of a termination for a facially neutral regulatory violation. That is enough under Section 504.

IV.    **THE FAIR HOUSING ACT CLAIMS FAIL BECAUSE THE AMENDED COMPLAINT DOES NOT STATE A PLAUSIBLE ACCOMMODATION OR INTERFERENCE CLAIM.**

Count III alleges claims under 42 U.S.C. § 3604(f)(1)–(3)(B) for refusal to make a reasonable accommodation and for making housing unavailable because of disability. (Dkt. 28 ¶ 81). The FHA requires a showing that the requested accommodation is both "reasonable" and "necessary" to afford equal opportunity in the use and enjoyment of a dwelling. *Lane v. Lake Cnty. Hous. Comm'n*, 724 F. Supp. 3d 1026, 1044 (N.D. Cal. 2024) (citing *Salisbury v. City of Santa Monica*, 998 F.3d 852, 857–58 (9th Cir. 2021)).

HACA's position that retroactive authorization of months of unauthorized occupancy is not a "reasonable accommodation" within the meaning of § 3604(f)(3)(B) is a legally defensible interpretation of the statute. A reasonable accommodation is one that neither imposes an undue financial or administrative burden nor requires a fundamental alteration of the program. *Vision Warriors Church, Inc. v. Cherokee Cnty. Bd. of Commissioners*, No. 22-10773, 2024 WL 125969, at *10 (11th Cir. Jan. 11, 2024) (citing *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1220–21 (11th Cir. 2008)). To compel HACA to waive its program-integrity rules retroactively whenever a participant later invokes disability would fundamentally alter the nature of the program's reporting and authorization requirements.

The Amended Complaint further alleges that HACA "made housing unavailable" under § 3604(f)(1)–(2). But the Amended Complaint itself acknowledges that HACA issued Mr. Copeland

16

a one-bedroom tenant-based replacement voucher so he could relocate and continue receiving assistance. (Dkt. 28 ¶ 25.) The issuance of a replacement voucher affirmatively shows that HACA did not make housing unavailable. Mr. Copeland retained access to the voucher program. The Amended Complaint alleges Mr. Copeland did not use that voucher because it did not resolve the disability-access problem, (*id.*), but the FHA does not require that every accommodation be the plaintiff's preferred one. *See The Sec'y, United States Dep't of Hous. & Urban Dev., Charging Party, on Behalf of: Carlo Gimenez Bianco, Complainant, v. Castillo Condo. Ass'n & Carlos Toro Vizcarrondo, Respondents.,* No. HUDALJ 12-M-034-FH-9, 2014 WL 12573348, at *3 (July 17, 2014) ("The provider also need not honor the accommodation if an alternative, less obtrusive accommodation is available."); *cf. Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986) (Title VII context) ("We find no basis in either the statute or its legislative history for requiring an employer to choose any particular reasonable accommodation. By its very terms the statute directs that any reasonable accommodation by the employer is sufficient to meet its accommodation obligation.").

The allegations regarding HACA's coordination with the landlord involve actions taken by an independent private party. HACA's administrative response to those events does not constitute FHA discrimination without evidence that HACA directed or ratified discriminatory landlord conduct.

Finally, the Amended Complaint seeks punitive damages, alleging HACA acted "intentionally, knowingly, or with reckless disregard." (Dkt. 28 ¶ 83). Punitive damages in federal civil rights actions require proof of conduct "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983); *see also Louisiana ACORN Fair Hous. v. LeBlanc*, 211 F.3d 298, 303 (5th Cir.

17

2000) (holding that punitive damages under the FHA may not be awarded absent an underlying award of compensatory or nominal damages). HACA's reliance on a facially neutral program-integrity rule and its documented engagement with the accommodation process negates the reckless-disregard element.

V.    THE AMENDED COMPLAINT'S NEW FACTUAL ALLEGATIONS DO NOT CURE THE FUNDAMENTAL DEFICIENCIES.

The Amended Complaint supplies detailed allegations regarding the timing of Mr. Copeland's stroke and discharge (Dkt. 28 ¶¶ 9–11), the VA's approval of caregiver compensation (Dkt. 28 ¶ 12), the DocuSign live-in-aide application (Dkt. 28 ¶ 17), the November 2024 lease-violation date discrepancy (Dkt. 28 ¶ 44), HACA's alleged "coordination" with the landlord (Dkt. 28 ¶¶ 28–30), and the hearing's brevity (Dkt. 28 ¶¶ 40, 48). None alters the legal analysis.

Even on the Amended Complaint's revised chronology, Ms. Pitts had resided in the unit without HACA's approval for roughly eight months when the formal add-on application was filed in October 2025. That still exceeds HACA's six-month limit. The gap between eight months and ten months does not change the legal outcome.

The hearing's brevity does not, by itself, state a due process claim. Mr. Copeland was represented. He was permitted to present his case. He was afforded ten additional days to submit documentation, converting what began as a brief hearing into a multi-week submission process. The accommodation evidence was, in the end, submitted, received, reviewed, and addressed in a written decision.

The allegation that HACA disclosed only a service-animal request when asked about accommodation evidence, (Dkt. 28 ¶ 49), may, on its face, suggest an imperfect exchange at the hearing. But the Amended Complaint also concedes that the hearing officer thereafter obtained,

reviewed, and ruled upon the very accommodation evidence said to have been withheld. Whatever initial nondisclosure occurred was cured by the post-hearing submission and review process.

**CONCLUSION**

Read as a whole, and with every reasonable inference drawn in Mr. Copeland's favor, the Amended Complaint does not cross the line from possibility to plausibility on any of its four counts. It alleges that HACA enforced a neutral program-integrity policy against a participant who, by his own account, permitted an occupant to reside in his unit beyond HACA's six-month limit without HACA's knowledge or approval. It alleges that he received notice; that he attended a hearing with representation; that he was afforded an extended evidentiary submission period; that an initial ruling was rescinded so a fresh review could occur; that his accommodation materials were reviewed; and that he received a written decision explaining the hearing officer's reasoning. It alleges, finally, that he disagrees with how the hearing officer characterized his accommodation evidence.

Those allegations, even fully credited, do not state a claim under the ADA, Section 504, the Fair Housing Act, or the Due Process Clause. HACA respectfully requests that the Court grant this Motion to Dismiss and dismiss Mr. Copeland's First Amended Verified Complaint in its entirety, with prejudice. HACA further requests such other and further relief to which it may be justly entitled.

Dated: June 4, 2026

Respectfully submitted,

By: */s/ Lauren S. Aldredge*
Lauren S. Aldredge
Texas Bar No. 24079380
**COKINOS | YOUNG**
900 S. Capital of Texas Hwy, Suite 425

Austin, TX 78746
Telephone: 512-476-1080
Fax: 210-298-5007
Email: laldredge@cokinoslaw.com

*Attorney for Defendant Housing Authority of the City of Austin*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of June 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: June 4, 2026            */s/ Lauren S. Aldredge*
                                      **Lauren S. Aldredge**