**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS AUSTIN DIVISION**

JOHN COPELAND, *Plaintiff,*

v.

HOUSING AUTHORITY OF THE
CITY OF AUSTIN (HACA), *Defendant.*

§
§
§
§
§
§
§
§

Civil Action No. 1:26-cv-00461-ADA-DH

**Civil Action No. 1:26-cv-00461-ADA-DH**

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff John Copeland respectfully files this Response in Opposition to Defendant Housing Authority of the City of Austin's Motion to Dismiss, Dkt. 29, and would show the Court as follows.

## I. INTRODUCTION

HACA rests its motion on a premise the First Amended Verified Complaint does not concede, and that Rule 12(b)(6) does not permit the Court to resolve in HACA's favor: that this case is merely about neutral program-integrity enforcement after an undisputed, disability-independent violation.

That is not the pleading before the Court.

The FAC alleges the following sequence. Mr. Copeland is a severely disabled veteran who suffered a January 2025 stroke, became wheelchair-dependent and cognitively and functionally impaired, and could not safely live alone. Dkt. 28 ¶¶ 1-3, 9-13. On February 13, 2025, Ms. Danielle Pitts moved in to provide immediate, essential disability-related care because Mr. Copeland could not safely live alone and had no available alternative caregiver. Id. ¶¶ 11-13. Less than six months later, on July 18, 2025, the VA approved aid-and-attendance compensation tied to Mr. Copeland's need for constant assistance, on an application the FAC alleges was submitted for Ms. Pitts's caregiving role. Id. ¶¶ 12-13. On August 19, 2025, Mr. Copeland's physician wrote HACA confirming his disability and requesting that HACA accommodate his need for a 24/7 live-in aide. Id. ¶¶ 14-17. In October, Kirsten Petersen, HACA's HUD-VASH liaison and Mr. Copeland's caseworker, sent Ms. Pitts a live-in-aide application, and Malcolm Adair, Mr. Copeland's VA caseworker, interviewed Ms. Pitts, completed live-in-aide paperwork, and

submitted it for her. Id. ¶¶ 16-19, 38-39. HACA then denied the request using a six-month bright-line rule without undertaking individualized disability-accommodation analysis, and terminated Mr. Copeland's voucher because the aide lacked the very permission the accommodation request sought. Id. ¶¶ 32, 49-54, 67-79, 81-83, 86-91.

The common thread is that HACA structured each step so the outcome was foreclosed. It requested accommodation evidence that could never satisfy its stated standard, relied on evidence the participant had not been given a meaningful opportunity to examine, proceeded without the witnesses who could explain the accommodation timeline, and now characterizes the foreclosed result as neutral program enforcement.

HACA calls that "retroactive absolution." It is not. Permission for the live-in aide was the accommodation being sought. HACA could deny a particular aide only under lawful standards and after individualized consideration. It could not deny the request because the aide lacked permission, then terminate the voucher because the aide lacked permission.

HACA's due-process argument depends on the same mischaracterization. The FAC alleges much more than that Mr. Copeland presented his defense, lost, and now disagrees with the result. It alleges that HACA's process prevented him from presenting the defense in concrete ways: HACA relied on directly relevant adverse documents and allegations Mr. Copeland had not been given a meaningful prehearing opportunity to examine; HACA controlled the remote hearing platform but did not provide a meaningful mechanism for witness presentation; the hearing was functionally reduced to approximately nine minutes after internet and access problems consumed approximately six minutes of a fifteen-minute hearing; HACA proceeded without central VA and HACA witnesses; HACA did not produce its own caseworker or her file; HACA did not disclose in the hearing notice the recording and transcription procedure later described by HACA's own automated information system; and the hearing officer cut off Mr. Copeland's and Ms. Pitts's efforts to answer surprise allegations. Id. ¶¶ 34-49, 56-59, 86-91.

Those are denial-of-opportunity allegations. They are not outcome-disagreement allegations. Nor do the Court's preliminary-injunction findings decide this motion. Preliminary-injunction rulings are made under a different standard, on a different record, and before full merits

2

litigation. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). More importantly, the Court need not retreat from any preliminary evidentiary assessment to deny dismissal. Even assuming, for Rule 12 purposes only, that HACA had evidence of an unapproved occupant and that the hearing officer reviewed the materials before her, the FAC states claims because it plausibly alleges that HACA applied the wrong legal standard. The operative decision did not merely find the accommodation materials insufficient. It deemed them irrelevant unless they proved Ms. Pitts already had the permission the accommodation request sought. Dkt. 28 ¶¶ 52-54. That is not evidence-weighing.   It is a pleaded refusal to treat a live-in-aide accommodation request as a live-in-aide accommodation request.

That distinction also answers HACA's "retroactive absolution" frame. Plaintiff does not claim that disability status excuses all completed program violations. He claims that HACA treated the disability-required caregiver as an ordinary unauthorized guest, applied a local six-month rule as a categorical bar, and refused to decide whether approval of the caregiver was required as a reasonable accommodation under the specific live-in-aide, HUD-VASH, and termination-stage accommodation standards. At Rule 12, that is enough.

The motion should be denied. At minimum, any dismissal should be without prejudice and with leave to amend. If the Court considers HACA's contested extrinsic exhibits to resolve factual disputes against the FAC, Plaintiff alternatively requests conversion under Rule 12(d) and an opportunity to make the showing permitted by Rule 56(d).

## II. LEGAL STANDARD

A Rule 12(b)(6) motion tests the sufficiency of the pleading, not the strength of the evidence. The Court must accept well-pleaded facts as true, view them in the light most favorable to Plaintiff, and draw all reasonable inferences in Plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). A complaint survives if its factual allegations allow the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678.

HACA repeatedly invokes the Court's preliminary-injunction order as though it controls the pleading inquiry. It does not. "A party thus is not required to prove his case in full at a

3

preliminary-injunction hearing," and findings and conclusions made at that stage are not binding on the merits. *Camenisch*, 451 U.S. at 395. That principle applies with particular force here, where HACA asks the Court to use preliminary-injunction findings to override the FAC's well-pleaded allegations at Rule 12.

HACA also attaches and relies on exhibits. Documents referenced in a complaint and central to the claims may be considered at Rule 12 for the limited purpose recognized in *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). But the Rule 12 standard still controls: the Court must accept well-pleaded facts as true, draw reasonable inferences in Plaintiff's favor, and may not use HACA's exhibits or characterizations to resolve contested facts against the FAC. To the extent HACA asks the Court to treat contested exhibits as proof of HACA's version of events, the request is not a Rule 12 request. It is a premature summary-judgment request. See FED. R. CIV. P. 12(d).

### III. ARGUMENT

**A. The Due-Process Claim Plausibly Alleges Denial of a Meaningful Opportunity to Be Heard, Not Mere Disagreement With the Outcome.**

HACA's due-process argument depends on collapsing "prevented from defending" into "defended and lost." The FAC does not permit that collapse.

HACA frames Plaintiff's grievance as disagreement with how the evidence was weighed, not denial of the chance to offer it. But the FAC alleges that the process itself could not produce a lawful accommodation decision. HACA requested reasonable-accommodation evidence, failed to receive or lost timely submitted materials because of its own technical issue, later located or acknowledged those materials, and then deemed them irrelevant because they did not show Ms. Pitts already had permission to reside at the property. Dkt. 28 ¶¶ 50-54.

That was circular. Permission for Ms. Pitts to reside in the unit as a live-in aide was the accommodation being sought. Id. ¶¶ 1, 4, 52-54. If Ms. Pitts already had permission, there would have been no live-in-aide approval dispute, no alleged unauthorized occupancy, and no voucher termination on that ground. HACA therefore did not merely weigh accommodation evidence and reject it. It adopted a standard no accommodation evidence could satisfy: proof that the

accommodation had already been granted before HACA would consider whether the accommodation should be granted.

A hearing that conditions relief on proof the applicant cannot, by definition, supply is not a meaningful opportunity to be heard. It is the form of process without the substance.

Voucher termination requires meaningful process. *Goldberg v. Kelly*, 397 U.S. 254, 267-71 (1970); *Mathews v. Eldridge*, 424 U.S. 319, 333-35 (1976). HUD's hearing regulation reinforces that requirement. A PHA termination hearing must determine whether the challenged decision complies with law, HUD regulations, and PHA policies. 24 C.F.R. § 982.555(a)(1). The family must have an opportunity to examine directly relevant PHA documents before the hearing; if the PHA does not make a directly relevant document available for examination on request, the PHA may not rely on the document at the hearing. Id. § 982.555(e)(2)(i). The family may be represented by a lawyer or other representative, and must have the opportunity to present evidence and question witnesses. Id. § 982.555(e)(3), (e)(5). The written decision must state reasons, and factual determinations must be based on the evidence presented at the hearing. Id. § 982.555(e)(6).

The *Mathews* factors favor Plaintiff at the pleading stage. The private interest is weighty: continued HUD-VASH housing assistance for a disabled veteran who alleges that, after a stroke, he could not safely live alone and faced loss of housing security and fear of institutionalization. Dkt. 28 ¶¶ 1-3, 9-13, 60-62. The risk of erroneous deprivation was substantial: the FAC alleges that HACA used directly relevant adverse materials without a meaningful prehearing examination opportunity, conducted a short HACA-controlled remote hearing in which access problems consumed a substantial portion of the hearing time, proceeded without central VA and HACA witnesses and files, and then treated live-in-aide evidence as irrelevant unless it proved preexisting permission. Id. ¶¶ 34-49, 52-56, 86-91. And the marginal burden of the omitted safeguards was minimal: HACA could have disclosed the documents it already possessed, provided a usable witness mechanism for its own remote platform, postponed briefly for the notified VA witness or the HACA caseworker, and applied the live-in-aide accommodation standard before terminating assistance. The point is not that § 982.555 creates civil discovery. It is that, where the private

interest is high, the risk of error concrete, and the omitted safeguards low-burden, the FAC plausibly alleges constitutionally inadequate process.

The FAC pleads multiple concrete violations of those requirements. First, HACA relied on or asserted adverse documents and allegations Mr. Copeland had not been given a meaningful opportunity to examine before the hearing, including the "10 months" form, the alleged November 2024 incident, the undisclosed property-management ban document, and alleged prior unauthorized-occupant history. Dkt. 28 ¶¶ 41-46, 57, 87-89. HACA's response that § 982.555(e)(2)(i) does not create civil discovery misses the point. Plaintiff alleges that HACA used directly relevant adverse materials without giving him the prehearing examination opportunity the regulation requires.

Nor can HACA defeat that allegation by arguing that Mr. Copeland failed to request documents. The FAC alleges that HACA's notice did not inform Mr. Copeland that he had the right to request and examine, before the hearing, HACA documents directly relevant to the hearing. Id. ¶ 34. HACA cannot withhold notice of the document-examination right and then invoke the participant's failure to request undisclosed documents as a defense to its own reliance on them. HACA's reliance on the presence of an advocate does not cure that defect. A representative can assist a participant only if the process gives the representative something meaningful to use. The FAC alleges that, over the advocate's objection, the hearing officer relied on or asserted documents and allegations Mr. Copeland had not been given a meaningful prehearing opportunity to review. Id. ¶ 41. It further alleges that, again over the advocate's objection, the hearing officer cut off Mr. Copeland's and Ms. Pitts's attempts to answer those surprise allegations in the middle of their explanation. Id. ¶ 47. Allowing an advocate to attend a hearing does not satisfy due process if the advocate and participant cannot examine the materials being used and cannot meaningfully rebut the allegations those materials support. Representation is not a substitute for the regulatory protections that make representation useful.

Second, HACA's use of undisclosed evidence was not harmless. The materials allegedly included the "10 months" form, the November 2024 incident, an undisclosed property-management ban document, and alleged prior unauthorized-occupant history from other locations.

6

Id. ¶¶ 41-46, 87-89. The FAC alleges that the ban document was not disclosed before the hearing; that Mr. Copeland disputes the underlying incident; that the lease-violation document contains an internal date error; and that Mr. Copeland still has not received the supporting evidence for the prior-history allegation. Id. ¶¶ 44-46. These are not collateral details. They are the adverse factual predicates HACA used to support termination and to characterize the case as fraud and program violation.

Third, HACA selected and controlled the Microsoft Teams platform, did not record the hearing, did not disclose in the hearing notice the recording and transcription procedure later described by HACA's own automated information system, and conducted a hearing that was functionally reduced to approximately nine minutes after approximately six minutes were consumed by internet and device-transition problems. Dkt. 28 ¶¶ 34-36, 40, 48, 56, 87-88. A remote forum selected by the government but functionally unusable by the disabled participant during a substantial portion of a short termination hearing plausibly creates an unacceptable risk of erroneous deprivation.

The recording and transcription issue does not depend on any new evidence. The FAC itself alleges that HACA's automated information system stated that a participant could request a recording of an informal hearing from the hearing officer before a stated deadline and that a transcript could be prepared at the participant's expense. Id. ¶ 35. The FAC further alleges that, after the hearing, HACA's representative denied that this was HACA's procedure or denied knowledge of it, and HACA's counsel represented that there was no recording and no policy one way or the other. Id. ¶ 56. Those allegations, taken as true, support the conclusion that HACA did not disclose in its notice a recording and transcription procedure its own system described.

Fourth, HACA proceeded without the witnesses most capable of explaining the live-in-aide timeline, and HACA's motion does not answer the witness-access problem. Section 982.555(e)(5) protects the opportunity to present evidence and question witnesses. HACA relies on the notice's generic statement that Mr. Copeland could "present evidence," but the FAC alleges that HACA controlled the Microsoft Teams platform and that the hearing was conducted remotely. Dkt. 28 ¶¶ 33, 36, 40. At minimum, whether HACA disclosed or provided a usable mechanism for

a disabled participant or his advocate to bring witnesses into a HACA-controlled remote hearing is a factual issue in HACA's possession.

That issue mattered. HACA notified Mr. Adair or the VA HUD-VASH office of the hearing, Mr. Adair did not appear, and HACA proceeded without postponement even though Mr. Adair could explain the VA caregiver approval, the live-in-aide paperwork, the "10 months" notation, the APS report, and why Mr. Copeland believed the VA/VASH and HACA processes were connected. Id. ¶¶ 37-38. HACA also did not produce Ms. Petersen or her file, even though she was Mr. Copeland's HACA caseworker, sent the DocuSign live-in-aide application, and communicated with Mr. Copeland and Ms. Pitts about the live-in-aide process and household paperwork. Id. ¶ 39. The process therefore left out the witnesses most capable of explaining the disputed authorization timeline, then used the resulting evidentiary gap against Mr. Copeland. HACA's "rescission cured everything" argument does not answer these allegations. The rescission cured, at most, the initial missed-deadline rationale caused by HACA's email-server issue. It did not cure the denial of a meaningful prehearing opportunity to examine adverse materials, the inability to present or question central witnesses, the truncated Teams hearing, the selective disclosure of only the service-animal request, or the final decision's substantive refusal to consider live-in-aide permission as the accommodation being sought. When the hearing officer asked HACA's representative whether HACA had received any reasonable-accommodation evidence, he disclosed only a service-animal request and not the live-in-aide accommodation documentation from the same physician, delivered through the same channel. Dkt. 28 ¶¶ 49-54, 70-74, 87-90.

Nor can the Court dismiss the due-process claim by adopting preliminary-injunction findings. Preliminary-injunction findings do not bind the merits. *Camenisch*, 451 U.S. at 395. But the Court need not disagree with any prior evidentiary weighing to deny dismissal. Even if one assumes the hearing officer weighed the materials she considered, the FAC plausibly alleges that the legal standard she applied made the accommodation request impossible to grant and that the process denied Mr. Copeland a meaningful opportunity to defend against termination.

**B. The ADA and Rehabilitation Act Claims Are Plausibly Pleaded.**

HACA's disability-discrimination argument attacks a claim Plaintiff does not plead. HACA argues as though Plaintiff must allege comparator evidence, discriminatory statements, or a policy that expressly singles out disabled participants. But the FAC pleads failure to accommodate.

Title II prohibits a public entity from excluding a qualified individual with a disability from, denying him the benefits of, or subjecting him to discrimination under a public program "by reason of" disability. 42 U.S.C. § 12132. Discrimination includes failure to make reasonable modifications necessary to avoid excluding a qualified person with a disability from equal access to a public program. 28 C.F.R. § 35.130(b)(7). The Fifth Circuit recognizes failure to accommodate as a distinct Title II and Rehabilitation Act theory. *Windham v. Harris Cnty.*, 875 F.3d 229, 235-37 (5th Cir. 2017). *Valentine v. Collier* applies the same framework and confirms that a plaintiff may establish discrimination by reason of disability by showing failure to make reasonable accommodations. 993 F.3d 270, 289-90 (5th Cir. 2021).

The plaintiff must show that the disability and consequential limitations were known to the covered entity, either because the plaintiff identified the disability, limitation, and requested accommodation in direct and specific terms, or because the disability, resulting limitation, and necessary accommodation were open, obvious, and apparent to the entity's relevant agents. *Windham*, 875 F.3d at 236-37.

The FAC clears that threshold. It alleges that Mr. Copeland suffered a January 2025 stroke, became wheelchair-dependent, cognitively and functionally impaired, functionally illiterate, and unable to safely live alone. Dkt. 28 ¶¶ 2, 9-11, 36, 59. It alleges that Ms. Pitts lived with him to provide daily disability-related care. Id. ¶¶ 3, 11-13. It alleges that the VA approved aid-and-attendance compensation tied to his need for constant care; that physician documentation supporting a live-in-aide accommodation was delivered to HACA on or about August 19, 2025; that HACA's HUD-VASH liaison and caseworker directed or participated in the HACA live-in-aide process; and that HACA received or had access to VA/VASH, physician, DocuSign,

caseworker, and hearing evidence showing the live-in-aide accommodation need. Id. ¶¶ 12-18, 38-39, 49, 69.

This case therefore does not present the defect that defeated the claims in *Windham* or *Valentine*. In *Windham*, the plaintiff did not make a sufficiently clear and definite accommodation request. In *Valentine*, the plaintiffs lost after trial because the record did not show that the relevant officials knew the specific limitation and accommodation need or that it was open, obvious, and apparent. Here, the FAC alleges direct notice through physician documentation, VA/HUD-VASH caregiver approval and paperwork, HACA DocuSign live-in-aide materials, HACA caseworker involvement, and hearing evidence concerning the same live-in-aide need. Dkt. 28 ¶¶ 12-18, 38-39, 49, 69. At Rule 12, the knowledge and request element is plausibly pleaded.

Nor does HACA's no-animus framing defeat the claim. Binding Supreme Court authority recognizes that disability discrimination often arises not from invidious animus but from "thoughtlessness," "indifference," or "benign neglect," and that much of the conduct Congress sought to reach would be difficult or impossible to reach if the disability statutes required proof of discriminatory purpose. *Alexander v. Choate*, 469 U.S. 287, 295-97 (1985). Plaintiff relies on established Title II, Section 504, and Fifth Circuit failure-to-accommodate law, not on any heightened or extra-textual standard.

The governing voucher regulations confirm why those allegations matter, and they also defeat HACA's reading of its own authority. A family with a disabled member may request approval of a live-in aide, and the PHA "must approve a live-in aide if needed as a reasonable accommodation in accordance with 24 CFR part 8 to make the program accessible to and usable by the family member with a disability." 24 C.F.R. § 982.316(a). Separately, when a family includes a person with disabilities, a termination decision based on family action or inaction is "subject to consideration of reasonable accommodation in accordance with part 8." 24 C.F.R. § 982.552(c)(2)(iv).

HACA misreads the live-in-aide provision. HACA contends that § 982.316(a) requires approval of a live-in aide only through the PHA's established process. That qualifier appears nowhere in the regulation. The only qualifier in § 982.316(a) is "in accordance with 24 CFR part

8," the reasonable-accommodation standard that is the source of the obligation, not a local procedural precondition a participant must satisfy before the mandate attaches.

The regulation's structure confirms the point. Once a live-in aide is needed as a reasonable accommodation, subsection (a) compels approval, and subsection (b) supplies the only grounds on which a PHA "may refuse to approve a particular person as a live-in aide, or may withdraw such approval": where the person "commits fraud, bribery or any other corrupt or criminal act in connection with any federal housing program"; "commits drug-related criminal activity or violent criminal activity"; or "currently owes rent or other amounts to the PHA." 24 C.F.R. § 982.316(b)(1)-(3). Each ground turns on the conduct of "the person"—the live-in aide whose approval is sought. The FAC alleges none of these as to Ms. Pitts. She is not alleged to have committed any criminal act, and is not alleged to owe any amount to any PHA.

That structure now explains fully HACA's oddly misplaced reliance on a fraud characterization. Because § 982.316(a) required approval of Ms. Pitts as a reasonable accommodation, the only way to refuse her was to fit her within a § 982.316(b) exception, and the only exception HACA could even invoke was § 982.316(b)(1). But § 982.316(b)(1) authorizes refusal where the aide commits fraud or a corrupt act. HACA's fraud theory concerns Mr. Copeland's household-composition reporting, not any act by Ms. Pitts. Even taken at its highest, that is alleged conduct by the participant, not the aide, and § 982.316(b)(1) does not authorize refusing a needed live-in aide on the basis of the participant's reporting. At the pleading stage, HACA's stated ground does not establish a lawful basis to refuse the accommodation § 982.316(a) required.

The HUD-VASH Operating Requirements reinforce the same conclusion. HUD's 2024 Operating Requirements provide that local PHA policies apply to HUD-VASH only unless they conflict with HUD-VASH requirements, in which case the HUD-VASH requirements supersede the local policy. *Section 8 Housing Choice Vouchers: Revised Implementation of the HUD-Veterans Affairs Supportive Housing Program*, 89 Fed. Reg. 65,769, 65,771 (Aug. 13, 2024). The Operating Requirements also expressly state that reasonable-accommodation obligations extend to "denial or termination of assistance" and to "informal reviews and hearings." Id. at 65,772.

Before terminating a HUD-VASH participant, a PHA "must grant reasonable accommodations for persons with disabilities in accordance with 24 CFR part 8." Id. at 65,775. HACA therefore could not apply an ordinary unauthorized-occupancy, fraud, or six-month add-on rule categorically while treating the live-in-aide accommodation evidence as irrelevant unless it proved preexisting permission.

That structural point matters here. HACA's six-month add-on rule may be a program-integrity rule in ordinary cases. But the FAC alleges that HACA used that local rule to avoid the individualized inquiry required by §§ 982.316(a) and 982.552(c)(2)(iv), and reinforced by the HUD-VASH Operating Requirements, when the alleged unauthorized occupant was the disability-required live-in caregiver whose approval was being requested. Dkt. 28 ¶¶ 32, 52-54, 67-74, 77-79, 89. That is not neutral enforcement as a matter of law. It is the pleaded failure to accommodate.

The requested accommodation also was not merely backward-looking. Plaintiff sought approval of a live-in aide so that Mr. Copeland could continue using his voucher while receiving necessary care. HACA cannot make the absence of prior permission dispositive when the requested accommodation was permission for the aide to reside there. That is the circularity at the center of the FAC: HACA denied the live-in-aide request because the aide lacked permission, then terminated the voucher because the aide lacked permission. Id. ¶¶ 1, 4, 32, 52-54, 67-70, 77-79.

Nor can HACA recast Ms. Pitts as an ordinary family-member addition subject to discretionary screening. The FAC pleads that Ms. Pitts was sought as a live-in aide, not as a family member. Id. ¶¶ 1, 3-4, 12-19, 32, 52-54, 67-79. A live-in aide is a distinct regulatory category governed by § 982.316. HACA's authority to approve additional family members does not displace the separate requirement that a PHA must approve a live-in aide if needed as a reasonable accommodation.

HACA's causation argument fails because it applies an ordinary mixed-motive disparate-treatment frame to a failure-to-accommodate claim. Failure to accommodate is not a claim that depends on comparator evidence, discriminatory statements, or proof that HACA singled out disabled participants for worse treatment. It is a claim that HACA had notice of a disability-based limitation and refused the reasonable accommodation required to make the program accessible.

12

*Bennett-Nelson* is directly on point. The Fifth Circuit explained that Title II and Section 504 impose affirmative accommodation obligations, and where a defendant fails to meet that obligation, "the cause of that failure is irrelevant." *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454-55 (5th Cir. 2005); see also *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 288-89 (5th Cir. 2005) (en banc). The question is whether the demanded accommodation is reasonable and required. If it is, "the defendants are liable simply by denying it." *Bennett-Nelson*, 431 F.3d at 455.

That rule answers HACA's Section 504 "solely by reason of" argument at the pleading stage. The FAC alleges that HACA's failure to approve or meaningfully process the live-in-aide accommodation was the cause of the denial of meaningful voucher benefits. Mr. Copeland needed Ms. Pitts as a live-in aide because he could not safely live alone after his stroke. Dkt. 28 ¶¶ 1-4, 9-19. HACA then treated the aide's presence as an unauthorized-occupancy violation and treated the accommodation evidence as irrelevant because it did not prove preexisting permission. Id. ¶¶ 32, 52-54, 67-79. On that pleaded theory, the accommodation denial is not merely one motive among several. It is the operative denial of access.

HACA's asserted program-integrity grounds do not defeat that theory on Rule 12. The FAC plausibly alleges that those grounds were not genuinely independent of disability: the occupancy was the disability-required care arrangement, and the reporting confusion arose from Mr. Copeland's cognitive limitations, functional illiteracy, dependence on others to complete paperwork, the VA/HACA dual-track process, HACA paperwork suggesting lease renewal, and the absence of HACA approval for Ms. Pitts as a household member or live-in aide. Dkt. 28 ¶¶ 13-19, 21-26, 57-59, 73. At minimum, whether HACA's asserted grounds were truly independent of the accommodation need is a factual question, not a pleading defect.

HACA's six-month premise is also not a freestanding, undisputed fact. The FAC alleges that Ms. Pitts applied through the VA to provide Mr. Copeland's care and that the VA approved aid-and-attendance compensation tied to his need for constant assistance, effective July 2025— within six months of the February 2025 move-in. Dkt. 28 ¶¶ 11-13. HACA's own motion places the VA's July 2025 approval within the same timeframe, describing the period "between July 2025 (when the VA approved compensation) and October 2025 (when the formal add-on paperwork

was submitted)." Dkt. 29 at 14. The FAC further alleges that Mr. Copeland reasonably understood the VA/VASH track to be the relevant authorization process because that was the track through which he received his HUD-VASH voucher in the first place. Dkt. 28 ¶ 13.

HACA will argue that VA approval is not HACA approval. But HACA's own framing confirms the disputed premise: the six-month "violation" depends on selecting the later October HACA add-on submission as the only legally relevant date while treating the VA track as irrelevant. Whether authorization of Ms. Pitts's caregiving role was already being pursued within the six-month window, what HACA knew before the six-month mark, what Ms. Petersen communicated about the HACA live-in-aide process, and what Mr. Adair communicated through the VA/VASH process are disputed facts central to HACA's motion. Those facts are known principally to HACA's own caseworker, Ms. Petersen, and Mr. Copeland's VA HUD-VASH counselor, Mr. Adair—the very witnesses whose files, testimony, and communications were absent from the informal hearing. Id. ¶¶ 37-39.

HACA's fraud characterization also cannot be treated as established at Rule 12. Failing to report household composition accurately is not, without more, a "corrupt or criminal act," and it is not bribery. Fraud ordinarily requires intent to deceive, and HACA cannot convert pleaded confusion into fraud intent on a motion to dismiss. The FAC pleads facts supporting confusion rather than intent: Mr. Copeland's stroke-related cognitive limitations, functional illiteracy, reliance on others to complete paperwork, VA/HACA process confusion, HACA's own renewal paperwork, and the fact that Ms. Pitts had not yet been approved by HACA as a household member or live-in aide. Dkt. 28 ¶¶ 21-26, 57-59, 73, 89. HUD's own fraud-and-abuse definition is consistent: it describes fraud as a false statement, omission, or concealment made with intent to deceive or mislead and resulting in improper payments. 24 C.F.R. § 792.103.

HACA's own framing confirms that the operative ground was the duration of the occupancy, not deception. HACA states that the occupancy was well over six months. But fraud does not carry a grace period. A rule under which the identical reporting would have presented no problem had the occupancy lasted under six months is a duration-based add-on rule, not an intent-to-deceive fraud provision. HACA's reliance on the length of the occupancy, rather than on any

deceptive act, confirms that the "fraud" label is affixed to what is in substance enforcement of the local six-month rule.

Nor does HACA's reliance on *A.B. ex rel. Kehoe v. Housing Authority of South Bend*, No. 3:11-cv-163, 2012 WL 1877740 (N.D. Ind. May 18, 2012), defeat the claims. HACA cites that case for the proposition that disability statutes do not excuse completed misconduct. But the material distinction is causation. *Kehoe* involved alleged misconduct not plausibly caused by disability or by the requested accommodation. Here, the FAC pleads direct causation: Ms. Pitts's presence was the disability accommodation. HACA's cited principle does not justify dismissal where the alleged "violation" is the very disability-related condition for which accommodation was requested.

HACA's reliance on *Strife v. Aldine Independent School District*, 138 F.4th 237 (5th Cir. 2025), is also misplaced. *Strife* recognized that an accommodation process need not move at maximum speed, but it reversed a Rule 12 dismissal because the complaint plausibly alleged that the defendant unjustifiably delayed and thereby failed to accommodate. Id. at 243-47. The relevant Rule 12 question is whether the defendant failed to make reasonable accommodations after being informed of the plaintiff's limitations. Id. at 246-48. Here, the FAC alleges more than delay. It alleges that HACA had access to physician documentation, VA/HUD-VASH materials, live-in-aide paperwork, caseworker communications, and hearing evidence showing the live-in-aide need, yet declared the accommodation materials irrelevant because they did not prove preexisting permission. Dkt. 28 ¶¶ 12-18, 38-39, 49-54, 69-74. If the delayed accommodation process in *Strife* plausibly stated a claim, HACA's pleaded refusal to apply the live-in-aide accommodation standard does as well.

## C. The Section 1983 Claim Is Sufficient Because the FAC Plausibly Alleges a Written HACA Policy as the Moving Force.

Plaintiff's principal municipal-liability theory is formal policy, not respondeat superior, not an isolated employee error, and not a speculative custom. HACA itself identifies the operative local rule. According to HACA, its Add-On Procedure imposed a six-month limit and required denial or termination referral when a proposed household addition had lived in the assisted unit

for more than six months without HACA authorization. Dkt. 29 at 3-4. HACA describes that rule as supplementing federal program-integrity regulations. It is therefore HACA's written policy, not HUD's.

That distinction matters. A *Monell* claim requires an official policy, promulgated by a municipal policymaker, that was the moving force behind the violation. *Edwards v. City of Balch Springs*, 70 F.4th 302, 307 (5th Cir. 2023). The moving-force requirement may be satisfied where the policy itself is unconstitutional, as distinct from a facially innocuous policy that requires deliberate-indifference proof. Id. at 307-08. A written policy is itself unconstitutional where it affirmatively allows or compels unconstitutional conduct. Id. at 309.

Plaintiff does not allege that every six-month add-on rule is unconstitutional in every application. Plaintiff alleges that HACA's written six-month add-on rule, as applied to a pending live-in-aide accommodation request, supplied the rule of decision that foreclosed the individualized accommodation analysis required by 24 C.F.R. §§ 982.316(a) and 982.552(c)(2)(iv). The FAC alleges that HACA knew the alleged unauthorized occupant was the disability-required caregiver, knew or had notice that live-in-aide approval was being sought, and nevertheless treated preexisting permission as dispositive. Dkt. 28 ¶¶ 1-4, 14-19, 32, 49-54, 67-74, 77-79, 89-91. On those allegations, the local rule did not merely leave out helpful procedural guidance. It affirmatively supplied the categorical bar that displaced the required accommodation inquiry.

The policymaker element is also plausibly satisfied. Texas law vests a housing authority's powers in its commissioners. Tex. Loc. Gov't Code § 392.051(b). For an express-policy theory, the relevant policymaker is the body that adopted or authorized the Administrative Plan and local add-on procedure. Plaintiff therefore need not establish that the hearing officer was a final policymaker. The challenged policy is the written add-on procedure; the policymaker is the body that adopted or authorized it; and the moving force is the rule's use as a categorical bar to live-in-aide approval without individualized accommodation analysis.

Nor does *James v. Dallas Housing Authority*, 526 F. App'x 388 (5th Cir. 2013), require dismissal. *James* addressed liability premised on enforcement of a federal regulation. Plaintiff's

formal-policy theory is different. Plaintiff alleges HACA adopted and applied its own local six-month add-on rule in a way that displaced mandatory federal accommodation provisions. HACA's six-month add-on rule is HACA's policy, not HUD's.

At minimum, if the Court concludes that Plaintiff should plead the Board's adoption of the Administrative Plan, the formal adoption mechanism, or the policy's operation in live-in-aide cases with more specificity, dismissal with prejudice would be inappropriate. The proper remedy would be leave to amend, not dismissal of a plausible express-policy theory at the threshold.

**D. The Fair Housing Act Claim Is Plausibly Pleaded.**

The FHA makes it unlawful to refuse reasonable accommodations in rules, policies, practices, or services when necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling. 42 U.S.C. § 3604(f)(3)(B). The Fifth Circuit recognizes that the FHA requires individualized accommodation where necessary to afford equal housing opportunity. *Groome Res., Ltd. v. Parish of Jefferson*, 234 F.3d 192, 199-200 (5th Cir. 2000).

The FAC alleges precisely that. Mr. Copeland needed a live-in aide and accessible housing to use and enjoy housing on equal terms after his stroke. Dkt. 28 ¶¶ 1-4, 9-19, 21-25, 60-62, 81-83. HACA denied the live-in-aide request under its six-month rule, treated the accommodation evidence as irrelevant because it did not prove preexisting permission, issued a one-bedroom replacement voucher that did not resolve the disability-access problem, and failed to conduct the individualized accommodation analysis required by federal law. Id. ¶¶ 23-32, 52-54, 60-63, 81-83.

HACA argues that issuance of a one-bedroom replacement voucher shows housing was not made unavailable and defeats any accommodation claim. That is a non sequitur at the pleading stage. The replacement voucher addressed relocation. It did not address the live-in-aide barrier, and the aide need followed Mr. Copeland to any unit. The FAC alleges that the replacement voucher did not resolve the disability-access problem because Mr. Copeland needed a larger ground-floor unit and live-in-aide approval for Ms. Pitts, and those accommodations were already being pursued. Dkt. 28 ¶ 25. A one-bedroom relocation voucher is not an alternative

accommodation for a live-in aide; it answers a different question. Whether HACA's alternative was adequate is, at minimum, a factual issue that cannot be resolved on Rule 12.

HACA also argues that the requested accommodation was unreasonable because it would retroactively excuse months of unauthorized occupancy. That again assumes the disputed conclusion. The FAC alleges the occupancy was the disability-required care arrangement and that permission for the live-in aide was the accommodation requested. Id. ¶¶ 1-4, 11-19, 52-54. At Rule 12, HACA cannot convert the requested accommodation into an incurable violation by assuming the answer to the accommodation question.

Plaintiff's punitive-damages prayer does not justify dismissal of the FHA claim. Plaintiff seeks punitive damages only to the extent legally available. Any remedial limitation can be addressed later and does not defeat the claim at the pleading stage.

## E. HACA's Exhibits Do Not Permit Factual Resolution Against the FAC; If the Court Converts the Motion, Plaintiff Requests Rule 56(d) Procedures.

HACA's motion repeatedly asks the Court to treat its exhibits as establishing the truth of HACA's characterization: that the six-month violation is undisputed, that the accommodation evidence was meaningfully considered, that the final decision cured all prior defects, that the replacement voucher preserved access, and that the only issue is disagreement with evidentiary weight.

That is improper at Rule 12. Plaintiff does not object to the Court considering documents that are genuinely referenced in the FAC and central to the claims for the limited purpose recognized in *Collins*. But the Rule 12 standard still controls: the Court must accept well-pleaded facts as true, draw reasonable inferences in Plaintiff's favor, and may not use HACA's exhibits or characterizations to resolve contested facts against the FAC.

Several dispositive facts are uniquely in HACA's possession: Ms. Petersen's file; HACA's communications with Mr. Adair and the VA/VASH office; all earlier disability notifications and live-in-aide communications; the complete application history, including any VA/HUD-VASH application naming Ms. Pitts and its dates; the complete record supporting the alleged prior unauthorized-occupant history; the origin and use of the alleged ban document; the

policy basis and application history for the six-month rule; the existence, content, and source of HACA's automated information-system statement concerning requests for recordings or transcripts of informal hearings; the Teams-hearing access procedure; HACA's procedures for notifying participants of the right to present and question witnesses in remote hearings; the mechanism, if any, by which a participant or advocate may bring witnesses into a HACA-controlled remote hearing; and HACA's communications with the landlord regarding voucher status, HAP payments, internet access, and eviction.

Those facts are material to HACA's motion because HACA asks the Court to decide who knew what, when authorization was sought, which approval track mattered, whether the rule was neutrally applied, whether the hearing evidence was disclosed, whether the hearing notice and remote-hearing procedures provided usable rights, and whether the process was adequate. If the Court considers HACA's contested extrinsic material to resolve those facts against Plaintiff, the Court should convert the motion under Rule 12(d) and permit Plaintiff to make the showing required by Rule 56(d). Plaintiff should not be required to defeat a quasi-summary-judgment record before discovery while HACA controls the relevant files.

## F. Dismissal With Prejudice Is Not Warranted.

HACA requests dismissal with prejudice. That relief is disproportionate and procedurally improper. The FAC is Plaintiff's first operative amended pleading. The claims turn on factual questions concerning HACA's own records, policies, hearing procedures, caseworker file, accommodation handling, landlord communications, HUD-VASH procedures, VA case-management communications, and internal decisionmaking. If the Court finds any pleading deficiency, Plaintiff respectfully requests leave to amend. See FED. R. CIV. P. 15(a)(2). Dismissal with prejudice is especially inappropriate where any alleged defect can be addressed by pleading additional facts concerning HACA's policy, HUD-VASH procedures, hearing procedures, communications, and the specific accommodation timeline.

### IV. CONCLUSION

HACA's motion does not test the sufficiency of the FAC. It asks the Court to resolve contested facts in HACA's favor: that Ms. Pitts's occupancy was disability-independent; that the

six-month rule displaced the live-in-aide accommodation requirement; that the VA/HUD-VASH approval track was irrelevant as a matter of law; that the fraud label was supported by intent to deceive; that the hearing defects were harmless; that the preliminary-injunction findings control the pleading stage; that the replacement voucher was adequate; and that HACA's own written procedures and hearing practices cannot support municipal liability.

Rule 12 does not permit that. Accepting the FAC's allegations as true, Plaintiff states plausible claims under Title II of the ADA, Section 504 of the Rehabilitation Act, the FHA, and 42 U.S.C. § 1983. The motion should be denied.

Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss. In the alternative, if the Court considers contested extrinsic materials, Plaintiff requests conversion under Rule 12(d) and an opportunity to make the showing required by Rule 56(d). In the further alternative, Plaintiff requests that any dismissal be without prejudice and with leave to amend.

Respectfully submitted,

LAW OFFICES OF AUDREY BEAN

By: /s/ Peter "Audrey" Bean
Peter "Audrey" Bean
Texas Bar No. 24073897
1827 River Crossing Cir., Ste. D
Austin, Texas 78741
Telephone: (512) 290-5739
Audrey@AustinLitigator.com

### CERTIFICATE OF SERVICE

I certify that on June 23, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notice of filing to all counsel of record.

/s/ Peter "Audrey" Bean
 Peter "Audrey" Bean