**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **JOHN COPELAND,**<br>*Plaintiff* | § | |
| **v.** | § | **No. 1:26-CV-461-ADA** |
| **HOUSING AUTHORITY OF THE CITY OF AUSTIN,**<br>*Defendant* | § | |

**ORDER AND REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE UNITED STATES DISTRICT JUDGE

Before the Court is Defendant Housing Authority of the City of Austin's ("HACA") motion to dismiss, Dkt. 29, and all related briefing. After reviewing these filings and the relevant case law, the undersigned recommends that the District Judge grant in part and deny in part the motion to dismiss. The undersigned will grant Copeland's motion to proceed *in forma pauperis*, Dkt. 2, and deny Copeland's remaining pending motions requesting discovery and asking the Court to expedite its rulings on his motions, Dkts. 9; 10; 12; 14.

## I. BACKGROUND

This is disability-discrimination case. Plaintiff John Copeland, proceeding pro se, alleges that HACA terminated his participation in the federally funded Housing Choice Voucher ("HCV") program in violation of Copeland's rights under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), the Fair Housing Act ("FHA"), and the Fourteenth Amendment. Dkt. 28, at 11-17. Copeland,

a disabled veteran, suffered a stroke that required him to secure in-home care to assist him with "eating, toileting, transfers, medication, and financial-management tasks." *Id.* at 1, 2-3. His caregiver, Danielle Pitts, moved into Copeland's home to provide him with that care. *Id.* Despite being approved as Copeland's caregiver by the U.S. Department of Veterans Affairs (the "VA"), HACA denied Copeland's request for an accommodation to allow Pitts to live in his unit as his full-time caregiver and also terminated his participation in the HCV program based on his having had an unauthorized tenant live in his unit for over six months. *Id.* at 3-11; Dkts. 29-2; 29-4 (HACA's denial of Copeland's accommodation request); 29-5 (notice of housing assistance termination).[1] Copeland's landlord also evicted him based on Pitts's unauthorized presence. Dkt. 28, at 3-11. Copeland alleges that it would have been physically impossible for him to care for himself without Pitts's live-in assistance. *Id.*

Copeland challenged HACA's termination through an administrative-appeal process, in which he alleges that HACA's representative declined to disclose his request for an accommodation to allow a full-time caregiver to live with Copeland. *Id.* at 9. HACA accused Copeland of fraud for failing to disclose Pitts's presence at his

---

[1] HACA attached several documents to its motion to dismiss. Dkts. 29-1; 29-2; 29-3; 29-4; 29-5; 29-6; 29-7; 29-8; 29-9. A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). Because certain of the documents HACA attached to its motion, Dkts. 29-2; 29-3; 29-4; 29-5; 29-6; 29-7; 29-8; 29-9, are referenced in Copeland's complaint and are central to his claims, the undersigned will consider them—as relevant—in resolving the motion to dismiss. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (explaining that a court may consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim").

home in filings he made with the agency following his stroke, despite the fact that Copeland's stroke had left him "functionally illiterate and cognitively impaired." *Id.* at 7, 10. After a hearing, HACA affirmed the termination of Copeland's participation in the HCV program. *Id.* at 11; Dkts. 29-7 (hearing summary report); 29-9 (notice of hearing decision). As a result, Copeland has suffered "loss of housing security," as well as "emotional distress, humiliation, fear of institutionalization, and loss of the benefit of a federally funded housing program." Dkt. 28, at 11.

Copeland filed this lawsuit, moving to proceed *in forma pauperis*, and for a temporary restraining order. Dkts. 1; 2; 3.[2] The District Judge granted Copeland's motion for a temporary restraining order, Dkt. 6, but denied his subsequent motion for a preliminary injunction, Dkts. 8; 21, concluding that Copeland had not shown a likelihood of success on the merits of his due-process claim. HACA now moves to dismiss Copeland's amended complaint, arguing that Copeland's "harboring [of] an unapproved occupant" and misrepresentation of his family composition doom his claims. Dkt. 29, at 2. Copeland opposed the motion, Dkt. 31, and HACA filed a reply in support of its motion to dismiss, Dkt. 32.

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the

[2] The undersigned has reviewed Copeland's financial affidavit and determined that he is indigent and should be granted leave to proceed *in forma pauperis*, without prepayment of fees. Accordingly, the Court will grant Copeland's request to proceed *in forma pauperis*, Dkt. 2.

light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## III. DISCUSSION

### A. Copeland's procedural-due-process claim should be dismissed for failure to adequately allege a custom or policy.

Copeland brought a Fourteenth Amendment claim against HACA under 42 U.S.C. § 1983, alleging that the agency violated his procedural-due-process rights in adjudicating his challenge of the termination of his HCV program benefits. Dkt. 28, at 15-17. HACA moves to dismiss this claim, arguing that Copeland failed to adequately allege an official policy or custom in support of this claim, and alternatively, that HACA provided Copeland with a constitutionally adequate process in terminating his HCV program benefits. Dkt. 29, at 6-12. Copeland responds that HACA's policy preventing unauthorized tenants from residing in a voucher-recipient's unit for more than six months was the moving force behind the violation of his procedural-due-process rights and insists that he otherwise sufficiently alleged that he was not afforded an opportunity to be heard in his administrative challenge to HACA's termination of his voucher. Dkt. 31, at 15-17. In reply, HACA maintains that Copeland's due-process claim suffers from the fatal flaw of failing to allege a cognizable municipal policy. Dkt. 32, at 7-8. The undersigned agrees.

By statute, a housing authority such as HACA is a governmental entity of the State of Texas. Tex. Loc. Gov't Code § 392.006. Under § 1983, municipalities and other such governmental units are considered "persons" subject to liability only under the framework established in *Monell v. Department of Social Services of City of New York*. 436 U.S. 658, 691 (1978) (holding that local government entities are persons subject to suit under § 1983); *de la O v. Hous. Auth. of El Paso*, 417 F.3d 495, 503 (5th Cir. 2005) (explaining that claims against a municipal housing authority are treated as claims against the municipality itself), *abrogated on other grounds by Reagan Nat'l Advert. of Aus., Inc. v. City of Aus.*, 972 F.3d 696, 703 & n.3 (5th Cir. 2020). Under *Monell*, respondeat-superior liability for the acts of municipal employees is not available; instead, Copeland must allege that a HACA official policy or custom violated his constitutional rights. 436 U.S. at 694; *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997).

Here, Copeland pleaded that HACA's policy of barring an individual from receiving a voucher under the HCV program if he allows an unauthorized tenant to reside in the subsidized dwelling for more than six months caused Copeland harm because HACA did not engage in an "individualized disability-accommodation analysis" in applying the policy to Copeland. Dkt. 28, at 17. Because Copeland alleges a "facially innocuous policy" in support of his *Monell* claim, the policy will support liability "only if 'it was promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result'" from the application of the policy. *Edwards v. City of Balch Springs*, 70 F.4th 302, 308 (5th

Cir. 2023) (quoting *Balle v. Nueces Cnty.*, 952 F.3d 552, 558 (5th Cir. 2017)). Yet nowhere does Copeland allege that HACA adopted its six-month policy with deliberate indifference to the potential for constitutional violations related to its application in cases where tenants have requested an accommodation. Dkt. 28; *Piotrowski v. City of Hou.*, 237 F.3d 567, 579 (5th Cir. 2001) (noting that "deliberate indifference of this sort is a stringent test"); *Walker v. City of Dall.*, No. 3:23-CV-0391-D, 2024 WL 2734951, at *5 (N.D. Tex. May 28, 2024) (dismissing *Monell* claim where plaintiff included only "conclusory allegation" that policymaker "acted with deliberate indifference"). Because Copeland has failed to allege a policy promulgated with deliberate indifference to a known consequence that a constitutional violation would result, his § 1983 due-process claim should be dismissed.

**B. Copeland has adequately stated the causation element of his ADA claim.**

Copeland also brought a claim under Title II of the ADA, alleging that HACA denied him meaningful access to the HCV voucher program by imposing the six-month rule against him despite his need for in-home care following his stroke. Dkt. 28, at 11-13. HACA argues that this claim should be dismissed because Copeland cannot show that he was excluded from the HCV voucher program based on his disability, instead of his violation of HACA's rule prohibiting unauthorized occupants for a period of over six months. Dkt. 29, at 12-14. Copeland responds that he adequately pleaded a causal connection between his disability and consequent need for live-in care, and HACA's decision to terminate his access to the HCV voucher program. Dkt. 31, at 30-31. In reply, HACA maintains that Copeland's allegations,

even accepted as true, do not support the causation element for his ADA claim. Dkt. 32, at 3-8.

To allege a prima facie case of discrimination under the ADA, Copeland must demonstrate that: (1) he is a "qualified individual within the meaning of the ADA"; (2) he is "being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity"; and (3) "such exclusion, denial of benefits, or discrimination is by reason of his disability." *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004). Copeland's "disability need not be the sole cause of [HACA's] discriminatory conduct for h[is] claim to be viable." *Wren v. Midwestern State Univ.*, No. 7:18-CV-00060-O-BP, 2019 WL 3099408, at *11 (N.D. Tex. June 25, 2019), *R. & R. adopted*, No. 7:18-CV-00060-O-BP, 2019 WL 3081849 (N.D. Tex. July 15, 2019) (citing *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005)); *see also Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008). Copeland has sufficiently pleaded the causation element of his ADA-discrimination claim by alleging that HACA terminated his access to the HCV voucher program based on his disability requiring in-home care, given that he was physically unable to care for himself during the time Pitts lived at Copeland's home as an unauthorized guest, and Copeland alleged that he suffered from physical and cognitive limitations during this time that impeded his ability to properly comply with HACA's six-month policy. Dkt. 28, at 1-4, 11-13.[3] Because Copeland was not required to allege that his

[3] Indeed, HACA attached evidence to its motion to dismiss demonstrating that it only denied Copeland's accommodation request because Pitts had been living at the unit for over six

disability was the sole cause of his exclusion from the HCV program, HACA's reliance on the rationale that Pitts had lived with Copeland for more than six months, in violation of HACA policy, is of no moment in assessing whether Copeland has adequately stated a claim for disability discrimination under the ADA.

HACA's cited cases, which it contends support dismissal of this claim, are unpersuasive. For example, HACA cites *A.B. ex rel. Kehoe v. Housing Authority of South Bend* for the proposition that it was not required to accommodate Copeland's need for in-home care once he had violated the six-month limit applicable to unauthorized tenants. Dkt. 29, at 13; No. 3:11 CV 163 PPS, 2012 WL 1877740, at *8-*10 (N.D. Ind. May 18, 2012), *aff'd sub*, 498 F. App'x 620 (7th Cir. 2012). Yet there, the court found no causal connection between plaintiff's alleged disability, as an addict, and her possession of drugs on the premises of the public housing property on which she lived, in violation of housing-authority policy. *Kehoe*, 2012 WL 1877740, at *9 (noting that "Oliver's disability didn't cause her to possess cocaine"). Here, in contrast, Copeland's violation of HACA's six-month limit on unauthorized guests is causally related to the care he required following his stroke because he alleged that he was "unable to safely live alone without assistance with eating, toileting, transfers, medication, and financial-management tasks" following his stroke. Dkt. 28, at 1. HACA also cites *Strife v. Aldine Independent School District* for the proposition that

---

months (starting from the time of Copeland's release from the hospital following his stroke) and not because his request was otherwise unreasonable. Dkt. 29-4, at 3. Copeland's allegations support the inference that at the time HACA issued the denial, it was aware that Pitts had been living with Copeland because he "could not safely remain housed alone" following his stroke. *See* Dkt. 28, at 1.

it didn't have to "move with maximum speed" to adjudicate Copeland's accommodation request; yet Copeland's challenge is to his complete exclusion from HCV program benefits based on his need for an accommodation, not the timing of HACA's denial of his request for an accommodation. Dkt. 29, at 14; 138 F.4th 237, 246 (5th Cir. 2025). HACA has not shown that there are no set of facts under which Copeland could establish the causation prong of his ADA discrimination claim.

Because Copeland has adequately pleaded the causation element of his ADA claim, HACA's motion to dismiss this claim should be denied.

### C. Given the higher causation requirement applicable to claims brought under the RA, Copeland's RA claim should be dismissed.

Copeland brought a claim under the RA, alleging that HACA excluded him from participation in the HCV program "solely by reason of his disability by refusing to process and consider a necessary live-in-aide accommodation, terminating voucher assistance for the presence of the disability-required aide, applying a rigid six-month rule without individualized accommodation analysis, and failing to consider reasonable accommodation in connection with termination." Dkt. 28, at 13. HACA moved to dismiss this claim on the basis that Copeland cannot show that his disability was the sole reason for HACA's decision to terminate his access to the HCV program. Dkt. 29, at 14-16. In response, Copeland presses that HACA's denial of his accommodation request "was the cause of the denial of meaningful voucher benefits." Dkt. 31, at 13.

The RA contains a more stringent causation standard than the ADA. *See Bennett-Nelson,* 431 F.3d at 454; *Soledad v. U.S. Dep't of Treasury,* 304 F.3d 500, 505 (5th Cir. 2002). While under the ADA a plaintiff's disability need not be the sole reason for the alleged discrimination, the RA requires a plaintiff to show that the discrimination occurred based only on his disability. *Pinkerton*, 529 F.3d at 516-19 (holding that ADA plaintiff must show that his disability was a motivating factor in the exclusion); 29 U.S.C. § 794(a) (stating that the RA requires plaintiff to allege that she was discriminated against "solely by reason of her or his disability"). A plaintiff may establish that the disability is the sole reason for the discrimination where: "(1) there is a 'causal connection' between his disability and the discriminatory action; and (2) his disability was 'the only cause' of the discriminatory action." *Shaikh v. Tex. A&M Univ. Coll. of Med.*, 739 F. App'x 215, 222 (5th Cir. 2018) (citation omitted). Actions "motivated, at least in part, by other considerations," are insufficient to establish causation. *See Shah v. Univ. of Tex. Sw. Med. Sch.*, 54 F. Supp. 3d 681, 704-05 (N.D. Tex. 2014).

Copeland's allegations do not support the inference that this disability was the sole cause of HACA's decision to terminate his access to the HCV program. Based on his own allegations, Copeland concedes that HACA based its denial of his accommodation request and termination of his benefits under the HCV program on his violation of HACA's six-month limit on unauthorized guests residing in a voucher-recipient's dwelling. Dkt. 28, at 12-13. HACA attached evidence to its motion to dismiss confirming that its stated reason for denying Copeland's accommodation

request and terminating his access to housing assistance was his failure to abide by its six-month limit on unauthorized guests. Dkts. 29-4; 29-5. Because Copeland cannot show that his disability was the sole reason for HACA's denial of his accommodation request and decision to terminate his housing assistance under the HCV program, he has failed to state a claim under the RA. Copeland's RA claim should be dismissed.

### D. Copeland has adequately pleaded his failure-to-accommodate claim under the FHA.

Copeland finally brought a claim under the FHA, alleging that HACA failed to afford him a reasonable accommodation that would allow Copeland to use and enjoy his dwelling. Dkt. 28, at 14-15. HACA argues that this claim should be dismissed because Copeland's accommodation request was not reasonable since it would have required HACA to excuse Copeland's violation of its six-month limit on unauthorized guests, which according to HACA, would "would fundamentally alter the nature of the program's reporting and authorization requirements." Dkt. 29, at 16-17. HACA also presses that Copeland is not entitled to the accommodation of his choosing under the FHA. *Id.* In response, Copeland insists that he has adequately pleaded his failure-to-accommodate claim under the FHA. Dkt. 31, at 17-18.

Under the FHA, a public entity engages in a discriminatory practice if it refuses to make a "reasonable accommodation" to "rules, policies, practices, or services, when such accommodation may be necessary to afford [a disabled person] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). To succeed on a failure-to-accommodate claim under section 3604(f)(3)(B) of the FHA, a plaintiff

must show that: (1) he has a disability[4] within the meaning of 42 U.S.C. § 3602(h); (2) the defendant knew or should reasonably be expected to know of the disability; (3) the accommodation is necessary to afford the disabled person an equal opportunity to use and enjoy the dwelling; (4) the accommodation is reasonable; and (5) the defendant refused to make the requested accommodation. *Chavez v. Aber*, 122 F. Supp. 3d 581, 595 (W.D. Tex. 2015). Whether the requested accommodation is reasonable is a question of fact that should be resolved by a close examination of the particular circumstances of each case. *Id.* at 596 (citations omitted).

Here, HACA challenges whether Copeland has sufficiently pleaded that his requested accommodation was "reasonable" and "necessary" to allow him to use and enjoy his dwelling. First, HACA posits that Copeland's requested accommodation was not reasonable because it would have required HACA to fundamentally alter the HCV program by excusing Copeland from HACA's six-month limit on unauthorized guests. Dkt. 29, at 16-17. While HACA is correct that it need not grant an accommodation that would require it to "fundamentally alter the nature of" its programs, it is unclear from Copeland's complaint or any of the evidence HACA attached to its motion that Copeland's request would have "required a fundamental alteration of [HACA's] program." *See* Dkt. 28; *Cadena v. El Paso Cnty.*, 946 F.3d 717, 724 (5th Cir. 2020) ("A plaintiff's requested accommodation must also be 'reasonable,' meaning that it does not impose undue financial or administrative burdens or 'fundamentally alter the

[4] Although the FHA uses the word "handicap," 42 U.S.C. § 3602(h), courts have acknowledged that "the definition of 'handicap' under the FHA" and "[t]he definition of disability under the ADA" are "functionally identical." *Bowman v. Bella Estancias, LLC*, No. 17-CV-91, 2018 WL 1115202, at *5 (W.D. Tex. Feb. 15, 2018).

nature of the service, program, or activity.'" (citations omitted)). Moreover, the reasonableness of an accommodation is generally a fact question not suitable for resolution at the motion-to-dismiss phase. *Jones v. Lubbock Cnty. Hosp. Dist.*, 834 F. App'x 923, 926 (5th Cir. 2020); *Hebert v. CEC Ent., Inc.*, No. 6:16-CV-00385, 2016 WL 5003952, at *5 (W.D. La. July 6, 2016), *R. & R. adopted*, No. 16-CV-0385, 2016 WL 5081009 (W.D. La. Sep. 16, 2016) (explaining that "the specific reasonableness of the plaintiffs' requested accommodation is not properly presented on a motion to dismiss"). Here, the undersigned cannot conclude as a matter of law that Copeland's requested accommodation request was unreasonable given his allegation that following his stroke he "could not safely remain housed alone." Dkt. 28, at 1.

HACA also insists that since it offered Copeland a voucher for a one-bedroom apartment at some point, it did not make housing unavailable to him. Dkt. 29, at 16-17 (citing Dkt. 28, at 5). Yet HACA ignores the remaining portion of that allegation, which states that such an offer "did not resolve the disability-access problem" because Copeland could not live by himself following his stroke and was in the process of seeking an accommodation at that time to allow him to live with an aide to assist him with basic life activities. Dkt. 28, at 5. Copeland also alleged that HACA ultimately terminated his participation in the HCV program altogether after denying his accommodation request. *Id.* at 6-11. Again, while HACA is correct that "the FHA does not require that every accommodation be the plaintiff's preferred one," here it is not evident from Copeland's allegations or the record before the Court that HACA's offer of a voucher for a one-bedroom unit was a reasonable response to Copeland's

accommodation request or would have allowed him to use and enjoy his dwelling given his significant physical and cognitive limitations. Dkts. 28; 29, at 17 (citing *The Sec'y, U.S. Dep't of Hous. & Urban Dev., Charging Party ex rel. Carlo Gimenez Bianco v. Castillo Condo. Ass'n & Carlos Toro Vizcarrondo,* No. HUDALJ 12-M-034-FH-9, 2014 WL 12573348, at *3 (Dep't of Hous. and Urb. Dev. July 17, 2014)). HACA has not shown that Copeland can prove no set of up facts under which he could prevail on his FHA claim.[5] Defendants' motion to dismiss Copeland's FHA claim should thus be denied.

## IV. ORDER AND RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Judge **GRANT IN PART** and **DENY IN PART** HACA's motion to dismiss, Dkt. 29. HACA's motion should be granted as to Copeland's procedural-due-process and RA claims, which should be dismissed with prejudice, and otherwise denied.

**IT IS ORDERED** that Copeland's request to proceed *in forma pauperis*, Dkt. 2, is **GRANTED**.

**IT IS FURTHER ORDERED** that Copeland's other pending motions, Dkts. 9; 10; 12; 14; are **DENIED**.

---

[5] HACA also argues that Copeland's request for punitive damages should be dismissed because "reliance on a facially neutral program-integrity rule and its documented engagement with the accommodation process negates the reckless-disregard element" of this damages request. Dkt. 29, at 17-18. HACA cites no legal authority in support of this contention, *id.*, and undersigned declines to find that this fact categorically bars Copeland's punitive-damages request at this time.

## V. WARNINGS

The parties may file objections to this report and recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Judge need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after the party is served with a copy of the report shall bar that party from *de novo* review by the District Judge of the proposed findings and recommendations in the report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED October 2, 2026.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE