**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| JOHN COPELAND,<br><br>*Plaintiff*,<br><br>v.<br><br>HOUSING AUTHORITY OF THE CITY OF AUSTIN, d/b/a AUSTIN HOUSING AUTHORITY,<br><br>*Defendant*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 1:26-cv-00461-ADA-DH |

**DEFENDANT HOUSING AUTHORITY OF THE CITY OF AUSTIN'S OBJECTIONS TO THE ORDER AND REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant Housing Authority of the City of Austin, d/b/a Austin Housing Authority ("AHA"), files these objections under 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b)(2) to the Order and Report and Recommendation of the United States Magistrate Judge (the "Report"), ECF No. 34, to the extent the Report recommends denying AHA's Motion to Dismiss, ECF No. 29, as to Plaintiff John Copeland's claims under Title II of the Americans with Disabilities Act ("ADA") and the Fair Housing Act ("FHA"), and to the extent it declines to dismiss his demand for punitive damages.

**PRELIMINARY STATEMENT**

The Report gets the threshold question right. Reading the First Amended Verified Complaint together with the documents it incorporates, the Report recognizes that AHA's stated reason for denying Mr. Copeland's request to add Danielle Pitts to his household, and for terminating his voucher, was that Ms. Pitts had lived in his subsidized unit without AHA's

approval for longer than AHA's written six-month limit, and it relies on that ground in recommending dismissal of the Rehabilitation Act claim with prejudice. (R. & R. 8–9 n.3, 11–12, ECF No. 34.) The Report then recommends that the ADA and FHA claims, which rest on the same allegations, go forward. It reaches that result by asking whether AHA had shown that Mr. Copeland could prove "no set of facts" entitling him to relief, a standard the Supreme Court abandoned in 2007. (R. & R. 10, 15.)

The Report also does not test the modification Mr. Copeland actually demands against the elements that govern an accommodation claim. AHA has never disputed that a voucher participant who needs a live-in aide may ask for one, or that a public housing agency must approve an aide who is needed as a reasonable accommodation. 24 C.F.R. § 982.316(a) (2025). AHA's own add-on procedure tells participants how to make that request. The amended pleading seeks several forms of relief, including restored assistance, processing of the live-in-aide request, and a voucher usable for accessible housing. (Am. Compl. Prayer (b)–(f).) As pleaded, each depends on withdrawal of the termination, and the termination rests on an occupancy AHA had never been asked to approve and that Mr. Copeland's household certifications omitted. Whether Title II or the FHA requires a housing agency to excuse that completed violation is the question this motion presents. The Report resolves the ADA claim on causation and the FHA claim on reasonableness, without deciding whether that modification was required by Title II or necessary under the FHA.

Both questions can be resolved on the pleadings. The District Judge should sustain these objections, decline to adopt Parts III(B) and III(D) and footnote 5 of the Report, adopt the balance of the Report, and dismiss the First Amended Verified Complaint.

## BACKGROUND

Mr. Copeland participated in the HUD-VASH Housing Choice Voucher program administered by AHA.[1] He alleges that, after suffering a stroke in January 2025, he could not safely live alone, and that Ms. Pitts moved into his unit on or about February 13, 2025, to provide his care. (First Am. Compl. ¶¶ 9–11, ECF No. 28.) Six months from that date ran on August 13, 2025. The earliest accommodation request to AHA that the amended pleading identifies is physician documentation "delivered to [AHA] on or about August 19, 2025." (Am. Compl. ¶ 15.) Around the same time, Mr. Copeland's AHA caseworker told him that, in addition to the VA's approval, he "also needed to apply with [AHA] to add Ms. Pitts to the voucher." (Am. Compl. ¶ 14.) The AHA application was not completed until October 2025. (Am. Compl. ¶¶ 16–17.)[2]

During the same two months, Mr. Copeland submitted household-composition forms to AHA identifying himself as the only member of his household and listing Ms. Pitts as an emergency contact whose address was "unknown." (Am. Compl. ¶ 57.) The amended pleading explains that, when he made those entries, Mr. Copeland "had just been informed of the separate approval tracks between the VA and [AHA]" and "understood that Ms. Pitts could not be listed as a voucher household member until [AHA] approved her." (Am. Compl. ¶ 58.) It also attributes the entries to his cognitive limitations and to the "opaque nature of the twin tracks." (Am. Compl. ¶

[1] The Report describes Mr. Copeland as "proceeding *pro se*." (R. & R. 1.) He is represented by counsel, who signed both the First Amended Verified Complaint and the response to AHA's motion. (First Am. Compl. 18, ECF No. 28; Pl.'s Resp. 20, ECF No. 31.) The amended pleading is therefore entitled to the same reading as any other counseled pleading.

[2] Mr. Copeland alleges that the Department of Veterans Affairs approved compensation for Ms. Pitts's caregiving in July 2025, within the six-month period, and that he understood that approval to be sufficient. (Am. Compl. ¶¶ 12–13; Pl.'s Resp. 13–14.) Those allegations may bear on notice and on his explanation for the delay, but VA approval is not the approval the voucher regulations require, which must come from the "PHA." 24 C.F.R. § 982.551(h)(2), (h)(4) (2025). Mr. Copeland acknowledges the distinction. (Pl.'s Resp. 14.)

59.) In October 2025, Ms. Pitts completed AHA's add-on questionnaire and reported that she had lived at Mr. Copeland's address for ten months. (Def.'s Mot. Dismiss Ex. B-1, ECF No. 29-2.) On December 19, 2025, AHA denied the request to add her because she had resided in the unit without authorization for more than six months, the point at which AHA's written Household Add-On Procedure directs denial and referral for termination. (Def.'s Mot. Dismiss Ex. C, ECF No. 29-4, at 3; Def.'s Mot. Dismiss Ex. A § 4.7, ECF No. 29-1.) AHA then gave notice terminating assistance for "Unauthorized Occupant," citing the family obligation in 24 C.F.R. § 982.551(k) (2025) under the heading "Fraud and Other Program Violation." (Def.'s Mot. Dismiss Ex. D, ECF No. 29-5, at 3.)

Mr. Copeland requested an informal hearing, attended it with his advocate, and was given until January 20, 2026, to submit accommodation materials. (Am. Compl. ¶¶ 33, 41, 50.) When AHA learned that his submission had been diverted by its email filter, the hearing officer rescinded her initial decision, reviewed the recovered materials, and issued a final decision upholding termination because the materials "did not show Ms. Pitts had permission to live at the property." (Def.'s Mot. Dismiss Ex. G, ECF No. 29-8, at 2; Def.'s Mot. Dismiss Ex. H, ECF No. 29-9, at 2.) Separately, AHA issued Mr. Copeland a one-bedroom tenant-based replacement voucher. (Am. Compl. ¶ 25.)

The Report recommends dismissing the procedural due process claim for want of a cognizable municipal policy, and the Rehabilitation Act claim because Mr. Copeland's allegations, read with the incorporated exhibits, show that AHA's stated reason for both the denial and the termination was the six-month violation, so that disability could not have been the sole cause. (R. & R. 5–7, 10–12.) It recommends that the ADA and FHA claims proceed. (R. & R. 7–10, 12–15.)

## STANDARD OF REVIEW

The District Judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part," the Magistrate Judge's recommendations. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). Objections must identify the specific findings to which a party objects. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). AHA identifies each challenged finding below by page.

To survive dismissal, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court does not accept legal conclusions as true, and a complaint that pleads facts "merely consistent with" liability "stops short of the line between possibility and plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). The Court may consider documents attached to a motion to dismiss that are referenced in the complaint and central to the plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). The Report considered ECF Nos. 29-2 through 29-9 on that basis (R. & R. 2 n.1), and Mr. Copeland accepts that the Court may consider documents referenced in and central to his pleading, while objecting to their use to resolve contested facts. (Pl.'s Resp. 4, 18.) AHA relies on those documents here only for what they say and does not ask the Court to resolve any disputed fact against Mr. Copeland.

## OBJECTIONS

### I. OBJECTION NO. 1: THE REPORT TESTED BOTH SURVIVING CLAIMS UNDER THE "NO SET OF FACTS" STANDARD THAT *TWOMBLY* RETIRED. (R. & R. 10, 15.)

The Report recites the *Twombly* and *Iqbal* standard correctly. (R. & R. 3–4.) But it does not apply that standard. The sentence that disposes of the ADA claim states that "[AHA] has not shown that there are no set of facts under which Copeland could establish the causation prong of

his ADA discrimination claim." (R. & R. 10.) The sentence that disposes of the FHA claim states that "[AHA] has not shown that Copeland can prove no set of . . . facts under which he could prevail on his FHA claim." (R. & R. 15.) These statements are the Report's operative holdings on both claims.

The formulation comes from *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), and the Supreme Court expressly abandoned it in *Twombly*. After "puzzling the profession for 50 years, this famous observation has earned its retirement," and the phrase "is best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Twombly*, 550 U.S. at 562–63. A correct recitation of the modern standard in one section of an opinion does not cure the application of the retired one in the sections that decide the motion.

The error matters. The "no set of facts" test asks whether the defendant can rule out every conceivable version of events, and so it places on the movant the burden of disproving a claim. *Twombly* and *Iqbal* do the opposite. They require the plaintiff to plead facts that make liability plausible, and they direct the Court, drawing on its "judicial experience and common sense," to consider whether an "obvious alternative explanation" renders the inference of liability implausible. *Iqbal*, 556 U.S. at 679, 682 (quoting *Twombly*, 550 U.S. at 567). Here, the obvious alternative explanation is AHA's own stated ground, on which the Report itself relied in recommending dismissal of the Rehabilitation Act claim. (R. & R. 8–9 n.3, 11–12.) AHA therefore asks the District Judge to apply *Twombly* and *Iqbal* de novo to each element of the ADA and FHA claims, crediting every well-pleaded fact, and to hold, for the reasons below, that the amended pleading does not plausibly allege that the modification Mr. Copeland demands was required by Title II or necessary under the FHA.

## II. Objection No. 2: The ADA claim fails because Title II did not require AHA to ratify, after the fact, an occupancy it was never asked to approve. (R. & R. 7–10 & n.3.)

### A. The Report Decided a Causation Question and Never Reached the Accommodation Question the Amended Pleading Actually Presents.

Mr. Copeland stated the nature of his claim explicitly, writing that "the FAC pleads failure to accommodate." (Pl.'s Resp. 9.) In the Fifth Circuit, liability on that theory "depends on whether . . . the demanded accommodation is in fact reasonable and therefore required." *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 455 (5th Cir. 2005). Only once that threshold is crossed does the reason for the denial become irrelevant, because "[i]f the accommodation is required the defendants are liable simply by denying it." *Id.* A plaintiff ordinarily must identify the disability and its resulting limitations and request the accommodation in direct and specific terms; absent such a request, he must show that the disability, the resulting limitation, and the necessary reasonable accommodation were open, obvious, and apparent. *Windham v. Harris Cnty.*, 875 F.3d 229, 237 (5th Cir. 2017); *Smith v. Harris Cnty.*, 956 F.3d 311, 317–18 (5th Cir. 2020). And the accommodation must be reasonable, meaning that it does not "fundamentally alter the nature of the service, program, or activity." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 724 (5th Cir. 2020) (quoting 28 C.F.R. § 35.130(b)(7)).

The Report did not undertake that inquiry. It analyzed the claim under the general elements of Title II discrimination, *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004), concluded that Mr. Copeland had pleaded causation because his disability need not be the sole cause of his exclusion, and held that AHA's reliance on the six-month violation was therefore "of no moment." (R. & R. 8–9.) Under Mr. Copeland's own theory, however, the six-month violation matters, because it defines the accommodation he was demanding. The Report never asked whether Title II required AHA to grant that accommodation. Its own footnote confirms the

gap. It treats AHA's statement that it denied the request because of the six-month rule, rather than because the request was "otherwise unreasonable," as evidence for Mr. Copeland (R. & R. 8–9 n.3), when the question of reasonableness is the one the claim turns on and the one the Report left unanswered.

### B. The Modification Mr. Copeland Demands Rests on Retroactive Ratification, Which Title II Does Not Require.

Identifying the modification at issue frames the claim. The federal regulations governing the voucher program make PHA approval a precondition of residence. The composition of the assisted family "must be approved by the PHA," the family "must request PHA approval to add any other family member as an occupant of the unit," and no other person may reside in the unit except a foster child or live-in aide. 24 C.F.R. § 982.551(h)(2) (2025). A live-in aide may reside in the unit "[i]f the PHA has given approval." 24 C.F.R. § 982.551(h)(4). The live-in-aide regulation itself is framed the same way. A family "may request that the PHA approve a live-in aide to reside in the unit," and the PHA "must approve" one "if needed as a reasonable accommodation." 24 C.F.R. § 982.316(a). Every piece of information the family supplies "must be true and complete." 24 C.F.R. § 982.551(b)(4). A PHA may terminate assistance when the family violates those obligations. 24 C.F.R. § 982.552(c)(1)(i) (2025).

The regulations also protect participants with disabilities, and AHA does not suggest otherwise. A PHA's termination decision is "subject to consideration of reasonable accommodation in accordance with part 8," 24 C.F.R. § 982.552(c)(2)(iv), and must be consistent with fair housing and equal opportunity requirements, 24 C.F.R. § 982.552(c)(2)(v). The HUD-VASH operating requirements on which Mr. Copeland relies are to the same effect, providing that before terminating a HUD-VASH participant, a PHA "must grant reasonable accommodations for persons with disabilities in accordance with 24 CFR part 8." (Pl.'s Resp. 11–12 (quoting Section

8 Housing Choice Vouchers: Revised Implementation of the HUD-Veterans Affairs Supportive Housing Program, 89 Fed. Reg. 65,769, 65,775 (Aug. 13, 2024)).) None of those provisions changes what a reasonable accommodation is. Each incorporates the part 8 standard, which, like Title II, requires a modification that is reasonable and does not fundamentally alter the program. AHA does not dispute that it had to consider accommodation at the termination stage. The question is whether the particular modification Mr. Copeland sought was one that standard required. AHA's hearing officer held the record open, rescinded her own decision when AHA's email filter diverted the submission, and reviewed the materials before ruling. (Def.'s Mot. Dismiss Ex. G, ECF No. 29-8, at 2; Def.'s Mot. Dismiss Ex. H, ECF No. 29-9, at 2.) Mr. Copeland contends that the final decision applied the wrong criterion when it found the materials irrelevant because they did not show existing permission. (Am. Compl. ¶¶ 52–54.) Even if reopening the hearing and reading the materials did not, by themselves, amount to a legally sufficient accommodation determination, the materials did not establish a modification the law required, because the relief they supported, approval of Ms. Pitts as an aide and restoration of assistance, could not be granted without also excusing the completed violation. Whatever one makes of the hearing officer's phrasing, the claim turns on whether that modification was required, which is the question addressed next.

Against that backdrop, the modification Mr. Copeland sought went well beyond approval of a live-in aide in the ordinary course. That path had been available to him since Ms. Pitts arrived, and AHA's procedure describes it, down to the physician documentation an aide request requires. (Def.'s Mot. Dismiss Ex. A § 2.10.6, ECF No. 29-1.) What the amended pleading demands is that AHA treat eight to ten months of unapproved occupancy, and two household certifications that omitted Ms. Pitts, as though neither had occurred, and that it restore assistance on that footing. (Am. Compl. ¶¶ 4, 52–54, Prayer (b)–(c).) Courts have declined to treat the excusal of a completed

violation as a required accommodation. *See A.B. ex rel. Kehoe v. Hous. Auth. of S. Bend*, No. 3:11 CV 163 PPS, 2012 WL 1877740, at *9–10 (N.D. Ind. May 18, 2012) (dismissing ADA, FHA, and Rehabilitation Act accommodation claims arising from a public-housing lease termination for drug-related criminal activity, where the alleged disability did not supply the required connection to the misconduct, and holding that the requested exception to the housing authority's one-strike policy was not a reasonable accommodation), *aff'd on other grounds*, 498 F. App'x 620, 622–23 (7th Cir. 2012); *cf. Green v. Medco Health Sols. of Tex., L.L.C.*, 560 F. App'x 398, 402 (5th Cir. 2014) (per curiam) (recognizing, under the ADA's employment provisions, that "an accommodation that requires an employer to ignore prior misconduct, including a violation of an attendance policy, is not the kind of reasonable accommodation mandated under the ADA").

Mr. Copeland calls AHA's position circular, on the theory that permission was the accommodation he sought and AHA could not deny it for want of permission. (Pl.'s Resp. 4, 12.) The argument does not account for the timeline the amended pleading itself alleges. Rather than demanding proof that the accommodation had already been granted before it would consider granting it, AHA asked whether the occupancy that had already occurred was authorized, because § 982.551(h) makes that the question, and on the amended pleading's own allegations no approval had been sought before the six-month period ran. The absence of permission resulted from a request first made after that period, together with household certifications, submitted in the same weeks as the physician's documentation, that did not list Ms. Pitts as a resident.[3]

---

[3] In his response, Mr. Copeland argued that 24 C.F.R. § 982.316(b) lists the only grounds on which a PHA may refuse a needed live-in aide. (Pl.'s Resp. 10–11.) The Report did not adopt that argument. Section 982.316(b) addresses when a PHA may refuse or withdraw approval of "a particular person" as an aide; it does not address a PHA's separate authority to terminate assistance when the family violates its own obligations under § 982.551, which is conferred by § 982.552(c)(1) and on which the termination notice relies. (Def.'s Mot. Dismiss Ex. D, ECF No. 29-5, at 3.) Both the aide decision and the termination remain subject to the reasonable-

AHA does not ask the Court to disbelieve Mr. Copeland's allegations of cognitive limitations, functional illiteracy, and dependence on others to complete paperwork. (Am. Compl. ¶¶ 36, 59, 73.) Those allegations are accepted as true, and they may explain why approval was not sought sooner. But an explanation for a violation does not entitle a participant to have the violation excused. Under *Bennett-Nelson*, the question is whether the demanded accommodation was "reasonable and therefore required," 431 F.3d at 455, and the fact that disability contributed to the conduct that led to the termination does not answer that question. The amended pleading alleges that, once Mr. Copeland learned that a separate approval was needed, the request was made with the help of his caseworker and physician. (Am. Compl. ¶¶ 14–17, 58.) Approval through that process, going forward, is the accommodation the regulations contemplate. What Title II does not require, and what the Report never found that it requires, is that a housing authority treat the earlier unapproved period, and certifications that omitted the occupant, as though approval had been in place all along.

**C. To the Extent the Amended Pleading Asserts Disparate Treatment, the Report's Causation Analysis Cannot Be Reconciled with Its Rehabilitation Act Analysis.**

The amended pleading also characterizes AHA's decisions as discrimination "by reason of disability." (Am. Compl. ¶ 67.) To the extent that theory is distinct from failure to accommodate, the Report's analysis of it is inconsistent with its own reasoning on the Rehabilitation Act claim. There, the Report concluded that Mr. Copeland "concedes that [AHA] based its denial of his accommodation request and termination of his benefits . . . on his violation of [AHA's] six-month limit," and that the incorporated exhibits confirm it. (R. & R. 11–12.) It also observed that AHA denied the request "only" for that reason. (R. & R. 8–9 n.3.) Title II's causation standard is more

---

accommodation analysis addressed in the text, and AHA's position is that the modification Mr. Copeland sought was not one that analysis required.

forgiving than the Rehabilitation Act's, *Bennett-Nelson*, 431 F.3d at 454, but a plaintiff alleging that a public entity's decision was itself discriminatory must still plausibly allege that disability was a motivating factor in it. *Cf. Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008) (holding, in a Rehabilitation Act § 501 employment case, that "[t]he proper causation standard under the ADA is a 'motivating factor' test"). The amended pleading identifies the six-month policy as the basis for the denial. (Am. Compl. ¶ 32.) It also alleges that AHA's representative disclosed a service-animal request but not the live-in-aide documentation at the hearing, and that AHA rejected the accommodation materials after notice. (Am. Compl. ¶¶ 49, 52–54, 67–71.) Those allegations describe how AHA handled the accommodation request and are the substance of the failure-to-accommodate theory. They do not plausibly suggest that disability, rather than the six-month ground the Report accepted as AHA's stated reason, motivated the decision. That stated ground is precisely the "obvious alternative explanation" that defeats a plausible inference of discriminatory motive. *Iqbal*, 556 U.S. at 682 (quoting *Twombly*, 550 U.S. at 567).

The Report bridged that gap by reasoning that the six-month violation was "causally related to the care he required." (R. & R. 9.) That chain of causation runs through Mr. Copeland's own conduct and says nothing about AHA's motive. If it were enough to establish discriminatory motive, any neutral rule a disabled participant violates for a reason connected to his disability would become discrimination "by reason of" disability on that ground alone, and the separate accommodation inquiry, with its request, its individualized assessment, and its modification of the rule, would add nothing. Judge Rodriguez declined to infer disparate treatment from the neutral enforcement of a generally applicable restriction in a related setting. *See Harmony Haus Westlake, LLC v. Parkstone Prop. Owners Ass'n*, 468 F. Supp. 3d 800, 812 n.7 (W.D. Tex. 2020) (rejecting disparate-treatment theory where "[t]here is merely the strict enforcement of a parking

restriction”). AHA does not contend that neutral enforcement alone defeats a failure-to-accommodate claim, which is analyzed separately above. The Report also distinguished *Kehoe* on the ground that Mr. Copeland’s violation was causally related to his disability. (R. & R. 9.) But the violation here consisted of Ms. Pitts’s unapproved presence for more than six months, accompanied by certifications that omitted her. Mr. Copeland’s disability required a caregiver. Whether it also justified excusing the caregiver’s unreported residence is the accommodation question addressed above and does not bear on discriminatory motive.

## III. Objection No. 3: The FHA claim fails because Mr. Copeland did not plead that the accommodation he demanded was necessary, and the Report never addressed necessity. (R. & R. 12–15.)

### A. The Report Acknowledged AHA’s Necessity Challenge and Then Did Not Decide It.

The FHA reaches a refusal to make reasonable accommodations “when such accommodations may be necessary to afford [a disabled] person equal opportunity to use and enjoy a dwelling.” 42 U.S.C. § 3604(f)(3)(B). Reasonableness and necessity are separate elements, and the plaintiff must plead both. *Women’s Elevated Sober Living L.L.C. v. City of Plano*, 86 F.4th 1108, 1112 (5th Cir. 2023). The Report recognized that AHA challenged both. (R. & R. 13.) Its analysis, however, addresses only whether the request would fundamentally alter AHA’s program and whether the replacement voucher was an adequate response. (R. & R. 13–15.) AHA pressed necessity under *Women’s Elevated* in its reply (Def.’s Reply 6, ECF No. 32), and the Report does not mention the decision.

*Women’s Elevated* controls and sets a strict standard. The Fifth Circuit evaluates necessity in its ordinary sense of something “[i]ndispensable, requisite, essential, needful; that cannot be done without, or absolutely required.” *Women’s Elevated*, 86 F.4th at 1112 (alteration in original) (quoting *Vorchheimer v. Philadelphian Owners Ass’n*, 903 F.3d 100, 105 (3d Cir. 2018)). It follows that “a requested accommodation that is preferable to an alternative is not sufficient; it

must be essential." *Id.* The necessity inquiry "adopts a strict sense of 'necessary'" and may "function[ ] as a but-for causation requirement, tying the needed accommodation to equal housing opportunity." *Id.* at 1114 (alteration in original) (quoting *Vorchheimer*, 903 F.3d at 110). And necessity is measured against the specific accommodation requested. *See Hinckley v. City of Brandon*, No. 3:25-CV-596-DPJ-ASH, 2026 WL 908914, at *5 (S.D. Miss. Mar. 31, 2026) (finding, on a motion for preliminary injunction, that the plaintiff was unlikely to establish necessity where she sought exemption from a generally applicable requirement, "never claimed that she lacked the ability to comply," and was "asking to be treated more favorably than others").

AHA accepts for present purposes that Mr. Copeland needed in-home care and that his limitations affected his ability to navigate the approval process. Those allegations distinguish the facts of *Hinckley*, but not its principle that necessity is measured against the modification requested. The modification AHA refused was the excusal of a completed violation and withdrawal of the termination resting on it. The amended pleading alleges why Mr. Copeland needed an aide; it does not allege facts showing why excusing the past period, as opposed to approving an aide going forward, was essential to his equal opportunity to use and enjoy a dwelling. A participant without a disability who housed an unreported adult for eight months, while submitting certifications that omitted her, would face the same termination under the same regulations. The FHA entitles Mr. Copeland to that participant's opportunity together with any accommodation his disability makes necessary, and the accommodation his disability made necessary, an approved aide, did not require rewriting the past.[4]

---

[4] The Report observed that "the FHA does not require that every accommodation be the plaintiff's preferred one." (R. & R. 14.) That principle applies here because the alternative, prospective approval of the aide with a correspondingly sized voucher, would meet the same disability-related need the amended pleading describes.

**B. Mr. Copeland's Own Theory Identifies the Alternative That Would Meet His Need.**

Necessity is assessed "in the light of 'proposed alternatives.'" *Henderson v. Five Props. LLC*, No. 24-750, 2025 WL 1951763, at *3 (E.D. La. July 16, 2025) (quoting *Women's Elevated*, 86 F.4th at 1112). Where an effective alternative is available, the requested accommodation is not necessary. *See id.* at *4 (granting summary judgment on FHA accommodation claim where the record showed that a proposed alternative "would have been effective"). AHA recognizes that *Henderson* was decided on a summary-judgment record, and that the Report found the adequacy of the one-bedroom replacement voucher unclear. (R. & R. 14–15.) AHA also recognizes that the amended pleading alleges that the replacement voucher did not resolve Mr. Copeland's needs because he required a larger ground-floor unit and approval of Ms. Pitts as an aide, and that the termination impaired his ability to obtain accessible housing. (Am. Compl. ¶¶ 25, 31, 60–62.) Those allegations confirm AHA's point. Each describes a need that prospective relief would meet, namely approval of an aide, whom the regulations would then count in determining family unit size, 24 C.F.R. § 982.402(b)(6) (2025), and a voucher sized accordingly. As Mr. Copeland himself puts it, "the aide need followed Mr. Copeland to any unit." (Pl.'s Resp. 17.) The obstacle to that prospective relief is the termination, and the termination rests on the completed violation. The question under *Women's Elevated* is therefore whether excusing that violation was itself essential to equal opportunity, and the amended pleading alleges no facts showing that it was. Because the plaintiff bears the burden of pleading necessity, that gap is fatal to the accommodation claim as pleaded.

**C. Reasonableness Can Be Resolved Where, As Here, The Request Is Unreasonable on Its Face.**

The Report relied on the general proposition that reasonableness is a fact question. (R. & R. 14.) That is often true, but a court may resolve reasonableness on the pleadings where the

requested modification is unreasonable on its face. *See Kehoe*, 2012 WL 1877740, at *10 (holding, on a motion to dismiss, that a requested exception to a housing authority's one-strike policy was not a reasonable accommodation). Mr. Copeland's demand is of that kind. Requiring a PHA to deem approved what the regulations say must be approved beforehand, and to disregard certifications the regulations say must be true and complete, would relieve the participant of the program's approval and reporting structure itself, and that relief would be equally available to any participant who later invokes it. AHA submits that such a modification would fundamentally alter the program, and that the Court can decide the question on the pleadings.

**D. The Amended Pleading's Remaining FHA Theories Depend on the Same Premise.**

The amended pleading also invokes § 3604(f)(1)–(2), alleging that AHA made housing unavailable, or discriminated in the terms, conditions, or services of housing, by terminating the voucher "based on the presence of his disability-required aide." (Am. Compl. ¶¶ 81–82.) AHA moved to dismiss those theories (Def.'s Mot. Dismiss 16–17), and the Report did not separately address them. They add nothing that survives the analysis above. To the extent they rest on the termination, they depend on the same premise as the accommodation theory, that AHA was required to treat Ms. Pitts's unapproved occupancy as authorized. The amended pleading also alleges that, in the landlord sequence, AHA asked the landlord to reconsider the nonrenewal without invoking accommodation, later told the landlord that participation would end on February 28, 2026, and offered to release additional payments if the landlord and Mr. Copeland agreed to change the vacate date. (Am. Compl. ¶¶ 23, 28–30.) Taken as true, those allegations describe a housing authority trying to preserve a tenancy and explaining the consequences of a termination already decided. They do not plausibly allege that disability, rather than the six-month ground, caused AHA to make housing unavailable or to impose discriminatory terms, conditions, or services.

## IV. OBJECTION NO. 4: THE PUNITIVE-DAMAGES DEMAND SHOULD BE DISMISSED. (R. & R. 15 N.5.)

The Report declined to dismiss Mr. Copeland's punitive-damages demand, concluding that AHA had cited no authority for the proposition that its reliance on a facially neutral program-integrity rule and its engagement with the accommodation process negate the reckless-disregard element. (R. & R. 15 n.5.)[5] The governing standard supplies that authority. Mr. Copeland seeks punitive damages only under the FHA, and only "to the extent legally available." (Am. Compl. ¶ 83, Prayer (h); *see also* Am. Compl. ¶ 92 (disclaiming punitive damages under § 1983).) In this Circuit, punitive damages under the FHA are available only where "the defendant[ ] acted with malice or reckless indifference that [his] actions might violate a federal statute of which [he was] aware." *Lincoln v. Case*, 340 F.3d 283, 291 (5th Cir. 2003) (citation and internal quotation marks omitted). That standard, drawn from *Kolstad*, recognizes that even intentional discrimination does not support punitive damages where the defendant is "unaware of the relevant prohibition" or believes its conduct lawful. *Lincoln*, 340 F.3d at 291 (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536–37 (1999)).

---

[5] AHA's motion challenged the punitive-damages demand and cited authority on the standard governing such damages, including *Smith v. Wade*, 461 U.S. 30, 56 (1983), and *La. ACORN Fair Hous. v. LeBlanc*, 211 F.3d 298, 303 (5th Cir. 2000). (Def.'s Mot. Dismiss 17–18.) The *Lincoln* standard addresses the reckless-disregard point the Report found unsupported. The immunity ground is additional legal support for the same challenge to the same remedy, not a new claim or defense, and it turns on a pure question of statutory construction that requires no factual development. *Cf. Yee v. City of Escondido*, 503 U.S. 519, 534 (1992) (explaining that "[o]nce a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below"). In any event, the rule against raising issues for the first time in objections does not strip the District Judge of discretion to reach a purely legal point. *See Henderson v. Jasper Police Dep't*, 438 F. App'x 356, 357 (5th Cir. 2011) (per curiam) (noting that the court "could decline to address" claims first raised in objections to a magistrate judge's report, but addressing them).

The amended pleading alleges no facts meeting that standard. The conduct it describes is AHA's application of a written, preexisting six-month rule, under federal regulations that make prior PHA approval a condition of residence, after AHA reopened the hearing to review Mr. Copeland's materials. (Def.'s Mot. Dismiss Ex. A § 4.7, ECF No. 29-1; Def.'s Mot. Dismiss Ex. G, ECF No. 29-8, at 2; Def.'s Mot. Dismiss Ex. H, ECF No. 29-9, at 2.) The allegation that AHA acted "intentionally, knowingly, or with reckless disregard" (Am. Compl. ¶ 83) is the kind of "[t]hreadbare recital[] of the elements of a cause of action" that the Court does not credit. *Iqbal*, 556 U.S. at 678.

Nothing alleged suggests that AHA perceived a risk that enforcing the regulations' approval requirement would violate federal law. Whether the FHA requires a housing authority to excuse a completed occupancy violation is, at a minimum, the very question this case presents, and a defendant that resolves an open legal question against the plaintiff does not thereby act with reckless indifference to a known federal right. Independently, AHA is a governmental entity (R. & R. 6), and municipal bodies have long been immune from punitive damages absent clear congressional direction. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (holding a municipality immune from punitive damages under § 1983 because the common-law immunity was well established and Congress did not abrogate it).

Applying that principle, a court in this Circuit has concluded that the FHA's remedial provision does not displace the immunity. *See Baptist Homes, Inc. v. City of Madison*, No. 3:24-CV-92-KHJ-MTP, 2026 WL 1284541, at *7 (S.D. Miss. May 11, 2026) (concluding, as an alternative ground after finding the claim abandoned, that a municipality would be entitled to summary judgment on an FHA punitive-damages claim because "[n]othing in Section 3613(c)(1) clearly expresses congressional intent to abrogate that immunity"). The ADA and Rehabilitation

Act, to the extent the prayer could be read to reach them, foreclose punitive damages outright, because they "may not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act." *Barnes v. Gorman*, 536 U.S. 181, 189 (2002).

Because these grounds do not depend on how the liability questions are resolved, the demand for punitive damages should be dismissed even if any portion of the ADA or FHA claim survives. AHA notes as well that compensatory damages under Title II require proof of intentional discrimination. *Cadena*, 946 F.3d at 724. The amended pleading's notice and selective-disclosure allegations (Am. Compl. ¶¶ 49, 52–54, 69–74) describe a disagreement about what accommodation the law required and do not plausibly allege a knowing violation of a recognized right.

## V. Dismissal should be with prejudice.

Mr. Copeland has already amended once, with the benefit of counsel, after this Court's preliminary-injunction ruling and after AHA's first motion to dismiss raised the same causation and accommodation arguments. (Def.'s Mot. Dismiss, ECF No. 20.) The grounds presented above do not depend on facts that further pleading could supply. The dates on which Ms. Pitts arrived and on which approval was first sought, the content of the household certifications, and the regulations that make prior PHA approval a condition of residence are fixed, and the immunity and statutory bars on punitive damages do not depend on the facts at all. To the extent the Court sustains these objections on those grounds, amendment would be futile. *See Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872–73 (5th Cir. 2000) (holding that leave to amend may be denied as futile where the amended complaint would fail to state a claim under the Rule 12(b)(6) standard). Alternatively, if the District Judge concludes that any claim could be cured by additional factual allegations, AHA requests that the Court identify the deficiency and set a short deadline for a final amended pleading.

## PORTIONS OF THE REPORT TO WHICH AHA DOES NOT OBJECT

AHA does not object to the Report's recommendations that Mr. Copeland's procedural due process and Rehabilitation Act claims be dismissed with prejudice (R. & R. 5–7, 10–12, 15), and asks that the District Judge adopt them. AHA likewise does not object to the Magistrate Judge's orders granting leave to proceed *in forma pauperis* and denying Mr. Copeland's remaining motions. (R. & R. 15.)

## CONCLUSION AND REQUESTED RELIEF

The Report recognized that AHA's stated ground for terminating Mr. Copeland's assistance was that an adult had lived in his unit for more than six months without AHA's approval while his household certifications omitted her, and it relied on that ground in recommending dismissal of the Rehabilitation Act claim. The ADA and FHA claims fail under their own standards for the reasons above. AHA was required to consider whether Mr. Copeland's disability warranted a reasonable accommodation before terminating his assistance, and it reopened the hearing to review his materials. Neither Title II nor the FHA required it to approve, after the fact, an occupancy no one had asked it to approve, or to treat inaccurate certifications as if they had been accurate.

AHA respectfully requests that the District Judge sustain these objections; decline to adopt Parts III(B) and III(D) and footnote 5 of the Report; adopt the remainder of the Report; grant AHA's Motion to Dismiss, ECF No. 29, in its entirety; dismiss the First Amended Verified Complaint with prejudice, including Mr. Copeland's demand for punitive damages, or, in the alternative, identify any curable deficiency and set a deadline for a final amended pleading; and grant AHA all other relief to which it is justly entitled.

Dated: October 16, 2026

Respectfully submitted,

**COKINOS | YOUNG**
Las Cimas IV
900 S. Capital of Texas Highway, Suite 425
Austin, Texas 78746
(512) 476-1080 (Office)
(512) 615-1148 (Direct)
(512) 610-1184 (Fax)

By: /s/ *Lauren S. Aldredge*
**LAUREN S. ALDREDGE**
Texas Bar No. 24079380
laldredge@cokinoslaw.com

*Attorneys for Defendant Housing Authority of the City of Austin, d/b/a Austin Housing Authority*

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record, including counsel for Plaintiff:

**Peter "Audrey" Bean**
Law Offices of Audrey Bean
1827 River Crossing Cir., Ste. D
Austin, Texas 78741
Audrey@AustinLitigator.com

/s/ *Lauren S. Aldredge*
**Lauren S. Aldredge**