**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| JOHN COPELAND, *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 1:26-cv-00461-ADA-DH |
| | § | |
| HOUSING AUTHORITY OF THE | § | |
| CITY OF AUSTIN (HACA), *Defendant.* | § | |

**PLAINTIFF'S OBJECTION TO THE REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE (DKT. 34) AS TO COUNT II**

Plaintiff John Copeland files this objection under 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b)(2) to the Order and Report and Recommendation of the United States Magistrate Judge, Dkt. 34 (the "Report"). Plaintiff objects to Part III.C of the Report (pages 10 through 12) and to the recommendation that Count II, the Section 504 claim, be dismissed with prejudice (page 15). Plaintiff supports the Report's recommendation that HACA's motion be denied as to the Title II and Fair Housing Act claims.

The Report describes Plaintiff as proceeding pro se. Dkt. 34 at 1. Plaintiff has been represented by counsel admitted pro hac vice since March 3, 2026. Dkt. 7. The Report applies the ordinary Rule 12(b)(6) standard, and Plaintiff notes the point only to correct the record.

**I. SUMMARY OF OBJECTION**

Count II alleges that HACA refused a reasonable accommodation that federal law required it to provide. The Report evaluated that claim under the sole-causation test that governs disparate-treatment claims under Section 504. The Fifth Circuit has explained that the test does not govern accommodation claims. Both Title II and Section 504 "impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals," and

"[w]here a defendant fails to meet this affirmative obligation, the cause of that failure is irrelevant." *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005). The lead opinion in *Harmon* reiterated that distinction, citing *Bennett-Nelson*. The Section 504 sole-causation requirement "applies to discrimination claims under Section 794(a), but not to retaliation claims or failure-to-accommodate claims." *Harmon v. Collier*, 158 F.4th 595, 608 (5th Cir. 2025).

Plaintiff relied on *Bennett-Nelson* in opposing dismissal of Count II. Dkt. 31 at 13. The Report cited *Bennett-Nelson* only for the difference in causation standards between the two statutes. Dkt. 34 at 8, 11. It did not address the accommodation rule. Under that rule, the Report's own findings state a Section 504 accommodation claim, and Part III.C should not be adopted. HACA's own objections acknowledge that "neutral enforcement alone" does not defeat a failure-to-accommodate claim. Dkt. 35 at 13. HACA likewise invokes *Bennett-Nelson*'s accommodation framework and faults the Report's Title II analysis for leaving the question of reasonableness unanswered. Dkt. 35 at 7-8. That framework also governs Count II, which Part III.C dismissed under sole causation without addressing whether the requested accommodation was reasonable and required.

## II. STANDARD OF REVIEW

The District Judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). See also 28 U.S.C. § 636(b)(1)(C).

## III. ARGUMENT

A. Count II Is a Failure-to-Accommodate Claim.

Count II alleges that HACA excluded Mr. Copeland from its voucher program "by refusing to process and consider a necessary live-in-aide accommodation, terminating voucher assistance for

the presence of the disability-required aide, applying a rigid six-month rule without individualized accommodation analysis, and failing to consider reasonable accommodation in connection with termination." Dkt. 28 ¶ 77. It rests on the regulations that make that accommodation mandatory. *Id.* ¶ 78 (citing 24 C.F.R. §§ 8.4, 8.24, 8.28, 982.316(a), 982.552(c)(2)(iv)).

The live-in-aide obligation is a Section 504 obligation by its own terms. HACA's Administrative Plan, which HACA placed in the record, states that "HACA must approve a live-in aide if needed as a reasonable accommodation in accordance with 24 CFR 8, to make the program accessible to and usable by the family member with disabilities." Dkt. 15-8 at 64. Part 8 of title 24 is HUD's regulation implementing Section 504 in federally assisted programs. Count II's accommodation theory does not depend on proof of discriminatory animus or of worse treatment than a nondisabled participant received. It alleges that HACA refused the accommodation that Part 8 and HACA's own plan required it to consider.

B. The Sole-Causation Test Does Not Govern Accommodation Claims.

The Fifth Circuit has identified one material difference between Title II and Section 504, which is "their respective causation requirements." *Bennett-Nelson*, 431 F.3d at 454. In the same opinion the court explained why that difference does not control an accommodation claim. It noted that in *Pace v. Bogalusa City School Board*, 403 F.3d 272, 288-89 (5th Cir. 2005) (en banc), it had "concluded that the different causation requirements were immaterial where the plaintiff's challenge was to architectural barriers." *Bennett-Nelson*, 431 F.3d at 454. It then stated the rationale. Both statutes impose an affirmative accommodation obligation, and "[w]here a defendant fails to meet this affirmative obligation, the cause of that failure is irrelevant." *Id.*

The court applied that reasoning to the Section 504 and Title II accommodation claims before

it, in explaining why it did not need to reach Title II abrogation. *Id.* at 454-55. The question, the court said, was not "whether the denial of the accommodation to that disability was caused solely or only in part by the animus of the defendants." *Id.* at 455. Instead, "the existence of a violation depends on whether under both the Rehabilitation Act and the ADA, the demanded accommodation is in fact reasonable and therefore required. If the accommodation is required the defendants are liable simply by denying it." *Id.* The court added that "causation is not the issue in the appeal presented today," while noting that causation might become a disputed issue "as discovery proceeds." *Id.* & n.13. That footnote does not turn the rule Mr. Copeland asked HACA to modify into an independent, non-disability reason that defeats his claim on the pleadings.

*Bennett-Nelson* also observed that the complaint there "claims the University's failure to provide the demanded accommodations is the sole cause of the alleged denial of benefits to the plaintiffs." *Id.* at 455. *Bennett-Nelson* concerned students' access to educational services through disability accommodations. Count II alleges a comparable accommodation-based denial of housing benefits: that HACA's refusal to process and consider the necessary live-in-aide accommodation excluded Mr. Copeland from the program "solely by reason of disability." Dkt. 28 ¶ 77. And the Report read HACA's own exhibit as showing that HACA denied the request "only" because Ms. Pitts had lived in the unit for more than six months after Mr. Copeland's stroke, "and not because his request was otherwise unreasonable." Dkt. 34 at 8-9 n.3. The Report thus treated the six-month limit on the aide's unapproved presence as HACA's sole stated ground for denying the accommodation request.

The Fifth Circuit continues to treat accommodation claims under both statutes as turning on the entity's affirmative obligation. *Cadena v. El Paso County* stated the prima facie elements for

claims "under Title II or the Rehabilitation Act" and then described the separate accommodation obligation both statutes impose, quoting *Bennett-Nelson*. 946 F.3d 717, 723-24 (5th Cir. 2020). For that type of claim, the plaintiff must show that the entity knew of the disability and its consequential limitations, and the requested accommodation must be reasonable. *Id.* at 724. See also *Windham v. Harris Cnty.*, 875 F.3d 229, 236-37 (5th Cir. 2017) (Title II). And the lead opinion in *Harmon* stated that "[f]or failure-to-accommodate claims, 'the cause of that failure is irrelevant.'" 158 F.4th at 608 (quoting *Bennett-Nelson*, 431 F.3d at 454-55).

C. The Report Applied the Disparate-Treatment Test to an Accommodation Claim.

The Report did not apply that framework. It reasoned that "the RA requires a plaintiff to show that the discrimination occurred based only on his disability." Dkt. 34 at 11. It read the FAC as conceding that the six-month limit was HACA's stated reason for denying the accommodation and terminating assistance. *Id.* at 11-12. It concluded that "[b]ecause Copeland cannot show that his disability was the sole reason for HACA's denial of his accommodation request and decision to terminate his housing assistance under the HCV program, he has failed to state a claim under the RA." *Id.* at 12.

That the six-month limit was HACA's stated reason is not a concession that the reason was independent of disability. The six-month limit is the rule Mr. Copeland asked HACA to modify. Dkt. 28 ¶¶ 4, 52-54, 68. The Report itself read HACA's denial as measuring the six months from "Copeland's release from the hospital following his stroke." Dkt. 34 at 8-9 n.3. An entity's reliance on the rule it was asked to modify does not, by itself, answer whether modification was reasonable and required. Treating that reliance as dispositive would bypass the affirmative obligation *Bennett-Nelson* recognizes.

HACA's own objections recognize the distinction between disparate treatment and failure to

accommodate. After invoking *Bennett-Nelson*'s accommodation framework, HACA expressly states that "neutral enforcement alone" does not defeat a failure-to-accommodate claim. Dkt. 35 at 7, 13. HACA further acknowledges that it had to consider accommodation at the termination stage. *Id.* at 9. Those positions leave the reasonableness of the requested modification to be decided under the accommodation framework; they do not establish that HACA's stated reliance on the six-month rule defeats Count II. *Bennett-Nelson* applies that affirmative accommodation obligation under both Title II and Section 504. 431 F.3d at 454-55.

The authorities the Report cited for the sole-causation test confirm that a rule violation does not by itself identify a cause independent of disability. *Shaikh v. Texas A&M University College of Medicine*, on which the Report relied, explains that the causal connection "need not be direct": it is sufficient that the disability caused the individual to do or not do something, which in turn caused the exclusion, provided the disability was the only cause of that triggering conduct. 739 F. App'x 215, 222-23 (5th Cir. 2018). On that reasoning the court reversed the dismissal of a Section 504 claim arising from a student's disability-related failure to meet an examination deadline. *Id.* at 223, 225. *Shah v. University of Texas Southwestern Medical School* involved a complaint that expressly attributed the challenged decisions to several non-disability motives; its causation analysis did not separately address the affirmative-accommodation framework stated in *Bennett-Nelson*. 54 F. Supp. 3d 681, 704-05 (N.D. Tex. 2014). Here, the Report itself found that the six-month violation was "causally related to the care he required following his stroke." Dkt. 34 at 9.

D. The Report's Own Findings State a Section 504 Accommodation Claim.

The FAC's factual allegations, accepted as true, plausibly state a Section 504 accommodation claim.

First, HACA receives federal financial assistance, and Mr. Copeland is a qualified individual with a disability. Dkt. 28 ¶¶ 6, 66, 76. The Report accepted that his stroke required in-home care to assist him with "eating, toileting, transfers, medication, and financial-management tasks." Dkt. 34 at 2 (quoting Dkt. 28).

Second, HACA knew of the disability and its limitations. The Report found that the pleaded facts "support the inference that at the time HACA issued the denial, it was aware that Pitts had been living with Copeland because he 'could not safely remain housed alone' following his stroke." Dkt. 34 at 9 n.3 (quoting Dkt. 28 at 1).

Third, HACA refused the accommodation. HACA denied the live-in-aide request on December 19, 2025, and then terminated assistance. Dkt. 28 ¶¶ 32-33; Dkt. 35 at 4. The Report read HACA's own exhibit as showing that "it only denied Copeland's accommodation request because Pitts had been living at the unit for over six months (starting from the time of Copeland's release from the hospital following his stroke) and not because his request was otherwise unreasonable." Dkt. 34 at 8-9 n.3 (citing Dkt. 29-4 at 3).

The remaining question under *Bennett-Nelson* is whether the accommodation was reasonable and therefore required. 431 F.3d at 455. The pleaded facts do not establish that this accommodation was unreasonable as a matter of law. The Report held, as to the same request, that reasonableness is a fact question and that HACA had not shown the request would fundamentally alter its program. Dkt. 34 at 13-14. HACA's argument that the request sought to excuse a completed violation goes to reasonableness, which the Report declined to resolve against Plaintiff on these pleadings. *Id.* The FAC alleges that the accommodation sought was approval of the live-in aide. Dkt. 28 ¶¶ 4, 53-54. And HACA's Administrative Plan requires that approval "if needed as a reasonable accommodation." Dkt. 15-8 at 64.

The accommodation requested included an exception to the six-month rule requiring denial and referral for termination so that Mr. Copeland could keep his assistance with the aide his disability required. The FAC alleges that his stroke-related cognitive limitations, functional illiteracy, dependence on others, and confusion about the separate VA and HACA approval tracks contributed to the late application and household-form entries. Dkt. 28 ¶¶ 12-19, 57-59, 73. It further alleges that he understood an unapproved aide could not be listed as a voucher household member. *Id.* ¶ 58. HACA accepts, for purposes of its motion, that Mr. Copeland needed in-home care and that his limitations affected his ability to navigate the approval process. Dkt. 35 at 11, 14.

HACA's acknowledgment that the certifications were submitted in the same weeks as the physician's documentation places those entries in the context of an ongoing effort to obtain accommodation; the reporting inaccuracies do not, by themselves, resolve whether the requested individualized exception was reasonable. Dkt. 35 at 10. By the December denial, HACA had received the physician's accommodation documentation in August and the live-in-aide applications in October, so it was deciding the consequences of the earlier occupancy and reporting problems while a request for continued participation with an approved aide remained unresolved. Dkt. 28 ¶¶ 15-17, 32-33.

The same regulation that permits termination for a violation of family obligations expressly allows consideration of disability-related mitigating circumstances and subjects the termination decision to reasonable accommodation under Part 8. 24 C.F.R. § 982.552(c)(1)(i), (c)(2)(i), (iv). HACA's Administrative Plan adopts each of those provisions: termination of a family that includes a person with disabilities "is subject to consideration of reasonable accommodation in accordance with 24 CFR Part 8"; in cases of family-caused errors or program abuse HACA "will

take into consideration … any mitigating circumstances related to the disability of a family member"; and the hearing officer's decision "will be subject to consideration of the reasonable accommodation requests made by the head of household or their representative." Dkt. 15-8 at 308, 338, 381. HACA agrees it had to consider accommodation at the termination stage. Dkt. 35 at 9. Although HACA identifies prospective aide approval with an appropriately sized voucher as an arrangement that would meet the pleaded need, it acknowledges that "[t]he obstacle to that prospective relief is the termination." Dkt. 35 at 14 n.4, 15. That hypothetical alternative therefore leaves unresolved whether a reasonable accommodation required an exception to the termination consequence in Mr. Copeland's circumstances.

HACA's reliance on *Green v. Medco Health Solutions of Texas, L.L.C.* does not resolve that question. *Green* affirmed summary judgment under the ADA's employment provisions on a record in which the district court had found, without challenge on appeal, that the employer had already effectively decided to terminate the employee before she requested an accommodation; it concerned an attendance policy and did not interpret the housing regulations governing this termination. 560 F. App'x 398, 402 (5th Cir. 2014) (per curiam).

*A.B. ex rel. Kehoe v. Housing Authority of South Bend*'s accommodation analysis turned on two considerations, neither present here: the court found no causal connection between the tenant's asserted disability and her possession of cocaine on the premises, and it held that an exception to a one-strike drug policy would frustrate the federal purpose of keeping public housing free of drugs. No. 3:11 CV 163 PPS, slip op. at 15-17 (N.D. Ind. May 18, 2012), aff'd on other grounds, 498 F. App'x 620, 623 (7th Cir. 2012) (declining to reach reasonable accommodation because the tenant was a current drug user at the relevant time). *Kehoe* itself distinguished the HUD and DOJ example in which a tenant's psychiatric disability caused the

conduct that violated the lease. *Id.* at 15-16. In that example the agencies illustrate accommodation after a completed lease violation and a notice to quit, permitting eviction because the tenant refused the proposed safeguards and continued to pose a direct threat. Joint Statement of HUD and DOJ, Reasonable Accommodations Under the Fair Housing Act, at 2 n.4, 5-6 (May 17, 2004). Characterizing the requested exception as forgiveness of a completed violation therefore does not establish that it is unreasonable in this program. An individualized exception to termination would leave HACA's authority to assess the aide application, verify the aide's eligibility, and require accurate reporting going forward intact.

The pleaded facts plausibly support an individualized exception, and the Report held as to the identical request under the FHA that HACA had not shown the request would fundamentally alter its program. Dkt. 34 at 13-14.

E. Dismissal With Prejudice Is Not Warranted.

The Report recommends dismissal of Count II with prejudice without a finding that amendment would be futile. Dkt. 34 at 15. Plaintiff requested leave to amend in the alternative. Dkt. 31 at 19. If the Court does not reject Part III.C, any dismissal of Count II should be without prejudice. See *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). If the Court identifies a pleading deficiency in Count II, Plaintiff requests leave under Rule 15(a)(2) to file a second amended complaint further particularizing the occupancy and accommodation-request chronology, the circumstances of the household-form entries, the disability-related reasons for the approval and reporting difficulties, and the limited modification requested to preserve continued participation while retaining HACA's approval, screening, and truthful-reporting requirements. Although HACA argues that amendment would be futile, it alternatively requests an identified deficiency and a deadline for a final amended pleading if the

Court finds a defect curable by additional factual allegations. Dkt. 35 at 19-20.

## IV. CONCLUSION

Plaintiff respectfully requests that the Court decline to adopt Part III.C of the Report, deny HACA's motion to dismiss as to Count II, and adopt the Report's recommendation that the motion be denied as to Counts I and III. In the alternative, Plaintiff requests that any dismissal of Count II be without prejudice and with leave to amend under Rule 15(a)(2).

Respectfully submitted,

LAW OFFICES OF AUDREY BEAN

By: /s/ Peter "Audrey" Bean
Peter "Audrey" Bean
Texas Bar No. 24073897
1827 River Crossing Cir., Ste. D
Austin, Texas 78741
Telephone: (512) 290-5739
Audrey@AustinLitigator.com

Counsel for Plaintiff John Copeland

**CERTIFICATE OF SERVICE**

I certify that on October 16, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notice of filing to all counsel of record.

/s/ Peter "Audrey" Bean
Peter "Audrey" Bean