**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| JOHN COPELAND, *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 1:26-cv-00461-ADA-DH |
| | § | |
| HOUSING AUTHORITY OF THE | § | |
| CITY OF AUSTIN (HACA), *Defendant.* | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTIONS (DKT. 35) TO THE ORDER AND REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE (DKT. 34)**

Plaintiff John Copeland responds under Federal Rule of Civil Procedure 72(b)(2) to the objections, Dkt. 35, that Defendant Housing Authority of the City of Austin ("HACA") filed to Parts III.B and III.D and footnote 5 of the Order and Report and Recommendation of the United States Magistrate Judge, Dkt. 34 (the "Report"). The Report correctly concluded that Count I (Title II of the ADA) and Count III (the Fair Housing Act) state claims and that HACA's challenge to the punitive-damages prayer could not be resolved on the pleadings. The objections should be overruled. Plaintiff's separate objection to Part III.C, Dkt. 36, is pending; nothing here depends on its outcome.

## I. SUMMARY OF RESPONSE

HACA's objections rest on characterizing the accommodation Mr. Copeland requested as the "excusal of a completed violation." Dkt. 35 at 2, 9–11, 14–16. The pleading describes a defined and limited modification: an individualized exception to HACA's local six-month disqualification and to the discretionary termination that followed from it; a decision on Ms. Pitts's pending live-in-aide application under the eligibility standards of 24 C.F.R. § 982.316; and continued assistance with truthful reporting and ordinary screening preserved. Dkt. 28 ¶¶ 4,

15–17, 32, 52–54, 67–68; *id.* Prayer (c)–(d). That modification does not dispense with the PHA approval that § 982.551(h)(4) requires for a live-in aide. It asks HACA to decide the approval request that was pending before it, rather than treating the lapse of a local time limit as the end of the inquiry.

The rule HACA applied is its own, adopted under a regulation that leaves live-in-aide residence policies to the PHA's discretion. Dkt. 29-1 at 4 (§ 4.7); 24 C.F.R. § 982.551(h)(4). Termination for a family-obligation violation is discretionary and, for a family that includes a person with disabilities, "subject to consideration of reasonable accommodation." 24 C.F.R. § 982.552(c)(1), (c)(2)(iv). HACA's Administrative Plan commits HACA to approve an accommodation request that meets three stated conditions, to list or discuss alternatives when it denies one as unreasonable, and to weigh disability-related mitigating circumstances before selecting a remedy. Dkt. 15-8 at 49, 338. And HACA's own procedure already approves, after the fact, occupants who moved in without PHA approval. Dkt. 29-1 at 4 (§ 4.7). Whether an individualized exception was reasonable for a stroke patient whose documented request, on HACA's own computation, reached HACA six days after the limit ran, Dkt. 35 at 3, is a question of fact that the Report correctly declined to resolve against the pleading. Dkt. 34 at 13–14.

## II. THE REQUEST AND HACA'S DECISIONS

After a January 2025 stroke, Mr. Copeland became wheelchair-dependent, cognitively impaired, and functionally illiterate, and could not safely live alone. Dkt. 28 ¶¶ 2, 9–11, 36, 59. He was discharged home on or about February 13, 2025, and Ms. Pitts moved in to provide the care his discharge instructions required. *Id.* ¶¶ 10–11. Ms. Pitts applied through the VA, which had issued Mr. Copeland's HUD-VASH voucher; a July 18, 2025 VA letter granted him a pension with Aid and Attendance because he needs "another person's constant help" with daily

activities. Dkt. 31-2 at 1–2; Dkt. 28 ¶ 12. He and Ms. Pitts understood that process to authorize her presence because the voucher itself had come through the VA. Dkt. 28 ¶ 13. In August or September 2025, HACA's own HUD-VASH liaison and caseworker, Kristen Petersen, told them that a separate HACA application and documentation of the need for a live-in aide were required. *Id.* ¶ 14. On or about August 19, 2025, HACA received a Harbor Health letter stating that Mr. Copeland "requires round-the-clock assistance from a caregiver" and requesting "a housing voucher that allows him to live with his full-time caregiver." Dkt. 31-3 at 1; Dkt. 28 ¶ 15. On October 1, the VA counselor, Malcolm Adair, interviewed Ms. Pitts and completed HACA's paper application; later that month Ms. Petersen sent the same application through DocuSign, which Ms. Pitts completed and submitted. Dkt. 28 ¶¶ 16–17. No caseworker indicated that the length of Ms. Pitts's care placed the request, or the voucher, at risk. *Id.* ¶ 18. HACA's own hearing summary records Ms. Pitts's statement that accommodation paperwork had been submitted "several times." Dkt. 29-7 at 3.

On December 19, 2025, HACA denied the request on its add-on rejection form because Ms. Pitts had "been living in unit for 10 months per the completed add-on questionnaire" and "[p]er HACA policy, if living in unit for more than 6 months unauthorized, add-on will be denied." Dkt. 29-4 at 2–3. The "10 months" entry appears on the paper form the FAC alleges Mr. Adair completed; the FAC disputes it, and HACA acknowledges the dispute. Dkt. 28 ¶¶ 16, 38, 42; Dkt. 29 at 3. The denial identified no individualized assessment and no alternative. Dkt. 28 ¶ 32. On December 29, HACA issued notice terminating assistance effective January 31, 2026, for "Unauthorized Occupant" under the heading "Fraud and Other Program Violation." Dkt. 29-5 at 3; Dkt. 28 ¶¶ 33, 55. At the informal hearing, asked whether HACA had received any reasonable-accommodation evidence, HACA's representative disclosed a service-animal

request but not the caregiver request from the same provider. Dkt. 28 ¶ 49. After locating the accommodation materials, the hearing officer upheld termination, effective February 28, 2026, because the materials "did not show Ms. Pitts had permission to live at the property." Dkt. 29-9 at 2; Dkt. 28 ¶¶ 50–54. The household forms on which HACA now relies were not part of the hearing. Dkt. 28 ¶ 57.

The Report read HACA's own exhibit as showing that HACA denied the request "only" because of the six-month rule "and not because his request was otherwise unreasonable," and found that the allegations support the inference that HACA knew Ms. Pitts was there because Mr. Copeland "could not safely remain housed alone." Dkt. 34 at 8–9 n.3. HACA accepts that the six-month rule was its stated ground, Dkt. 35 at 1–2, 12, and disputes only the inference the Report drew from it, *id.* at 7–8. HACA also accepts as true that Mr. Copeland needed in-home care and that his cognitive limitations, functional illiteracy, and dependence on others affected his ability to navigate the approval process. *Id.* at 11, 14.

## III. STANDARD OF REVIEW

The Court determines de novo the portions of the Report to which specific objection is made, and may accept, reject, or modify the recommended disposition. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The question under Rule 12(b)(6) is whether the pleading's factual allegations, taken as true, state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Both sides agree that the documents HACA attached may be considered for what they say and not to resolve disputed facts against the pleading. Dkt. 35 at 5; Dkt. 31 at 4, 18. The Report's description of Plaintiff as pro se, Dkt. 34 at 1, was a clerical error, Dkt. 36 at 1; the Report applied the Rule 12(b)(6) standard without pro se solicitude, Dkt. 34 at 3–5, and HACA does not suggest that the description affected the analysis, Dkt. 35 at 3 n.1.

## IV. ARGUMENT

### A. Objection 1: The Recommendation Is Correct Under the Plausibility Standard.

HACA isolates two summarizing sentences that use the phrase "no set of facts." Dkt. 35 at 5–6 (quoting Dkt. 34 at 10, 15). HACA is correct that "no set of facts" is no longer the governing formulation, but the recommended disposition holds under the plausibility standard: on de novo review the Court applies *Twombly* and *Iqbal* itself, and the First Amended Verified Complaint satisfies them with dates, documents, the HACA caseworker who directed the application, HACA's stated ground, and the hearing officer's stated reason for disregarding the accommodation evidence. Dkt. 28 ¶¶ 9–19, 32–33, 49–54.

HACA's reliance on *Iqbal*'s "obvious alternative explanation," Dkt. 35 at 6, misreads the claim. That reasoning concerns whether discriminatory purpose may be inferred from conduct a lawful motive equally explains. *Iqbal*, 556 U.S. at 682. A failure-to-accommodate claim does not depend on purpose: "[w]here a defendant fails to meet this affirmative obligation, the cause of that failure is irrelevant." *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005); *Harmon v. Collier*, 158 F.4th 595, 608 (5th Cir. 2025) (lead opinion). What the claim does require is that the accommodation be "reasonable and therefore required," *Bennett-Nelson*, 431 F.3d at 455, the question addressed below. HACA's "alternative explanation," the six-month rule, does not compete with the claim; it is the rule Mr. Copeland asked HACA to modify.

### B. Objection 2: Count I States a Title II Failure-to-Accommodate Claim.

#### 1. The modification requested is a limited exception to HACA's local rule, not ratification of the past.

HACA describes the request as a demand that it "treat eight to ten months of unapproved occupancy … as though neither had occurred." Dkt. 35 at 9. The pleading describes something

narrower. Mr. Copeland sought approval of Ms. Pitts as a live-in aide so that he could continue in the program with the care his disability required, and a decision on that request under the live-in-aide and termination-stage accommodation standards rather than under a categorical six-month bar. Dkt. 28 ¶¶ 4, 15–17, 32, 52–54, 67–68; *id.* Prayer (c)–(d). The exception concerns HACA's local disqualification and the discretionary termination that rested on it. Ms. Pitts's approval would be decided under the standards that govern any aide, including the grounds on which a PHA may refuse a particular person, 24 C.F.R. § 982.316(b); a live-in aide is by definition a person who "[w]ould not be living in the unit except to provide the necessary supportive services," *id.* § 5.403. The request thus acknowledges, rather than evades, the PHA-approval requirement of § 982.551(h)(4); it asks HACA to exercise that authority on the application pending before it. HACA instead applied its six-month rule on the rejection form's "Other" line and treated the question as closed. Dkt. 29-4 at 3; Dkt. 28 ¶ 32. A participant "need not request, or even know, the particular reasonable accommodation he ultimately requires"; that judgment "is best determined through a flexible, interactive process" with the entity. *Windham v. Harris Cnty.*, 875 F.3d 229, 237 n.11 (5th Cir. 2017). HACA's suggestion that "[a]pproval through that process, going forward, is the accommodation the regulations contemplate," Dkt. 35 at 11, describes the process HACA had before it in October and declined to complete.

**2. HACA's obligations on the pending request foreclose the categorical version of its argument.**

The federal regulations contain no six-month limit; they give a PHA "discretion to adopt reasonable policies concerning residence by a foster child or a live-in-aide," 24 C.F.R. § 982.551(h)(4), and HACA locates its rule in an internal procedure that, by HACA's own description, "supplements" the federal regulation, Dkt. 29 at 3; Dkt. 29-1 at 4 (§ 4.7). A policy a

public entity adopted in its own discretion is what Title II requires it to modify when modification is necessary to avoid discrimination and would not fundamentally alter the program. 28 C.F.R. § 35.130(b)(7)(i). The same regulations require a PHA to approve a live-in aide "if needed as a reasonable accommodation," 24 C.F.R. § 982.316(a); make termination for a family-obligation violation discretionary, *id.* § 982.552(c)(1) ("may"); and subject a termination decision for a family that includes a person with disabilities "to consideration of reasonable accommodation in accordance with part 8," *id.* § 982.552(c)(2)(iv). The HUD-VASH operating requirements provide that a PHA "must grant reasonable accommodations for persons with disabilities in accordance with 24 CFR part 8" before terminating a HUD-VASH participant. 89 Fed. Reg. 65,769, 65,775 (Aug. 13, 2024).

HACA's Administrative Plan implements those duties in terms that fit this request. HACA "will consider the accommodation any time the family indicates that an accommodation is needed whether or not a formal written request is submitted." Dkt. 15-8 at 48. HACA "must approve a request for an accommodation" made by or for a person with a disability where there is a disability-related need and the request is reasonable; it "will respond, in writing, within 30 calendar days"; and if it denies a request as unreasonable, it "will either list recommended alternatives or include a request to discuss" an alternative with the family. *Id.* at 49; *see id.* at 64–65 (live-in-aide approval and decision deadline). Its termination decisions are "subject to consideration of reasonable accommodation," it "will take into consideration … any mitigating circumstances related to the disability of a family member" in cases of family-caused error or program abuse, and the hearing officer's decision is subject to the family's accommodation requests. *Id.* at 308, 338, 381.

HACA "does not dispute that it had to consider accommodation at the termination stage."

Dkt. 35 at 9. That concession forecloses the categorical version of HACA's argument. A duty to consider accommodation at the termination stage arises after the violation prompting termination has occurred; if a completed violation could never be the subject of a reasonable accommodation, § 982.552(c)(2)(iv) and the Plan's termination-stage provisions would have no application. HUD and the Department of Justice say the same: their Joint Statement illustrates a tenant served with a notice to quit after a completed lease violation, and explains that the provider must grant an exception to the violated policy if safeguards would address the problem, and may proceed only because the tenant refused them. Joint Statement of HUD and DOJ, *Reasonable Accommodations Under the Fair Housing Act*, at 5–6 (May 17, 2004); *see A.B. ex rel. Kehoe v. Hous. Auth. of S. Bend*, No. 3:11 CV 163 PPS, slip op. at 15 (N.D. Ind. May 18, 2012) (relying on that example). What remains is whether this exception was reasonable and therefore required, *Bennett-Nelson*, 431 F.3d at 455, a question HACA's own documents do not permit the Court to answer against the pleading.

**3. The pleaded facts and HACA's own documents make the exception plausibly reasonable.**

Reasonableness and fundamental alteration are ordinarily questions of fact, and under Title II the entity bears the burden of demonstrating fundamental alteration. 28 C.F.R. § 35.130(b)(7)(i) ("unless the public entity can demonstrate"); Dkt. 34 at 13–14 (collecting cases); *see Strife v. Aldine Indep. Sch. Dist.*, 138 F.4th 237, 246–48 (5th Cir. 2025) (reversing Rule 12 dismissal of a failure-to-accommodate claim). Four features of this record make the exception plausibly reasonable.

First, after-the-fact approval of an occupant already in residence is part of HACA's program design. HACA's procedure provides that if an add-on "has been residing in unit for more than 30 days but less than 6 months (with landlord approval), calculate retro rent payments

based on the length of unauthorized occupancy." Dkt. 29-1 at 4 (§ 4.7); *see* Dkt. 29 at 13–14. The parenthetical concerns the landlord's consent under the lease; the six-month rule, the denial, and the termination all turned on the absence of PHA approval, which is the approval at issue. HACA's add-on questionnaire likewise asks the person being added for the "Street Address (where you are currently living)" and "[h]ow long have you lived at your current address." Dkt. 29-2 at 2. And the Plan contemplates exceptions to its guest limits for caregiving, offering "care of a relative recovering from a medical procedure" as its example. Dkt. 15-8 at 62. These provisions do not establish that Mr. Copeland qualified under them. They show that the modification he sought is of a kind HACA's program already makes, not an alteration of its nature.

Second, the modification is individualized and disability-specific. It is not "equally available to any participant who later invokes it," Dkt. 35 at 16, because a participant without a disability has no right to a modification at all. 28 C.F.R. § 35.130(i). HACA identified no case-specific administrative or financial burden; its denial listed no alternatives and invoked no fundamental alteration, contrary to its own Plan. Dkt. 29-4 at 3; Dkt. 15-8 at 49; Dkt. 34 at 8–9 n.3.

Third, the request was pending with HACA for four months before HACA denied it and terminated on the same ground. The August 19 letter was an indication of need that HACA's Plan required it to treat as a request, Dkt. 15-8 at 48, and HACA's policies called for a written response within 30 days and a decision on the aide application within 20 business days of the application and its documentation, *id.* at 49, 65. Those triggers are distinct, and the pleading does not fix the date on which every required document reached HACA. But even assuming the six-month period had expired before the August request, HACA still had to decide whether an

individualized exception to the resulting disqualification and termination was reasonable in light of the disability-related delay and the pending application, and "an indeterminate delay has the same effect as an outright denial." *Groome Res. Ltd. v. Parish of Jefferson*, 234 F.3d 192, 199 (5th Cir. 2000). The exception Mr. Copeland sought asked HACA to weigh that history. Whether it did is a question for discovery, on records in HACA's control, including Ms. Petersen's file and the DocuSign history. The FAC alleges that HACA produced neither Ms. Petersen nor her file at the hearing and withheld the caregiver request when the hearing officer asked for accommodation evidence. Dkt. 28 ¶¶ 39, 49; *see* Dkt. 31 at 18–19. Her evidence bears on what HACA knew, what it instructed, and how it processed the request, which is what the exception turns on, not on whether permission had already been granted. A plaintiff may plead facts "peculiarly within the possession and control of the defendant" on information and belief, *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 729–30 (5th Cir. 2018); gaps in the account HACA chose to present are not findings against the pleading.

Fourth, HACA's computation of the six months is itself disputed. HACA's objection counts from the day Ms. Pitts arrived, Dkt. 35 at 3; its denial counted "10 months" from the disputed entry on the form Mr. Adair completed, Dkt. 29-4 at 3; Dkt. 28 ¶¶ 16, 38. HACA's Plan distinguishes a guest, who may remain up to 30 consecutive or 90 cumulative days in a year (or a shorter period the lease provides), from an "unauthorized occupant[]," and specifies that "[f]or the purpose of deciding whether to terminate voucher assistance for alleged unauthorized guest, HACA will apply the thirty/ninety day test." Dkt. 15-8 at 61–62. The Plan separately requires written approval before a live-in aide, or anyone expected to stay beyond the guest limit, moves in, *id.* at 289 (there stating the cumulative limit as 60 days), and the procedure's trigger is "living in unit for more than 6 months unauthorized," Dkt. 29-1 at 4. Plaintiff does not contend that

these provisions resolve the calculation in his favor as a matter of law. They show that whether, and from what date, six months of unauthorized occupancy had accrued when HACA acted, and whether the request reached HACA before that point, are questions HACA's own documents leave open, and Rule 12 does not permit the Court to answer them against the pleading. Even on HACA's computation, the August request arrived six days after its limit ran, from a participant whose cognitive impairment and dependence on others HACA accepts as true. Dkt. 35 at 3, 11.

**4. Green, Kehoe, and the household forms do not foreclose the claim.**

*Green* rested on two rationales, neither of which reaches this case. The district court there had found that the employer "had already effectively determined that Green would be terminated" before she requested an accommodation, and the court of appeals, agreeing with the district court, stated that "an accommodation that requires an employer to ignore prior misconduct, including a violation of an attendance policy, is not the kind of reasonable accommodation mandated under the ADA." *Green v. Medco Health Sols. of Tex., L.L.C.*, 560 F. App'x 398, 402 (5th Cir. 2014) (per curiam). *Green* is an unpublished Title I decision about accrued unexcused absences under a neutral attendance policy; the court recognized that an employer "may not short-circuit the interactive dialogue by terminating the employee rather than considering the request," but held that Green had waived any challenge to the district court's finding that the termination was already effectively decided, id. at 401–02. Here the request was pending when HACA decided, the regulation makes the aide's approval mandatory "if needed as a reasonable accommodation," 24 C.F.R. § 982.316(a), the termination decision was expressly subject to accommodation, *id.* § 982.552(c)(2)(iv), and the "misconduct" was the presence of the caregiver whose approval was requested. A rule under which the aide's presence before approval forecloses approval of the aide is the circularity the FAC pleads. Dkt. 28 ¶¶ 4, 54. The Eleventh

Circuit reversed a Rule 12 dismissal on analogous facts: a request made after the tenant's son's disability-related threats, on the day the landlord decided not to renew the lease, to remain while care was arranged, was a request for "an exception to Aimco's apparent policy or practice of not renewing the leases of tenants who make threats," necessary and adequately pleaded. *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1225–27 (11th Cir. 2016).

*Kehoe* dismissed claims by a tenant who was a current drug user, and therefore unprotected, and whose cocaine possession had no causal relationship to her asserted disability; its reasonableness discussion rested on the federal one-strike policy for drug crime, whose "whole purpose" is "to keep public housing free of drugs." *Kehoe*, slip op. at 7–10, 15–17, *aff'd*, 498 F. App'x 620, 622–23 (7th Cir. 2012) (not reaching reasonable accommodation). The Report correctly distinguished it. Dkt. 34 at 9.

The August and September household forms, Dkt. 35 at 3–4, 10, were not the stated ground of the denial or the termination, Dkt. 29-4 at 3; Dkt. 29-5 at 3, and were not part of the hearing, Dkt. 28 ¶ 57. The FAC pleads a disability-related explanation for the entries, *id.* ¶¶ 58–59, 73, which HACA accepts as true, Dkt. 35 at 11. The exception requested preserves the obligation that information supplied by the family be "true and complete," 24 C.F.R. § 982.551(b)(4), and permits correction going forward. The entries bear on whether the exception was reasonable; they do not establish, on a motion to dismiss, that accommodation was foreclosed.

**5. Count I survives regardless of the disposition of Plaintiff's separate Count II objection.**

HACA concedes that "neutral enforcement alone" does not defeat a failure-to-accommodate claim. Dkt. 35 at 13. That disposes of Objection 2.C as to the accommodation theory, for which "the cause of that failure is irrelevant." *Bennett-Nelson*, 431 F.3d at 454. To the

extent Count I also alleges that HACA's decisions were "by reason of" disability, Dkt. 28 ¶ 67, the Report applied the motivating-factor standard, Dkt. 34 at 8 (citing *Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008)), and the pleaded facts support the inference at this stage: termination for the presence of the caregiver the disability required, a six-month count the Report read as running from the hospital discharge, and the withholding of the caregiver request at the hearing. Dkt. 34 at 8–9 n.3; Dkt. 28 ¶ 49. In the alternative, even within the Report's framework, Part III.B is not inconsistent with Part III.C: the Report applied different statutory causation standards, Dkt. 34 at 11, and a finding that disability was a motivating factor but not the sole cause is not a contradiction. Plaintiff has separately objected to Part III.C on the ground that the sole-causation test does not govern accommodation claims, Dkt. 36 at 3–6; either way, Part III.B stands.

**C. Objection 3: Count III States an FHA Claim.**

**1. Necessity is pleaded, and the Report addressed the only alternative HACA offered.**

The FHA makes it unlawful to refuse "reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). Necessity means that the accommodation is "[i]ndispensable, requisite, essential," assessed "in the light of 'proposed alternatives.'" *Women's Elevated Sober Living L.L.C. v. City of Plano*, 86 F.4th 1108, 1112 (5th Cir. 2023) (quoting *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 105 (3d Cir. 2018)). The FAC pleads necessity in that sense. Mr. Copeland cannot safely live alone and needs assistance with "eating, toileting, transfers, medication, and financial-management tasks." Dkt. 28 ¶ 2. Without an approved live-in aide he cannot use any dwelling, and without continued assistance he cannot use a subsidized one. *Id.* ¶¶ 2–3, 11, 25, 60–62. HACA "accepts for present

purposes that Mr. Copeland needed in-home care." Dkt. 35 at 14. The one alternative HACA offered, a one-bedroom replacement voucher, did not resolve the aide request or supply the subsidy standard that follows an aide's approval: an approved live-in aide is counted in family unit size, and a single person without one receives a zero- or one-bedroom voucher. Dkt. 15-8 at 130–31; 24 C.F.R. § 982.402(b)(6); Dkt. 28 ¶ 25. HACA's necessity argument below was that the replacement voucher's "retained access" defeated necessity, Dkt. 32 at 6, and the Report rejected it, finding the one-bedroom voucher not shown to be a reasonable response to the request or to permit him to use and enjoy a dwelling given his limitations. Dkt. 34 at 14–15. That is the alternatives analysis the necessity element calls for.

**2. At the pleading stage, Vorchheimer supplies the rule, and it favors Plaintiff.**

*Women's Elevated* states the substantive standard a plaintiff must plausibly plead; it does not alter the pleading inquiry. *Vorchheimer*, which it follows, affirmed a Rule 12(b)(6) dismissal, but on terms that answer HACA's objection: "We do not require plaintiffs to hypothesize alternatives, let alone to preempt hypotheticals. … Plaintiffs need not, and generally do not, plead alternative accommodations. So, ordinarily, district courts do not have alternatives before them on a motion to dismiss. Assessing alternatives typically requires a factual record, and developing that factual record requires discovery." 903 F.3d at 111. Dismissal was proper there only because the plaintiff herself pleaded, and attached letters offering, four alternatives that on their face met her needs. *Id.* at 111–13. This is the ordinary case: the FAC pleads that the one alternative HACA offered did not meet the need. Dkt. 28 ¶ 25. *Henderson* was decided on summary judgment, and *Hinckley* on a preliminary-injunction record in which the plaintiff "never claimed that she lacked the ability to comply." Dkt. 35 at 13–15. The FAC pleads exactly the inability to comply that was missing there, Dkt. 28 ¶¶ 36, 58–59, 73, and HACA accepts

those allegations, Dkt. 35 at 11, 14.

**3. HACA's proposed alternative is the relief Plaintiff requested and HACA refused.**

HACA's objection concedes that an approved aide is necessary—"prospective approval of the aide with a correspondingly sized voucher … would meet the same disability-related need," Dkt. 35 at 14 n.4—and disputes only whether the termination that blocks that approval must be withdrawn: "[t]he obstacle to that prospective relief is the termination." *Id.* at 15. An arrangement the defendant never offered, and that its own decision forecloses, is not a "proposed alternative" in the sense *Women's Elevated* and *Vorchheimer* use the term; in both cases the alternative was one actually available to the plaintiff. 86 F.4th at 1110–11, 1114. The prospective relief HACA describes is what the FAC requests. Dkt. 28 Prayer (c), (d), (f). The dispute HACA's objection leaves is reasonableness, which the Report correctly held cannot be resolved against the pleading. Dkt. 34 at 13–14. HACA's observation that "the aide need followed Mr. Copeland to any unit," Dkt. 35 at 15, confirms necessity rather than defeating it: because the need travels with him, a replacement voucher without an approved aide addressed nothing.

**4. The FAC plausibly pleads a reasonable accommodation under the FHA.**

Under the FHA the plaintiff bears the burden on reasonableness, *Women's Elevated*, 86 F.4th at 1112 (citing *Elderhaven, Inc. v. City of Lubbock*, 98 F.3d 175, 178 (5th Cir. 1996)), and the FAC carries it at the pleading stage. The accommodation is the limited exception described above, which leaves aide eligibility, screening, and truthful reporting in place. Dkt. 28 ¶¶ 4, 52–54, 67–68. HACA's program already approves, after the fact, occupants who moved in without PHA approval; its termination decision was discretionary and subject to accommodation; and its denial identified no burden and no alternative. Dkt. 29-1 at 4 (§ 4.7); 24 C.F.R. § 982.552(c)(1), (c)(2)(iv); Dkt. 29-4 at 3. Reasonableness "is a question of fact that should be resolved by a close

examination of the particular circumstances of each case." Dkt. 34 at 13 (citing *Chavez v. Aber*, 122 F. Supp. 3d 581, 596 (W.D. Tex. 2015)). HACA's comparison to "[a] participant without a disability who housed an unreported adult for eight months," Dkt. 35 at 14, misapprehends the duty: "treating persons with disabilities exactly the same as others will sometimes deny them an equal opportunity to use and enjoy a dwelling," which is why the Act requires exceptions to rules. Joint Statement at 6; *see* 28 C.F.R. § 35.130(i).

**5. The § 3604(f)(1)–(2) theories stand with the accommodation claim.**

Section 3604(f)(3) provides that "[f]or purposes of this subsection, discrimination includes" a refusal to make reasonable accommodations, so a refusal to accommodate is itself discrimination under § 3604(f)(1) and (f)(2). 42 U.S.C. § 3604(f)(3)(B); *see Women's Elevated*, 86 F.4th at 1112. HACA concedes these theories "depend on the same premise as the accommodation theory," Dkt. 35 at 16, and they stand with it. HACA's reading of the landlord allegations as describing "a housing authority trying to preserve a tenancy," *id.*, is an inference drawn in HACA's favor from allegations that plead the opposite. Dkt. 28 ¶¶ 23, 28–31, 70, 82.

**D. Objection 4: The Punitive-Damages Prayer Should Not Be Dismissed on the Pleadings.**

**1. The immunity theory was not presented to the Magistrate Judge.**

The Report declined to dismiss the punitive-damages prayer because HACA "cites no legal authority" for its contention that reliance on a neutral rule negates reckless disregard, and declined to find that the contention "categorically bars" the request "at this time." Dkt. 34 at 15 n.5. HACA now adds a municipal-immunity theory it concedes it did not raise below. Dkt. 35 at 17–19 & n.5. A party who objects to a magistrate judge's report "waives legal arguments not made in the first instance before the magistrate judge," *Freeman v. County of Bexar*, 142 F.3d 848, 851 (5th Cir. 1998) (describing *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994)),

although whether to entertain a new argument lies within the Court's discretion, *id.* at 852. If the Court reaches the theory, it fails.

**2. The FHA's text authorizes punitive damages against municipal defendants.**

Section 3613(c)(1) provides that the court "may award to the plaintiff actual and punitive damages," with no exception for municipal defendants. *Fact Concerts* construed 42 U.S.C. § 1983, which says nothing about damages, and rested on the absence of any statutory text displacing the common-law presumption against municipal punitive damages. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 259–64, 271 (1981). The only court of appeals to decide the question under the FHA held that "the FHA's text unambiguously permits private plaintiffs to recover punitive damages" with "no basis in the statute for carving out an exception for municipal defendants," that the statute's text "easily and unequivocally rebuts the common-law presumption," and that *Barnes v. Gorman* rests on "Spending Clause principles that are wholly irrelevant to the FHA." *Gilead Cmty. Servs., Inc. v. Town of Cromwell*, 112 F.4th 93, 96, 103 (2d Cir. 2024). HACA's contrary authority, *Baptist Homes*, is an unpublished district-court decision that found the punitive claim abandoned and then held in the alternative, without developed analysis of § 3613(c)(1)'s text, that the FHA did not clearly abrogate the immunity. Dkt. 35 at 18. The Fifth Circuit has not decided the question; *Gilead*'s textual analysis answers it. *Barnes* concerns Title II and § 504, under which Plaintiff seeks no punitive damages. Dkt. 28 ¶ 83; *id.* Prayer (h).

**3. The pleaded facts satisfy Lincoln.**

Under *Lincoln*, the question is whether the defendant "acted with malice or reckless indifference that [its] actions might violate a federal statute of which [it was] aware." *Lincoln v. Case*, 340 F.3d 283, 291 (5th Cir. 2003). Awareness is pleaded through HACA's own

documents: its Plan recites the Part 8 obligation to approve a needed live-in aide and the termination-stage accommodation requirement, Dkt. 15-8 at 49, 64, 308, 381, and its HUD-VASH liaison directed the application, Dkt. 28 ¶¶ 14, 17. Reckless indifference is pleaded through conduct: HACA's representative, asked by the hearing officer whether HACA had received reasonable-accommodation evidence, disclosed a service-animal request but not the caregiver request from the same provider, *id.* ¶ 49; and the hearing officer, having located the accommodation materials, declared them "irrelevant" because they did not show that Ms. Pitts already had the permission the request sought, *id.* ¶¶ 52–54; Dkt. 29-9 at 2, a standard no accommodation evidence could satisfy. HACA points to the rescission and renewed review, Dkt. 35 at 18; the FAC's allegation is that reopening the record did not cure the refusal to evaluate the request under the governing standard, Dkt. 28 ¶ 71. Those are specific allegations, not a "[t]hreadbare recital[]." At the pleading stage they plausibly support an inference of reckless indifference, *see Lincoln*, 340 F.3d at 291, and HACA's assertion that it merely "resolve[d] an open legal question against the plaintiff," Dkt. 35 at 18, is HACA's own account of its state of mind. The Report was right that the question cannot be decided "at this time." Dkt. 34 at 15 n.5. HACA's closing point is directed to compensatory damages, which under Title II require intentional discrimination. *Cadena v. El Paso Cnty.*, 946 F.3d 717, 724 (5th Cir. 2020); Dkt. 35 at 19. The FAC pleads facts supporting that inference rather than a label: actual notice, Dkt. 28 ¶¶ 69–74; the representative's disclosure at the hearing of a service-animal request but not the caregiver request from the same provider, Dkt. 28 ¶ 49; and the hearing officer's decision, after locating the accommodation materials, to set them aside because they did not show the prior permission the request sought, Dkt. 28 ¶¶ 52–54. Those allegations plausibly show a knowing refusal to accommodate. HACA pressed the point below only by pointing to the extension and

rescission, Dkt. 29 at 14, and the Report did not reach it. In any event, a limit on damages would not dispose of Count I or Count III, which also seek declaratory and injunctive relief. Dkt. 28 Prayer (a)–(f).

**E. Alternatively, Plaintiff Requests Leave to Plead Specific Additional Facts.**

Plaintiff renews his alternative request for leave to amend under Rule 15(a)(2). Dkt. 31 at 19. Leave is "by no means automatic," and a party seeking it must "set forth with particularity the grounds for the amendment and the relief sought." *Phillips v. Ethicon Endo-Surgery, Inc.*, Nos. 25-50116 & 25-50308, slip op. at 8–9 (5th Cir. Oct. 2, 2026) (internal quotation marks and citations omitted); *see Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Dkt. 36 at 10–11 identified the subjects of amendment; the particulars are these, offered as proposed allegations and not as facts established by the present record. If the Court finds a deficiency in Count I or Count III, Plaintiff would plead:

First, that Ms. Pitts actually provided the assistance his disabilities required, was essential to that care, was not obligated to support him, and would not have resided with him in the arrangement submitted for approval except to provide supportive services; that after his February 2025 discharge, he and Ms. Pitts discussed caregiver support, aide approval, and paperwork with Mr. Adair and mistakenly understood that process to accomplish the housing approval; and that the July 2025 VA letter was an Aid and Attendance award to Mr. Copeland that did not itself approve Ms. Pitts.

Second, Ms. Pitts's account that she signed the paper questionnaire before Mr. Adair completed it, did not supply the ten-month entry, and did not see or review the completed form before submission; and that neither Mr. Copeland, Ms. Pitts, nor his hearing representative saw the completed form before or during the hearing, Plaintiff first receiving it with HACA's

preliminary-injunction response.

Third, that facility records in Plaintiff's possession place Mr. Copeland in inpatient rehabilitation from February 25 through March 18, 2025, and in a hospital and rehabilitation sequence from March 26 through April 5, 2025, and that, on Mr. Copeland's and Ms. Pitts's knowledge, she stayed elsewhere during those admissions. Those facts bear on the disputed guest-status and occupancy chronology; Plaintiff would not allege that every temporary absence ended an established residence or restarted the six-month period.

Fourth, the requested modification stated with specificity: acceptance and evaluation of the otherwise supportable aide application despite disability-related timing or routing errors, a guest exception for any interim period meeting its requirements, and continued assistance with the appropriate subsidy standard upon approval, with medical necessity, aide eligibility, truthful reporting, and ordinary screening remaining subject to verification.

HACA itself asks, in the alternative, that the Court identify any curable deficiency and set a deadline for a final amended pleading. Dkt. 35 at 19–20.

## V. CONCLUSION

Plaintiff respectfully requests that the Court overrule HACA's objections, Dkt. 35; adopt Parts III.B and III.D and footnote 5 of the Report; deny HACA's motion to dismiss, Dkt. 29, as to Counts I and III and as to the punitive-damages prayer; and, in the alternative, grant leave to amend under Rule 15(a)(2) as to any deficiency the Court identifies.

Respectfully submitted,

LAW OFFICES OF AUDREY BEAN

By: /s/ Peter “Audrey” Bean
Peter “Audrey” Bean
Texas Bar No. 24073897
1827 River Crossing Cir., Ste. D
Austin, Texas 78741
Telephone: (512) 290-5739
Audrey@AustinLitigator.com

Counsel for Plaintiff John Copeland

**CERTIFICATE OF SERVICE**

I certify that on October 30, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notice of filing to all counsel of record.

/s/ Peter “Audrey” Bean
Peter “Audrey” Bean